USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/15/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

SEAN STEWART and
ROBERT STEWART, a/k/a "Bob,"

Defendants.

SUPERSEDING INDICTMENT

S1 15 Cr. 287 (LTS)

**COUNT ONE**
**(Conspiracy to Commit Securities Fraud and Fraud in Connection with a Tender Offer)**

The Grand Jury charges:

**Relevant Individuals and Entities**

1. At all times relevant to this Indictment, Investment Bank A was the investment banking advisory arm of a global bank headquartered in Manhattan, New York.

2. At all times relevant to this Indictment, Investment Bank B was an independent investment banking advisory firm with its principal place of business in Manhattan, New York.

3. From at least in or about December 2010 through in or about October 2011, SEAN STEWART, the defendant, held the position of Vice President in Investment Bank A's Healthcare Investment Banking Group. For the remainder of the period relevant to this Indictment, SEAN STEWART was employed as a Managing Director of Investment Bank B.

4. ROBERT STEWART, a/k/a "Bob," the defendant, is the father of SEAN STEWART, the defendant.

5. At times relevant to this Indictment, Richard Cunniffe was an acquaintance and business associate of ROBERT STEWART, a/k/a "Bob," the defendant.

6. At all times relevant to this Indictment:

a. Kendle International Inc. ("Kendle") was an Ohio corporation that provided clinical development services to the biopharmaceutical industry. Kendle's securities traded under the symbol "KNDL" on the NASDAQ Stock Exchange ("NASDAQ").

b. INC Research, LLC ("INC") was a global contract research organization that was privately held by Avista Capital Partners and the Ontario Teachers' Pension Plan.

c. Kinetic Concepts, Inc. ("KCI") was a medical technology company headquartered in San Antonio, Texas. KCI's securities traded under the symbol "KCI" on the New York Stock Exchange ("NYSE").

d. Apax Partners ("Apax") was a private equity investment group operating in the United States, Europe, and Asia.

e. Hologic, Inc. ("Hologic") was a developer, manufacturer, and supplier of medical diagnostic, imaging, and surgical products headquartered in Bedford, Massachusetts.

Hologic's securities traded under the symbol "HOLX" on the NASDAQ.

f. Gen-Probe Inc. ("Gen-Probe") was a molecular diagnostic products company headquartered in San Diego, California. Gen-Probe's securities traded under the symbol "GPRO" on the NASDAQ.

g. Linde AG ("Linde") was an industrial gas supplier headquartered in Munich, Germany.

h. Lincare Holdings, Inc. ("Lincare") was a Florida corporation that provided in-home respiratory services. Lincare's securities traded under the symbol "LNCR" on the NASDAQ.

i. Becton, Dickinson & Co. ("Becton") was a New Jersey medical technology company. Becton's securities traded under the symbol "BDX" on the NYSE.

j. CareFusion Corp. ("CareFusion") was a medical technology company headquartered in San Diego, California. CareFusion's securities traded under the symbol "CFN" on the NYSE.

**The Insider Trading Scheme**

7. SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, used material, non-public information that SEAN STEWART acquired as part of his employment to (a) make and cause to be made profitable trades in a brokerage account belonging to

ROBERT STEWART; and (b) cause the execution of profitable trades in brokerage accounts belonging to Cunniffe.

8. SEAN STEWART, the defendant, acquired this material, non-public information, which pertained to mergers and acquisitions involving companies in the health care industry, through his employment first with Investment Bank A and then with Investment Bank B. He divulged the information to ROBERT STEWART, a/k/a "Bob," the defendant, in breach of fiduciary duties and other duties of trust and confidence owed to the sources of the information.

9. ROBERT STEWART, a/k/a "Bob," the defendant, used the material, non-public information to his pecuniary advantage and to confer a pecuniary advantage upon SEAN STEWART, the defendant. Among the pecuniary benefits that SEAN STEWART received as part of the insider trading scheme was payment by ROBERT STEWART, from the proceeds of the scheme, of expenses related to SEAN STEWART's wedding in or about June 2011.

10. The first of the transactions about which SEAN STEWART, the defendant, tipped ROBERT STEWART, a/k/a "Bob," the defendant, was the acquisition of Kendle by INC, which was announced publicly on or about May 4, 2011. Investment Bank A represented Kendle in connection with the transaction, and SEAN STEWART was assigned to work on the matter. Based on the material, non-public information that SEAN STEWART gave to

ROBERT STEWART about the Kendle/INC deal before it was publicly announced, ROBERT STEWART made profitable trades in Kendle securities, yielding profits of approximately $7,900.

11. The second transaction about which SEAN STEWART, the defendant, tipped ROBERT STEWART, a/k/a "Bob," the defendant, was the acquisition of KCI by Apax, announced on or about July 13, 2011. Investment Bank A represented KCI in connection with the transaction, and others at Investment Bank A kept SEAN STEWART apprised of developments with the deal from in or about March 2011 through the time of the public announcement. When SEAN STEWART tipped ROBERT STEWART about this deal, ROBERT STEWART passed that tip along to Cunniffe, and also asked Cunniffe to trade KCI call option contracts in Cunniffe's own brokerage account for the benefit of ROBERT STEWART. Cunniffe agreed to the proposal, and bought KCI call option contracts. When the KCI/Apax deal was publicly announced, ROBERT STEWART and Cunniffe together reaped approximately $107,790 in profits based on the trades that Cunniffe had placed.

12. The third transaction about which SEAN STEWART, the defendant, tipped ROBERT STEWART, a/k/a "Bob," the defendant, involved the acquisition of Gen-Probe by Hologic, announced on or about April 30, 2012. Investment Bank B represented Hologic in connection with the transaction, and SEAN STEWART worked on the deal. When SEAN STEWART tipped ROBERT STEWART about this

deal, ROBERT STEWART in turn tipped Cunniffe, who then purchased Gen-Probe call option contracts for the benefit of himself and ROBERT STEWART. When the Gen-Probe/Hologic deal was publicly announced, ROBERT STEWART and Cunniffe reaped profits of approximately $180,590 based on the trades that Cunniffe had placed.

13. The fourth transaction about which SEAN STEWART, the defendant, tipped ROBERT STEWART, a/k/a "Bob," the defendant, involved the acquisition by tender offer of Lincare by Linde, announced on or about July 1, 2012. Investment Bank B represented Linde in connection with the transaction. When SEAN STEWART tipped ROBERT STEWART about this deal, ROBERT STEWART passed the tip to Cunniffe. Based on the tip, Cunniffe purchased Lincare call option contracts for the benefit of himself and ROBERT STEWART. When the tender offer was publicly announced, ROBERT STEWART and Cunniffe together reaped approximately $407,573 in profits based on the trades that Cunniffe had placed.

14. The final transaction about which SEAN STEWART, the defendant, tipped ROBERT STEWART, a/k/a "Bob," the defendant, involved the acquisition of CareFusion by Becton, announced on or about October 5, 2014. Investment Bank B represented CareFusion in connection with the deal, and SEAN STEWART learned no later than March 7, 2014 that the acquisition was being

contemplated. When SEAN STEWART tipped ROBERT STEWART about this deal, ROBERT STEWART in turned tipped Cunniffe. Based on the tip from ROBERT STEWART, Cunniffe bought CareFusion call option contracts for the benefit of himself and ROBERT STEWART. When the CareFusion/Becton deal was announced publicly, ROBERT STEWART and Cunniffe reaped profits of approximately $446,448 based on the trades that Cunniffe had placed.

**Statutory Allegations**

15. From in or about February 2011 through in or about April 2015, in the Southern District of New York and elsewhere, SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States, to wit, (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and (b) fraud in connection with a tender offer, in violation of Title 15, United States Code, Sections 78n(e) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

Objects of the Conspiracy

16. It was a part and an object of the conspiracy that SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, and others known and unknown, willfully and knowingly, directly

and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, the defendants and Cunniffe conspired to commit insider trading in connection with the securities of Kendle, KCI, Gen-Probe, Lincare, and CareFusion.

17. It was a further part and an object of the conspiracy that SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, and others known and unknown, willfully and knowingly would and did engage in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken substantial steps to commence a tender offer, SEAN STEWART and ROBERT STEWART, while in possession of material information relating to

such tender offer, which information they knew and had reason to know was non-public and which they knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought and to be sought by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer, would and did (a) purchase and sell, (b) cause to be purchased and sold, and (c) communicate such material, non-public information under circumstances in which it was reasonably foreseeable that such communication would likely result in the purchase and sale of, such securities and securities convertible into and exchangeable for such securities and options and rights to obtain and to dispose of any of the foregoing securities, without public disclosure by press release or otherwise of such material, non-public information within a reasonable time prior to such purchase and sale, in violation of Title 15, United States Code, Sections 78n(e) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d), to wit, the defendants and Cunniffe conspired to commit insider trading in connection with the proposed tender offer by Linde for the securities of Lincare.

Overt Acts

18. In furtherance of the conspiracy, and to effect the illegal objects thereof, SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about March 2, 2011, SEAN STEWART e-mailed a colleague to ask about the price of Kendle stock.

b. On or about March 3, 2011, ROBERT STEWART e-mailed an employee of a brokerage firm with directions to buy Kendle shares.

c. On or about June 2, 2011, ROBERT STEWART, using the proceeds of the sale of Kendle stock, paid a check in the amount of $10,055 to a photographer who had been hired for the wedding of SEAN STEWART.

d. On or about June 3, 2011, the day before SEAN STEWART's wedding, ROBERT STEWART spoke to Cunniffe by telephone.

e. Also on or about June 3, 2011, approximately two minutes after the end of the call described in the foregoing paragraph, Cunniffe purchased KCI call option contracts.

f. On or about April 20, 2012, Cunniffe placed an order to purchase Gen-Probe call option contracts.

g. On or about Sunday, May 27, 2012, SEAN STEWART and ROBERT STEWART spoke by telephone for approximately two and a half minutes.

h. On or about May 28, 2012, at or about the same time as a telephone call between ROBERT STEWART and Cunniffe, Cunniffe began entering orders to buy Lincare call option contracts.

i. On or about August 19, 2014, ROBERT STEWART met Cunniffe in Manhattan, New York.

j. Also on or about August 19, 2014, Cunniffe placed an order to purchase CareFusion call option contracts.

k. On or about March 24, 2015, in Manhattan, Cunniffe paid ROBERT STEWART $2,500 in cash proceeds from investments in CareFusion securities.

(Title 18, United States Code, Section 371; Title 15, United States Code, Sections 78j(b), 78n(e), and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-2, 240.14e-3(a), and 240.14e-3(d).)

**COUNT TWO**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury further charges:

19. The allegations contained in Paragraphs 1 through 14 and 18 are repeated and realleged as though fully set forth herein.

20. From in or about February 2011 through in or about April 2015, in the Southern District of New York and elsewhere,

SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States of America, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343.

21. It was a part and an object of the conspiracy that SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, the defendants and Cunniffe conspired to defraud Kendle, KCI, Gen-Probe, Lincare, and CareFusion of valuable confidential information by deceptively converting that information to their own use, in breach of fiduciary and other duties owed to the subject companies, using cellular telephones, e-mail communications, and national securities exchanges.

(Title 18, United States Code, Section 1349.)

**COUNTS THREE and FOUR**
**(Securities Fraud)**

The Grand Jury further alleges:

22. The allegations contained in Paragraphs 1 through 14 and 18 are repeated and realleged as though fully set forth herein.

23. From at least in or about February 2011 through at least in or about May 2011, in the Southern District of New York and elsewhere, SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed, and caused others to use and employ, manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, by: (a) employing, and causing others to employ, devices, schemes, and artifices to defraud; (b) making, and causing others to make, untrue statements of material fact and omitting to state, and causing others to omit to state, material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging, and causing others to engage, in acts, practices, and courses of business

which operated and would operate as a fraud and deceit upon persons, to wit, on the basis of material, non-public information that SEAN STEWART provided to ROBERT STEWART with the understanding that the information would be used in connection with securities transactions, ROBERT STEWART executed and caused to be executed, and SEAN STEWART caused to be executed, the securities transactions listed below:

| Count | Order Dates | Transactions |
|---|---|---|
| 3 | February 7-March 4, 2011 | Purchases of 2,775 shares of Kendle |
| 4 | May 5-6, 2011 | Purchases of 700 shares of KCI |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section 2.)

**COUNTS FIVE through EIGHT**
**(Securities Fraud)**

The Grand Jury further charges:

24. The allegations contained in Paragraphs 1 through 14 and 18 are repeated and realleged as though fully set forth herein.

25. From at least in or about April 2011 through at least in or about October 2014, in the Southern District of New York and elsewhere, SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of

securities, used and employed manipulative and deceptive devices and contrivances, and caused others to use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, by: (a) employing, and causing others to employ, devices, schemes, and artifices to defraud; (b) making, and causing others to make, untrue statements of material fact and omitting to state, and causing others to omit to state, material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging, and causing others to engage, in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, on the basis of material, non-public information that SEAN STEWART provided to ROBERT STEWART with the understanding that the information would be used in connection with securities transactions, SEAN STEWART and ROBERT STEWART caused Cunniffe to execute the securities transactions listed below:

| Count | Order Dates | Transactions |
|---|---|---|
| 5 | April 21-<br>June 23, 2011 | Purchases of 365 KCI call option contracts |
| 6 | April 18-27, 2012 | Purchases of 320 Gen-Probe call option contracts |
| 7 | May 29-<br>June 28, 2012 | Purchases of 375 Lincare call option contracts |
| 8 | August 19-<br>October 2, | Purchases of 630 CareFusion call option contracts |

| | 2014 | |
|---|---|---|

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5 & 240.10b5-2, and Title 18, United States Code, Section 2.)

**COUNT NINE**
**(Securities Fraud in Connection with a Tender Offer)**

The Grand Jury further charges:

26. The allegations contained in Paragraphs 1 through 14 and 18 are repeated and realleged as though fully set forth herein.

27. From in or about May 2012 through in or about June 2012, in the Southern District of New York and elsewhere, SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, willfully and knowingly engaged in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after an offering person had taken substantial steps to commence a tender offer, SEAN STEWART and ROBERT STEWART, while in possession of material information relating to such tender offer, which information they knew and had reason to know was non-public and which they knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought and to be sought by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer, (a) purchased and sold, (b) caused to be

purchased and sold, and (c) communicated such material, non-public information under circumstances in which it was reasonably foreseeable that such communication would likely result in the purchase and sale of, such securities and securities convertible into and exchangeable for such securities and options and rights to obtain and to dispose of any of the foregoing securities, without public disclosure by press release or otherwise of such material, non-public information within a reasonable time prior to such purchase and sale, to wit, SEAN STEWART provided ROBERT STEWART with material, non-public information about Lincare, which was to be the subject of a tender offer, and ROBERT STEWART communicated such information to Cunniffe, who executed the securities transactions listed below:

| Count | Order Dates | Transactions |
|---|---|---|
| 9 | May 29-<br>June 28, 2012 | Purchases of 375 Lincare call option contracts |

(Title 15, United States Code, Sections 78n(e) & 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) & 240.14e-3(d), and Title 18, United States Code, Section 2.)

**FORFEITURE ALLEGATION**

28. As a result of committing one or more of the offenses alleged in Counts One through Nine of this Indictment, SEAN STEWART and ROBERT STEWART, a/k/a "Bob," the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code,

Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses.

**Substitute Assets Provision**

29. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981; Title 28, United States Code, Section 2461; and Title 15, United States Code, Sections 78j(b), 78n(e), and 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-2, 240.14e-3(a), and 240.14e-3(d); and Title 18, United States Code, Section 2.)

FOREPERSON

PREET BHARARA TPK
United States Attorney

- TRUE BILL, SUPERSEDING INDICTMENT
MAG. JUDGE RONALD L. ELLIS
7-15-15