UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

         -v-

SEAN STEWART and ROBERT STEWART,

                Defendants.

S1 15 Cr. 287 (LTS)

 

**DEFENDANT SEAN STEWART'S
MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR FOR BILL OF PARTICULARS**

Tai H. Park
Kathleen E. Gardner
Tami Stark
PARK JENSEN BENNETT LLP
40 Wall Street
New York, New York 10005
Tel: 646-200-6300
Fax: 646-200-6301
tpark@parkjensen.com
kgardner@parkjensen.com
tstark@parkjensen.com

*Attorneys for Defendant
Sean Stewart*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................... 1

FACTUAL BACKGROUND ......................................................................... 4

ARGUMENT

POINT I
      THE INSIDER TRADING CHARGES SHOULD BE DISMISSED
      BECAUSE THE OFFENSE OF INSIDER TRADING, AS APPLIED,
      VIOLATES THE DUE PROCESS CLAUSE ....................................... 6

      A. Legal Standard ...................................................................... 7

      B. Concept of Breach of Fiduciary Duty Is Vague And Ambiguous ................... 8

          1.  The Government's Appeal From *Newman* Highlights Ambiguity ............ 8

          2.  Legislation Is Required .......................................................... 10

      C. The "Materiality" Element Increases Uncertainty of Insider Trading Law.... 13

POINT II
      THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE
      TO ALLEGE EACH ELEMENT OF INSIDER TRADING .............................. 14

      A. Legal Standards..................................................................... 15

      B. The Allegation of Breach of Fiduciary Duty Is Insufficient.......................... 16

          1.  Indictment Does Not Allege Expectation of Personal Benefit ................ 17

          2.  Allegations of Father's Wedding Gift Is Insufficient .............................. 18

          3.  No Allegation of Personal Benefit After June 2011 ................................ 20

      C. The Allegation of Materiality Is Insufficient................................................. 21

POINT III
      IN THE ALTERNATIVE, THE COURT SHOULD ORDER THE
      GOVERNMENT TO PROVIDE A BILL OF PARTICULARS......................... 25

      A. The Government Must Identify The Alleged Material Nonpublic
      Information Mr. Stewart Is Charged With Tipping. ............................... 26

      B. The Government Must Specify How Mr. Stewart is Alleged to Have
      Violated Fiduciary and Other Duties Alleged In the Indictment......................... 27

CONCLUSION............................................................................................ 29

i

**Table of Authorities**

**Cases**                                                              Page No.

*Apprendi v. New Jersey*, 530 U.S. 466 (2000)................................................ 15

*Chiarella v. United States,* 445 U.S. 222 (1980) ............................................. 8

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)................................................... 17

*Fasulo v. United States*, 272 U.S. 620 (1926) ................................................. 8

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ......................................... 1

*Kolender v. Lawson*, 461 U.S. 352 (1983)....................................................... 8

*Russell v. United States*, 369 U.S. 749 (1962) ................................................ 15

*TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438 (1976) ................................ 13

*United States  v. Conradt*, No. 12 Cr. 887 (ALC), Dkt 179,
    Tr. at 8-10 (S.D.N.Y. Mar. 2, 2015)........................................................... 17

*United States v. Atkins*, 661 F. Supp. 491 (S.D.N.Y. 1987) ............................ 6

*United States v. Boren*, 278 F.3d 911 (9th Cir. 2002) ..................................... 6

*United States v. Chestman*, 947 F.2d 551 (2d Cir.1991) .................................. 19

*United States v. Contorinis*, 692 F.3d 136 (2d Cir.2012) ................................ 13

*United States v. Cruikshank*, 92 U.S. 542 (1875) ............................................ 16

*United States v. Eaton*, 144 U. S. 677 (1892) .................................................. 8

*United States v. Gradwell*, 243 U.S. 476 (1917) .............................................. 8

*United States v. Nadi*, 996 F.2d 548 (2d Cir. 1993) ........................................ 8

*United States v. Newman*, 773 F.3d 438 (2d Cir. 2014) .................................. 1

*United States v. O'Hagan,* 521 U.S. 642 (1997) .............................................. *13*

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000)........................................... 19

*United States v. Rajaratnam,* No. 09 Cr. 1184 (RJH), 2010 WL 2788168 ..................... *26*

*United States v. Reese*, 92 U.S. 214 (1876) ...................................................... 14

*United States v. Skilling*, 561 U.S. 358 (1983) ................................................ 11


**Other Authorities**

1934 Securities Exchange Act, 15 U.S.C. §78j(b)............................................. 13

Dale A. Oesterle, *The Overused and Under-Defined Notion of "Material" in Securities Law*, 14 U. Pa. J. Bus. L. 167 (2011) ............................................................ 17

Donna M. Nagy, *Insider Trading and the Gradual Demise of Fiduciary Principles*, 94 Iowa L. Rev. 1315 (2009) ........................................................................ 16

*Materiality and a Theory of Legal Circularity,* 17 U. Pa. J. Bus. L. 543 (2015) ............. 17

*Materiality Guidance in the Context of Insider Trading: A Call For Action*, 52 Am. U. L. Rev. 1131 (2003) ................................................................... 17

Sarah Johnson, *SEC, PCAOB Pushed to Define Materiality*, June 20, 2007, available at *http:ww2.cfo.com/accounting-tax/2007/06/sec-pcaob-pushed-to-define-materiality)* . 17

*SEC v. Capital Gains Research Bureau and the Investment Advisers Act of 1940*, 91 Boston University Law Review 1051 (2011)........................................................ 15

Defendant Sean Stewart respectfully submits this Memorandum of Law in support of his Motion to Dismiss the Indictment, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure and in light of the Second Circuit's recent decision in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014) ("*Newman*").  In the alternative, Mr. Stewart respectfully moves the Court for an order compelling the government to provide a bill of particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure.

## PRELIMINARY STATEMENT

A criminal law that fails to provide a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," is unconstitutionally vague and ambiguous.  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

*Newman* is the law of the Second Circuit as it relates to insider trading and the critical element of breach of fiduciary duty.  In challenging this law, the Solicitor General told the Supreme Court that: "market participants and analysts who seek to comply with the law will lack clear guidance about the legal limits of their conduct."  The government used even more emphatic language in its bid for a rehearing and rehearing *en banc* as it told the Second Circuit: "[e]ven on [*Newman*'s] own terms, the new definition of [personal benefit] is deeply confounding and, contrary to the Panel's express intention of supplying clarity, is certain to engender confusion among market participants, parties, judges, and juries."[1]  The government has effectively conceded that the law in the Second Circuit, as it currently stands, is unconstitutionally vague.

---

[1] *See* the Declaration of Tai H. Park, dated September 18, 2015 ("Park Dec."), Ex. B. (*United States v. Newman*, Petition for a Writ of *Certiorari*), at 33, and Ex. D (Petition of the U.S.A. for Rehearing and Rehearing *En Banc*), at 2.

Notwithstanding its position, the government has filed an indictment that disingenuously assumes crystalline clarity in the law.  In charging Sean Stewart with insider trading, the superseding indictment ("Indictment") relies on conclusory, boilerplate language about breach of fiduciary duty, as if those three words should suffice to put Mr. Stewart on notice of how he is alleged to have committed a crime.  Such an indictment would have been insufficient even before the government recently announced intolerable vagueness on the question of fiduciary duty, but in the wake of *Newman*, the glaring gaps in the Indictment are indisputable.

The Indictment alleges that Mr. Stewart knowingly shared material nonpublic information about pending deals to his father, Robert Stewart, so that his father could trade on that information.  Apart from alleging the broad outlines of that theory, and providing details about what <u>Robert</u> Stewart did together with his co-conspirator, Richard Cunniffe, the Indictment says virtually nothing about what <u>Sean Stewart</u> did or why.  It does not allege what he knew about the deals, when he knew it, what information he shared, or when.   And most critically, it says nothing about why Mr. Stewart allegedly shared the unspecified information.

In order to prove Mr. Stewart committed a crime, the government must prove beyond a reasonable doubt that he intentionally passed on material nonpublic information to his father in breach of duties owed to the source of the information, by sharing the information in exchange for a personal benefit.  That benefit must be "objective, consequential, and represent[] at least a potential gain of a pecuniary or similarly valuable nature."  *Newman*, 773 F.3d at 452.  This is the very language of the decisional law the government has so fiercely challenged.  Yet the Indictment does not even allege Mr. Stewart gave the information to his father expecting any personal benefit in exchange.

In this motion, Mr. Stewart moves to dismiss the insider trading charges because the securities anti-fraud provision is unconstitutional as applied to the doctrine of insider trading.  As explained in Point I below, the law is too vague and ambiguous to satisfy the constitutional due process requirement that the criminal laws provide clear notice of prohibited conduct.  If even the Solicitor General of the United States cannot agree with a panel of distinguished jurists in the preeminent Circuit Court of this nation about an issue of elemental importance to the offense, there can be little question that the Solicitor General was right when he told the Supreme Court that laypersons do in fact "lack clear guidance about the legal limits of their conduct."  While the government wishfully argues that that vagueness was created by *Newman*, it has in fact exposed an endemic problem with the law that no case, reversal, or argument can solve.  As such the insider trading charges must be dismissed.

Moreover, as discussed in Point II, even if there is some construction of the insider trading law that can be said to be constitutionally sufficient, the Indictment still fails.  *Newman* requires the government to step up to the plate and provide factual particulars as to whether Mr. Stewart is alleged to have shared information with his father in exchange for a personal benefit, and, if so, what that pecuniary benefit or benefit "of consequence" is alleged to have been received.  The conclusory assertion in the Indictment that Mr. Stewart breached his fiduciary duty or other unspecified duties fall far short of this requirement.[2]  The government's own briefs to the Second Circuit and the Supreme Court regarding the ambiguity of this critical element preclude any argument to the contrary.  Because the Indictment fails to allege the factual particulars of an element,

---

[2] The defense, of course, in no way concedes Mr. Stewart knowingly provided any information to his father, but given the standards for reviewing the sufficiency of an Indictment, we address in this motion only the gaps in the Indictment that constitute fatal deficiencies as a matter of law.

it fails under the Fifth and Sixth Amendments of the United States Constitution, and should be dismissed.

Finally, as explained in Point III below, even if some part of the Indictment survives this motion, the Court should require the government to submit a bill of particulars specifying the information necessary to prepare a defense as to each of the elements of the offenses charged.

## FACTUAL BACKGROUND

Sean Stewart is charged with securities fraud and conspiracy to commit securities fraud by engaging in insider trading as a tipper.  According to the Indictment, the truth of which is assumed for purposes of this motion, Mr. Stewart received material, nonpublic information concerning five planned acquisitions, and then provided that information to his father, Robert Stewart, so that Robert could trade on the basis of the information. Park Dec., Ex. A (Indictment), ¶ 8.   The insider trading scheme allegedly took place over the course of four years, beginning in or around March of 2011.

The Indictment alleges Sean Stewart "tipped" his father concerning the following five transactions:

- The acquisition of Kendle by INC, publicly announced on May 4, 2011. Indictment ¶ 10.

- The acquisition of KCI by Apax, publicly announced on July 13, 2011. Indictment ¶ 11.

- The acquisition of Gen-Probe by Hologic, publicly announced on April 30, 2012.  Indictment ¶ 12.

- The acquisition by tender offer of Lincare by Linde, publicly announced on July 1, 2012.  Indictment ¶ 13.

- The acquisition of CareFusion by Becton, publicly announced on October 5, 2014.  Indictment ¶ 14.

While the Indictment provides extensive details about when and how Robert and his co-conspirator, Cunniffe, traded, it provides only the most conclusory assertions as to Mr. Stewart.  For example, it alleges that, in breach of fiduciary and other duties owed, Mr. Stewart provided "material nonpublic information" regarding the pending deals to his father (Indictment ¶¶ 8, 21), but says nothing about what that information was, when it was shared, why it was material, to whom or what Mr. Stewart owed the alleged duties and in what way he is alleged to have violated those duties.

More specifically, it fails to allege that Mr. Stewart provided information to his father in exchange for some pecuniary benefit.  And while there is an allegation that after the earliest transaction at issue in this case, involving Kendle, Mr. Stewart's father paid $10,055 for his son's wedding photographer (Indictment ¶ 18(c)), the Indictment does not allege that Mr. Stewart provided information regarding Kendle in expectation of that payment, or that Robert Stewart helped with the costs of the wedding because he was given confidential information by his son.

Moreover, while Robert and Cunniffe's trading in advance of the public announcement of each of the other four subsequent corporate deals is separately charged as a substantive offense, there are no allegations that Mr. Stewart received a pecuniary benefit as to any one of those four deals: KCI, Gen-Probe, Lincare, and Becton.  *See* Indictment ¶¶ 23, 25 and 27.

It is undisputed that prior to his arrest, Robert Stewart told Cunniffe, whom Robert believed to be his co-conspirator but who had by then begun cooperating with the government, that Sean Stewart had no knowledge of Robert's trading activities.  *See* Park

Dec. ¶ 11.[3]  These statements were tape-recorded by the government and produced in

discovery.  *Id.*  In addition, subsequent to his arrest, Robert Stewart was interviewed

extensively by government agents in a videotape-recorded meeting.  During that

interview, while Robert readily conceded that he had traded on the basis of inside

information, he informed the government that his son, Sean, did not know that Robert

would be trading on any information.  *Id.*, ¶ 12.

### ARGUMENT

#### POINT I

#### THE INSIDER TRADING CHARGES SHOULD BE DISMISSED BECAUSE THE OFFENSE OF INSIDER TRADING, AS APPLIED, VIOLATES THE DUE PROCESS CLAUSE

Contrary to popular misconception, the law prohibiting insider trading is not

intuitive or instinctive; it is instead highly complex, technical and continues to evolve.

The urgent effort by the government in its recent petition for *certiorari* to the Supreme

Court seeking to overturn the Second Circuit's *Newman* decision only highlights how

deeply problematic one of the key elements – fiduciary duty -- is.  The government

argues that the Second Circuit, indisputably the Court most expert in the securities law,

got the law of insider trading horribly wrong, and that the Supreme Court must swiftly

undo the damage.  It declared that, under *Newman*, there is "uncertainty in the financial

community about the boundaries of legitimate conduct," and that "market participants

---

[3] While the Park Declaration contains a proffer of facts that are outside the four corners of the Indictment, they are facts that are not likely to be disputed by the government and, we respectfully submit, may properly be considered in connection with evaluating a constitutional challenge to the sufficiency of an Indictment.  *See United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) (noting that where motion to dismiss is premised on ground other than failure to state an offense, court may look beyond four corners of Indictment); *see also United States v. Atkins*, 661 F. Supp. 491, 494-5 (S.D.N.Y. 1987) (court accepted defense affidavit for purpose of giving context to legal argument on motion to dismiss indictment).

and analysts who seek to comply with the law will lack clear guidance about the legal
limits of their conduct." Park Dec., Ex. B, at 32-3.  The SEC similarly warned that the
law, as it stands, "likely will lead to confusion about the governing standard."  Park Dec.,
Ex. C at 10.  And the U.S. Attorney for the Southern District stated, in its petition to the
Second Circuit for rehearing *en banc*, that the law currently "defies practical application."
Park Dec., Ex. D at 11.  Whatever one may say about the government's position, their
pronouncements to the Supreme Court and the Second Circuit confirm that reasonable
minds can differ, even on a point as critical to the theory of insider trading as the conduct
that constitutes breach of fiduciary duty.  And it is not just that element that continues to
perplex; the famously ambiguous notion of materiality is another key element of insider
trading that serves to further blur the line between permitted and prohibited conduct.  The
Due Process Clause does not permit such persistent uncertainty where the criminal law is
concerned, and the Court should conclude that the so-called insider trading law, as
applied to Mr. Stewart, is unconstitutionally vague and ambiguous.

### A.  Legal Standard

To comply with the Constitution, a criminal law must provide a "person of
ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may
act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Thus, in
rejecting the government's broad construction of the "honest services" language of the
mail fraud statute, the Supreme Court in *Skilling v. United States*, 561 U.S. 358 (2010),
reiterated: "To satisfy due process, 'a penal statute [must] define the criminal offense [1]
with sufficient definiteness that ordinary people can understand what conduct is
prohibited and [2] in a manner that does not encourage arbitrary and discriminatory
enforcement.'"  *Id.* at 403-4 (quoting from *Kolender v. Lawson*, 461 U.S. 352, 357

(1983*)). See also United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993) ("When the challenge is vagueness "as-applied," there is a two-part test: a court must first determine whether the statute " 'give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and then consider whether the law 'provide[s] explicit standards for those who apply [it].'") (Internal citations omitted).

Measured against these standards, the law of insider trading falls far short, because it incorporates two elements that have defied clear definition – breach of fiduciary duty and materiality.

## B. Concept of Breach of Fiduciary Duty Is Vague And Ambiguous

### 1. The Government's Appeal From *Newman* Highlights Ambiguity

In assessing the clarity or ambiguity of this law, one begins with the fact that no statute forbids insider trading.[4]  See Newman, 773 F.3d 438, 445 ("neither [Section 10(b)] nor the regulations issued pursuant to it, including Rule 10b-5, expressly prohibit insider trading").  Insider trading is not the creature of legislation but is, instead, an evolving theory of criminal liability that the government has sought to expand and that the courts have struggled to contain since at least 1980, when the theory was first addressed by the Supreme Court in *Chiarella v. United States,* 445 U.S. 222 (1980).[5]

---

[4] Section 14 of the Securities Exchange Act does contain a variation on what is commonly understood to be insider trading, but Congress saw fit to expressly limit that law to the tender offer context.  The discussion in Point I above is addressed to Counts One through Eight, which are all premised on the law of insider trading and Section 10(b).  Point II applies to all counts.

[5] As such, it should be noted that the law runs afoul of the well-established principle that "[t]here are no constructive offenses; and before one can be punished, it must be shown that his case is plainly within the statute." *Fasulo v. United States*, 272 U.S. 620, 629 (1926).  There is no such thing as a common law federal criminal offense. *See United States v. Eaton*, 144 U. S. 677, 687 (1892); *United States v. Gradwell*, 243 U.S. 476, 485 (1917).   And yet, the edifice of cases that loosely define the crime of insider trading has created exactly that: a common law, constructive offense.  While insider trading cases are tied to Section 10(b), a reasonable person cannot discern in that statute or the equally broad terms of Rule 10b-5 the principles of insider trading that have

While case law traces the insider trading doctrine back to Section 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. §78j(b), which prohibits the use "in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance. . . ," that case law is, to put it mildly, complicated.  *Cf. Newman*, 773 F.3d at 445-6  (tracing the theory of the law and its connection to the language of section 10(b), including the classical theory, the misappropriation theory, and the tipper-tippee liability theory, all resulting from judicial decisions).  There is no other criminal offense that relies on such a labyrinthine organization of cases.

At the very core of the offense is the nebulous notion that an insider breaches his or her fiduciary duty.  Section 10(b)'s proscription against a "deceptive device," is said to be violated when an insider breaches his fiduciary duty to a company and its shareholders by trading on information for personal gain.  *See United States v. O'Hagan*, 521 U.S. 642, 652 (1997).  But this connection is neither intuitive nor easily explained, and it is at this critical joint of the law that the government has most recently challenged the *Newman* decision.

As the Second Circuit explained, "the exchange of confidential information for personal benefit is not separate from an insider's fiduciary breach; it *is* the fiduciary breach that triggers liability for securities fraud under Rule 10b-5." *Id*. at 447-8 (emphasis in original).   That is because "the insider's disclosure of confidential information, standing alone, is not a breach." *Id*. at 448.

What constitutes an "exchange for a personal benefit?"  *Newman* held that the insider-tipper must have derived a pecuniary or similarly valuable benefit in exchange for

---

developed over the past three decades and that continue to be parsed and redefined.  *Cf. Skilling, 561 U.S.* at 415-6 (Scalia, J. concurring: "A statute that is unconstitutionally vague cannot be saved by . . . judicial construction that writes in specific criteria that its text does not contain."

information:

> To the extent *Dirks* [463 U.S. 646 (1983)] suggests that a personal benefit may be inferred from a personal relationship between the tipper and tippee, where the tippee's trades "resemble trading by the insider himself followed by a gift of the profits to the recipient," *see* 463 U.S. at 664, 103 S.Ct. 3255, we hold that such an inference is impermissible in the absence of proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature.

*Id*. at 452.

The Court vacated the defendant-tippees' conviction because the evidence was insufficient to prove beyond a reasonable doubt that the corporate insiders received a pecuniary benefit in exchange for their tips.  Evidence that one of the tippers received career advice was insufficient to prove this element.  *Id.* at 452-3.

The government took strong issue with *Newman*.  Employing unusually urgent language, it first sought rehearing and rehearing *en banc*, which was denied, and then filed a petition for *certiorari* to the Supreme Court.  In the government's view, a breach can be shown by the mere fact that the tipper gave information as a gift to a friend or relative, expecting nothing in return.  Relying on *Dirks*, the government contends that *Newman* materially redefines the law by requiring a benefit in exchange for information.

But such a contention assumes the element of fiduciary duty was sufficiently clear before *Newman*.  It was not, and the very fact of the government's vehement disagreement with the Second Circuit, and its acknowledgement that there exists no "clear guidance" or "practical application" of the law, only underscore the fatal ambiguity in the concept.

### 2.  Legislation Is Required

As commentators have recognized, the law of insider trading "is hardly an

---

*citing United States v. Reese*, 92 U.S. 214, 219–221(1876).)

example of clarity, and its fiduciary foundation is unstable."  Arthur B. Laby, *SEC v. Capital Gains Research Bureau and the Investment Advisers Act of 1940*, 91 Boston University Law Review 1051, 1088-98 (2011) (arguing that the source and the contours of a "federal fiduciary duty" remain cloaked in ambiguity).  "There have long been questions about the fiduciary foundation of the insider trading prohibition."  *Id.* at 1096.

    The most analogous area of law in which courts have struggled with the notion of fiduciary duty in criminal law is the mail and wire fraud context, which culminated in the *Skilling* decision.  The government and the courts wrestled for decades to cabin the reach of Section 1341 of Title 18 United States Code, especially with respect to the notion of deprivation of "the intangible right to honest services."  The Supreme Court struck down prosecutions premised on such conduct, and Congress responded with an amended statute, Section 1346, that expressly prohibited that conduct.  In *Skilling*, faced with a void for vagueness challenge, the Court vacated the conviction of Enron's CEO, Skilling, as it ruled the honest services language could be squared with constitutional requirements only if it were construed to prohibit solely kickbacks and bribery.  *United States v. Skilling*, 561 U.S. 358, 399-412 (1983).

    In his concurrence, Justice Scalia observed that the source of a fiduciary relationship must be clearly defined where the undisclosed breach of that relationship constitutes a crime.  *See id.* (noting the "indefiniteness of the fiduciary duty").  While the majority concluded that such vagueness concerns were alleviated by limiting the honest services language to bribery and kickbacks, Justice Scalia cautioned that that construction would not cure the vagueness at the heart of the statute because it would "not solve the most fundamental indeterminacy: the character of the 'fiduciary capacity' to which the bribery and kickback restriction applies." *Id.* at 421.  Even with the majority's limitations

"the statute does not answer the question 'What is the criterion of guilt?'" *Id.*

It blinks reality to pretend that the answer to this question as applied to insider trading is clear. Unlike Section 1346's honest services language, the insider trading law is not even premised on a congressional prohibition of insider trading. If the fiduciary duty concept that was directly implicated by a congressional prohibition in section 1346 remains insufficiently clear, the constructive offense of insider trading premised on judicial opinions is even more problematic.

Legal commentators, scholars and the business community have suggested, repeatedly, that Congress step in to define the law. *See, e.g.,* Donna M. Nagy, *Insider Trading and the Gradual Demise of Fiduciary Principles*, 94 Iowa L. Rev. 1315, 1320 (2009) (urging Congressional action "[r]ather than allowing lower courts and the SEC to continue on a course of revisionism and results-oriented decisionmaking"). Yet, to date, Congress has steadfastly declined to take on this legislative task.

The consequence has been that, 35 years after *Chiarella*, the Solicitor General finds himself telling the Supreme Court that a decision from the nation's preeminent court on matters of securities law has left "market participants and analysts who seek to comply with the law [] lack[ing] clear guidance about the legal limits of their conduct." Park Dec., Ex. B at 33. The SEC warns that the law, as it stands, "likely will lead to confusion about the governing standard." Park Dec., Ex. C at 10. And the U.S. Attorney for the Southern District believes that the law currently "defies practical application." Park Dec., Ex. D at 11. That is the very definition of a law that is vague and ambiguous under the Due Process Clause. The government cannot now be heard to argue that insider trading law provides sufficient notice.

## C.  The "Materiality" Element Increases Uncertainty of Insider Trading Law

The ambiguity of the insider trading law is made all the worse by the element of materiality.  One who trades on confidential information that is not material has not committed the crime of insider trading.  The SEC has refused to define this term, and thus when it fell upon the courts to shape the contours of this concept, they came up with the principle that information is material if a reasonable investor would deem it important to his trading decision.  *Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (*quoting TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976)).  *See also United States v. Contorinis*, 692 F.3d 136, 143-44 (2d Cir.2012).  This definition has spawned legions of cases and criticism throughout the country for decades.  *See, e.g.,* Dale A. Oesterle, *The Overused and Under-Defined Notion of "Material" in Securities Law*, 14 U. Pa. J. Bus. L. 167, 168, n. 8 (2011) and articles cited therein (noting that "academics have long been critical of the vagueness" of the materiality standard); Wendy Gerwick Couture, *Materiality and a Theory of Legal Circularity,* 17 U. Pa. J. Bus. L. 543 (2015); Joan MacLeod Heminway, *Materiality Guidance in the Context of Insider Trading: A Call For Action*, 52 Am. U. L. Rev. 1131 (2003).

While the investing community has made persistent calls to the SEC, the chief regulator of the securities market, to provide a clear, workable definition (*see, e.g.,* Sarah Johnson, *SEC, PCAOB Pushed to Define Materiality*, June 20, 2007, available at *http:ww2.cfo.com/accounting-tax/2007/06/sec-pcaob-pushed-to-define-materiality)*, the regulator has consistently demurred, presumably so that the government may have the broadest discretion to select the cases it will choose to prosecute.

If that was the plan, the government's strategy has worked.  But one sure sign of a constitutionally defective criminal law is one that is so open-ended as to "encourage

arbitrary and discriminatory enforcement.'" *Skilling,* 561 U.S. at 416 (Scalia, J., concurring in part and concurring in the judgment).  The law of insider trading is precisely such a law.

*     *     *

Because the insider trading law incorporates as elements concepts that elude clear definition, the law, as applied, violates the Due Process Clause.  The charges premised on such law should be dismissed.

**POINT II**

**THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE
TO ALLEGE EACH ELEMENT OF INSIDER TRADING**

If, notwithstanding the fundamental problems with the law, the Court concludes that it passes constitutional muster, the Court should nevertheless dismiss the Indictment for failure to provide Sean Stewart with notice of how he is alleged to have violated the law.  The Indictment simply and conclusorily tracks the language of insider trading case law.  Such allegations were never sufficient but are now even less so, in light of the government's own claim that, under *Newman*, investors "lack clear guidance about the legal limits of their conduct" and that the law "defies practical application."  Park Dec., Ex. B at 33, Ex. D at 11.  In what way is Mr. Stewart deemed to have breached a fiduciary duty?  What was the duty?  What was his personal benefit?  The Indictment improperly leaves the defense to guess.   Moreover, the Indictment provides virtually no details on what material information Mr. Stewart is alleged to have shared and when.  If their contention is that Mr. Stewart obliquely mentioned to his father that he was working on a deal involving a company, the Indictment would fail because such information is immaterial as a matter of law.  Perhaps to avoid this consequence, the government

14

neglects to offer any allegation of materiality at all.

The Constitution does not tolerate such hedging in a charging instrument, and the Indictment must be dismissed.

### A. Legal Standards

The United States Constitution requires that a defendant be provided with notice of the accusations he must answer.  U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . .").  An indictment that fails to plead all of the essential facts required to be proven beyond a reasonable doubt must be dismissed for violation of the Fifth and Sixth Amendments.  *See United States v. Pirro*, 212 F.3d 86, 95 (2d Cir. 2000) (affirming dismissal where the tax fraud indictment alleged that defendant made an omission without sufficiently pleading a duty to disclose).  The Fifth Amendment's Indictment Clause guarantees that a grand jury will determine probable cause as to all the facts that are legally essential to the offenses charged.  *Russell v. United States*, 369 U.S. 749, 770 (1962); *Apprendi v. New Jersey*, 530 U.S. 466, 489 n.15 (2000) ("The indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted.") (internal quotation marks omitted).  If an indictment does not state all of the "crucial background fact[s]" required to constitute the charged offense, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury or that the grand jury acted properly in indicting him.  *Pirro*, 212 F.3d at 92–93.  Moreover, the Sixth Amendment and "basic principles of fundamental fairness" require that the indictment apprise the defendant of the charges he must meet.  *Russell*, 369 U.S. at 765.

To satisfy this requirement, "it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the specifics, – it

must descend to particulars." *Id.* (internal quotation marks omitted). "Similarly, when one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." *Pirro*, 212 F.3d at 93 (internal quotation marks omitted); *United States v. Cruikshank*, 92 U.S. 542, 556 (1875) ("Everything essential must be charged positively, and not inferentially.").

Rule 7(c) of the Federal Rules of Criminal Procedure more particularly embodies these constitutional requirements. Thus, as the Supreme Court in *Russell* explained, Rule 7(c) requires consideration of two factors:

> first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

*Russell,* 369 U.S. at 763-64 (quotations omitted). Thus, "for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." *Pirro,* 212 F.3d at 93.

### B.  The Allegation of Breach of Fiduciary Duty Is Insufficient

As discussed in Point I *supra*, the government strongly disagrees with *Newman* that the government is required to prove the insider/tipper provided material nonpublic information for "an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." But that is the law of this Circuit: they must prove the tipper/insider "breached his fiduciary duty by (a) disclosing confidential information to a tippee (b) in exchange for a personal benefit." *Newman* 773

16

F.3d at 450.  And "in order to form the basis for a fraudulent breach, the personal benefit

received in exchange for confidential information must be of some consequence." *Id*. at

452.[6]

The Indictment comes nowhere close to alleging this element, and indeed, it does

not even try.

### 1.  Indictment Does Not Allege Expectation of Personal Benefit

The Indictment claims that Mr. Stewart provided information to his father "in

breach of fiduciary duties and other duties of trust and confidence owed to the sources of

the information" (Indictment ¶ 9), but it does not allege that Mr. Stewart did so with

intent, knowledge or expectation that he would receive any benefit whatsoever in

exchange, much less a pecuniary benefit or something else "of consequence."  Instead,

the Indictment alleges that Mr. Stewart's father, Robert:

> used the material, non-public information to his pecuniary advantage and
> to confer a pecuniary advantage upon SEAN STEWART, the defendant.
> Among the pecuniary benefits that SEAN STEWART received as part of
> the insider trading scheme was payment by [Robert], from the proceeds of
> the scheme, of expenses related to SEAN STEWART's wedding in or
> about June 2011.

(Indictment ¶ 9.)  Moreover, in the Overt Acts section, ¶18(c), of the Indictment, the

government alleges that Robert Stewart "using the proceeds of the sale of Kendle stock,

paid a check in the amount of $10,055 to a photographer who had been hired for the

wedding of Sean Stewart."

---

[6] The government told the Supreme Court: "[a] case in which an insider gifts inside information
to a trading friend or relative will not meet the Second Circuit's new standard absent evidence
that the relationship was 'meaningfully close' and that the insider stood to obtain money (or
something of "similar" value) via an 'exchange.'  Such evidence will not always exist."  (Park
Dec., Ex. B at 32).  Thus, the government voluntarily moved to dismiss a case pending before the
Hon. Andrew L. Carter of this Court for lack of evidence of that very element.  *U.S. v. Conradt*,
No. 12 Cr. 887 (ALC), Dkt 179, Tr. at 8-10 (S.D.N.Y. Mar. 2, 2015).

What is critically missing is any assertion that Mr. Stewart provided the information to his father so that he could receive the pecuniary benefit alleged. The Indictment could easily be read as the father providing the benefit to Mr. Stewart without any expectation on the part of Mr. Stewart. As such, the Indictment fails to charge a necessary element and must be dismissed. *See United States v. Cassese*, 273 F. Supp. 2d 481, 486 (S.D.N.Y. 2003) (dismissing an insider trading charge where the misappropriator's relationship with the source was legally insufficient to support a duty of trust and confidence on the facts alleged); *see also United States v. Heicklen*, 858 F. Supp. 2d 256, 276 (S.D.N.Y. 2012) (dismissing indictment where the court determined that the offense of attempting to influence the actions of a juror required the allegation that defendant sought to influence a juror in relation to a specific case).

### 2.   Allegations of Father's Wedding Gift Is Insufficient

To the extent the Indictment is alleging that Mr. Stewart violated his fiduciary duty because he wanted his father to pay for a wedding photographer, the proposition is ludicrous on its face.[7]  Mr. Stewart is Robert's first-born son, and this was his first and only wedding. Park Dec., ¶ 13. The government would transform a commonplace custom of the groom's parents paying for some costs of a wedding into "the objective, consequential" benefit that "represents at least a potential gain of a pecuniary or similarly valuable nature," that *Newman* requires in order to prove breach of a fiduciary duty. If this were all that were required, *Newman* would lose all force whatsoever (which of course would suit the government just fine).

In *Newman*, the government proved that the insider received career advice from

_____

[7] Of course, if that is the contention, the Indictment must explicitly tie the wedding gift to the personal benefit by alleging that Mr. Stewart tipped in expectation of that benefit. The

the tippee, but the Court dismissed that so-called benefit as immaterial: "the 'career advice' that Goyal [the tippee] gave Ray, the Dell tipper, was little more than the encouragement one would generally expect of a fellow alumnus or casual acquaintance. . . . Crucially, Goyal testified that he would have given Ray advice without receiving information because he routinely did so for industry colleagues." *Newman*, 773 F.3d at 453. Similarly, "one would generally expect" a father to help a son with some of the modest costs of his first and only wedding, and it is the exceptional case indeed where a father in this country would not offer such assistance. Yet, the gift of a father to his son, who was an investment banker, to cover the costs of a wedding photographer is all that the government can muster in its effort to fashion a theory of criminal conduct.

The point of *Newman*, which the government refuses to accept, is that a breach of fiduciary duty constituting a form of criminal deception involves conduct motivated by personal gain. *See also Dirks*, 463 U.S. at 662 ("Whether disclosure is a breach of duty therefore depends in large part on the purpose of the disclosure."). It is that corrupt purpose that the courts have held to justify a prohibition of insider trading under the auspices of Section 10(b) and its anti-fraud provisions. As *Newman* reminded the government: "'not every instance of financial unfairness constitutes fraudulent activity under § 10(b).' *Chiarella*, 445 U.S. at 232. *See also United States v. Chestman*, 947 F.2d 551, 578 (2d Cir.1991) (Winter, J., concurring) ('The policy rationale [for prohibiting insider trading] stops well short of prohibiting all trading on material nonpublic information. Efficient capital markets depend on the protection of property rights in information. However, they also require that persons who acquire and act on information

---

government did not charge that because there is no evidence upon which the grand jury could have drawn such a silly connection.

about companies be able to profit from the information they generate. . . .')." 773 F.3d at 449.

Thus, when *Newman* required proof of a personal benefit of "some consequence," it could not have meant the kinds of gifts that any son routinely expects of his father during a major milestone of a son's life. *See also United States v. Geibel*, 369 F.3d 682, 692 (2d Cir. 2004) (no conspiracy where, among other things, tipper received "trivial" amount of $6,000, tipper "benefited little from" remote tippee's use of information, and "[a]ny benefits given to [tipper] by defendants were informal and gratuitous, rather than disbursed pursuant to a formal agreed-upon exchange, such as a set percentage of the trading profits").

The allegation is insufficient as a matter of law to sustain the government's burden of proof beyond a reasonable doubt. This is not a question to defer to a jury, because no rational jury could conclude beyond a reasonable doubt that a son would need to induce his father with a criminal tip to get some help defraying the costs of his wedding. Indeed, as the government admitted in its Criminal Complaint, Robert Stewart has consistently asserted that Mr. Stewart never knew that Robert was taking information from his son to trade on it. *See* Park Dec., Ex. E at ¶ 37(d) and (e).

And, it bears reemphasis, the Indictment does not even allege that Mr. Stewart provided information in expectation of any benefit, much less the benefit of a father's expression of love for his son on his wedding day. Such a theory defies common sense and would be comical, were it not for the terrible cost to Mr. Stewart visited upon him by the mere filing of criminal charges.

### 3.  No Allegation of Personal Benefit After June 2011

As to Counts Six (relating to Gen-Probe), Seven (relating to Lincare), Eight

20

(relating to CareFusion) and Nine (relating to Lincare) of the Indictment, there are no allegations of personal benefit at all. Trading in each of those securities are alleged to have occurred long after the June 2011 wedding gift. Thus, even if allegations about the father's gift had even marginal relevance to the conduct prior to June 2011, it has none for the conduct taking place after the gift. The Indictment makes no effort to tie those alleged tips and trades to any personal benefit to Mr. Stewart whatsoever.

"The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (quotations omitted). Because the Indictment fails to allege the element of breach of fiduciary duty with anything approaching factual particularity, it must be dismissed.

### C. The Allegation of Materiality Is Insufficient

Apart from repeating the conclusory assertion that Mr. Stewart acquired and disclosed "material nonpublic information" about pending deals, the Indictment provides almost no factual particularity about the disclosures: what was disclosed and when. Instead, the Indictment merely states that a deal was pending, that Mr. Stewart "tipped Robert Stewart about this deal," and it then describes the trading activities of Robert and his co-conspirator, Cunniffe. *See e.g.*, Indictment ¶¶ 10-14. Because such allegations provide no factual particularity as to materiality, the Indictment must be dismissed.

Inside information is "material" if it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, (1988) (*quoting TSC Indus. v. Northway Inc.*, 426 U.S. 438, 449 (1976)); *United States v. Jiau*, 734 F.3d 147, 154 (2d Cir. 2013).

The concept is notoriously malleable and "depends on the facts and circumstances," which is all the more reason why the Indictment must do more than simply claim materiality. This is especially true "[i]n the context of a merger, where information can be speculative and tenuous, [and] the materiality standard may be difficult to apply." *SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir.1997).

Mr. Stewart cannot meaningfully defend himself on the element of materiality without knowing what he is alleged to have told his father and when. This is because, in the merger context, materiality is directly linked to the likelihood that the merger will be accomplished. The more tentative the discussions, the less useful the information would be to investors. *Taylor v. First Union Corp. of S.C.*, 857 F.2d 240, 244 (4th Cir. 1988), *cert. denied*, 489 U.S. 1080 (1989). Materiality of a potential merger or acquisition "is considered in light of the likelihood that it will occur." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 181 (2d Cir. 2001).

As directly relevant here, "[t]he mere fact that a company has received an acquisition overture or that some discussion has occurred will not necessarily be material. Those in business <u>routinely</u> discuss and exchange information on matters which may or may not eventuate in some future agreement." *Glazer v. Formica Corp.*, 964 F.2d 149, 155 (2d Cir. 1992) (emphasis added). "The mere 'intention' to pursue a possible merger at some time in the future, without more, is simply not a material fact under Rule 10b-5." *Panfil v. ACC Corp.*, 768 F. Supp. 54, 58 (W.D.N.Y. 1991), *aff'd*, 952 F.2d 394 (2d Cir. 1991); *Carlin Equities Corp. v. Offman*, No. 07-cv-359, 2008 WL 4387328, at **10-11 (S.D.N.Y. Sept. 24, 2008).

Thus, the securities case law is packed with cases holding that news of a pending deal are immaterial as a matter of law. *See e.g., Mayhew,* 121 F.3d at 52 (Merger

"[i]nformation [that] is so general that the recipient thereof is still 'undertaking a substantial economic risk that his tempting target will prove to be a 'white elephant'" is not material.), *quoting SEC v. Monarch Fund,* 608 F.2d 938, 942 (2d Cir.1979));  *SEC v. Wyly*, 33 F. Supp. 3d 290 (S.D.N.Y. 2014) (desire and agreement of chairman and vice chairman to sell company not material without more); *In re General Motors Class E Stock Buyout Securities Litigation*, 694 F. Supp. 1119 (D. Del. 1988) (inchoate information about transaction was immaterial as a matter of law); *Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411 (1st Cir. 1989) (Breyer, J.) (series of internal statements and tentative probes regarding possibility of being acquired were immaterial as a matter of law).

Moreover, materiality is tested as of the time the information was shared, and not with the benefit of hindsight.  In other words, the likelihood that the tip about a pending deal would mature into a signed deal must be measured as of the time it was shared, not as of the time the deal falls apart or is consummated.  As the Second Circuit held: "'[t]he probability of a transaction occurring must be considered in light of the facts as they then existed, not with the hindsight knowledge that the transaction was or was not completed.'"  *Castellano*, 257 F.3d at 185.

In the wake of this case law, an indictment that merely references pending deals and alleges that Mr. Stewart "tipped" his father as to such events is plainly insufficient. The government was obliged to allege, at a minimum, what information Mr. Stewart provided.  If he said, "I'm working on a deal involving a company X," the information would be immaterial as a matter of law.  If, on the other hand, he said, "Company X is going to announce that it is being acquired tomorrow," it is not immaterial.

The government, of course, is well aware of the distinction, and well aware that

the actual information provided and the timing of that information are key factual predicates of the materiality element.  It failed to allege the factual particulars either because it has no proof of such details, in which case its prosecution falls of its own weight,[8] or because it has chosen to withhold those details for tactical reasons.  Either way, the Indictment is defective and must be dismissed for failure to comply with the Due Process Clause.  *See Russell*, 369 U.S. at 769-770 (in prosecution of defendants for failure to answer questions put to them by an investigating congressional committee, indictment failed to identify the questions that defendants allegedly refused to answer and should have been dismissed as defective. The question under inquiry comprised "the very core of criminality" under statute).

By omitting any allegations as to what information Mr. Stewart is alleged to have "tipped," the Indictment omits the core subject "that is central to every prosecution" under insider trading laws.  *Id.* at 764.   The Court and the defendant are left to guess as to "what was in the minds of the grand jury at the time they returned the indictment." *Id.* at 770.  Just as in *Russell*, Mr. Stewart could "be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."  *Id.  Russell* is indistinguishable and requires dismissal of this fatally defective Indictment.

---

[8] In addition, if the government has no evidence of these basic facts, they must explain what instructions were given to the grand jury to cause that body to return an indictment charging materiality.  *See Pirro*, 212 F.3d at 92–93 (where indictment fails to allege the "crucial background fact[s]" required to constitute the charged offense, defendant cannot be assured he is being tried on the evidence presented to the grand jury or that the grand jury acted properly in indicting him).

**POINT III**

**IN THE ALTERNATIVE, THE COURT SHOULD ORDER
THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS**

If the Court does not dismiss the Indictment, it should, at a minimum, order the government to provide a bill of particulars pursuant to Rule 7(f).  A motion for a bill of particulars should be granted where additional details of the charge are "necessary to the preparation of [the] defense, and to avoid prejudicial surprise at the trial."  *United States v. Torres*, 910 F.2d 205, 234 (2d Cir. 1990) (quotation omitted); *see United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) ("Rule 7(f) . . . permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.").  The decision to order the filing of a bill of particulars rests within the sound discretion of the district court.  *Bortnovsky*, 820 F.2d at 574; *United States v. Nachamie*, 91 F. Supp. 2d 565, 570 (S.D.N.Y. 2000).

For all the reasons discussed in Point II *supra*, the Indictment lacks the "particular facts" necessary to protect Mr. Stewart's Fifth and Sixth Amendment rights.  *Russell*, 369 U.S. at 765.  By letter dated August 24, 2015, Mr. Stewart asked the government to provide certain basic information that is manifestly necessary, information that goes to the core of his defense.  *See* Park Dec., Ex. F.  By email dated August 31, 2015, the government informed Mr. Stewart that it would not be producing any further information and that, in their view, "a bill of particulars is not warranted in this case."  *See* Park Dec., Ex. G.  As the discussion in Point II makes abundantly clear, however, the government is wrong.

**A. The Government Must Identify The Alleged Material Nonpublic Information Mr. Stewart Is Charged With Tipping.**

The Indictment's conclusory allegations that Mr. Stewart acquired, used and tipped "material, non-public" or "valuable confidential information" as part of an insider trading scheme involving five separate transactions do not satisfy the standards of Rule 7.

In *United States v. Rajaratnam*, the Court granted, in part, the defendants' motions for a bill of particulars because allegations about the inside information were not specific enough. No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010).  In an explanation that applies squarely to the facts of this case, the Court reasoned:

> [T]his is an insider trading conspiracy case, which means the government must prove that the defendants conspired to acquire material nonpublic information. The merits of such a charge depend heavily on the facts and context. A defendant might argue that the information he sought to obtain was not material, or that it was already public at the time he tried to get it. But he can only do that if he knows what the information *is* and when it was conveyed.

*Id*. at *2 (emphasis in original).  Thus, the Court ordered the Government to specify "the substance of the information provided" and "the date(s) on which it was conveyed." *Id*. at *4-9.

Recognizing the central importance of the information allegedly tipped, other courts have likewise required that the government provide factual particulars of the alleged inside information.  *See, e.g., United States v. Contorinis*, 09 Cr. 1083 (RJS), Order, Dkt No. 49 (S.D.N.Y. May 5, 2010) (directing the Government to "submit a bill of particulars with respect to the material, non-public information allegedly disclosed in connection with" a specified transaction); *United States v. Falbo*, No. 92 CR. 0763 (PNL), 1993 WL 147441 (S.D.N.Y. Apr. 6, 1993) (granting motion for bill of particulars to the extent it requested the "material non-public information the government will

26

contend that defendant(s) learned"); *Santoro*, 647 F. Supp. 153, 188 (E.D.N.Y. 1986)

("[A] defendant cannot be expected to defend against a charge of insider trading without

knowing what the inside information is."), *rev'd by U.S. v. Davidoff¸* 845 F.2d 1151 (2d

Cir. 1988) (Second Circuit reversing insofar as trial court did not go far enough in

ordering bill of particulars in RICO case); *United States v. Nacchio*, 05 Cr. 545, 2006 WL

2475282, at *3, *5-9 (D. Colo. Aug. 25, 2006) (discussing court's previous order that the

government "identify 'all material nonpublic information that the Government claims

[defendant] was aware of between December 4, 2000 and September 10, 2001.'").

The boilerplate and conclusory language in the instant Indictment is even less

specific than the indictments at issue in the cases cited above. As such, the government

can have no excuse for refusing to provide the necessary factual details required by Rule

7.  Thus, Mr. Stewart respectfully requests that the Court approve paragraph 1 of the

proposed order, attached as Exhibit I to the Park Declaration, that pertains to the alleged

material nonpublic information referenced in the Indictment.

### B.  The Government Must Specify How Mr. Stewart is Alleged to Have Violated Fiduciary and Other Duties Alleged In the Indictment

As discussed *supra* at Point II(b), the Indictment provides virtually no details

about the crucial element of breach of fiduciary duty.  Instead, it simply recites the

conclusory claim that Mr. Stewart provided information to his father "in breach of

fiduciary duties and other duties of trust and confidence owed to the sources of the

information" (Indictment ¶ 9).  And while the government has repeatedly stated that

under *Newman* a prosecution of insider trading cannot stand absent proof of the insider's

receipt of an "objective, consequential" personal benefit, there is no allegation that Mr.

Stewart tipped his father with any expectation of such a personal benefit in exchange.

Long before *Newman*, Justice Frankfurter stated: "[t]o say that a man is a fiduciary only begins the analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligations does he owe as a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty?" *S.E.C. v. Chenery Corp*., 318 U.S. 80, 85–86 (1943). And more recently, this Court asked: "whether labeled a 'fiduciary' duty, or fiduciary-like 'duty of trust and confidence,' or whatever, the initial question remains: what is the source of this duty?" *United States v. Whitman*, 904 F. Supp. 2d 363, 368 (S.D.N.Y. 2012).

Judge Rakoff in *United States v. Gupta*, instructed the government to "spell ... out with reasonable specificity" – either in the superseding indictment or in a bill of particulars -- the facts underlying an allegation in the original indictment that Mr. Gupta "benefitted and hoped to benefit" from the insider trading scheme alleged there. Park Dec., Ex. H (*U.S. v. Gupta,* 11-cr-907 (JSR), Dkt 29-1, Tr. of hearing) at 18-21. As relevant here, in *Gupta*, Judge Rakoff challenged the government's contention that generally alleging a financial benefit was sufficient: "So what were the financial benefits?" "[W]hat is the financial benefit Mr. Gupta received from giving this inside information?" "We're talking about an essential element." "It's never a response to say, well, defendant knows -- we charged him with robbing a bank. He knows how he robbed the bank. That turns the presumption of innocence on its head. The question is: What is the financial benefit that you intend to prove?" *Id.*

The *Newman* decision, which followed the above cases, only underscores the need for factual particularity regarding the element of breach of fiduciary duty. If it was ever sufficient to simply recite the claim that a defendant breached his duties -- and it was not -- the government cannot continue to argue that such boilerplate remains sufficient.

28

Given the alarms it has raised both to the Second Circuit and the Supreme Court about how *Newman* altered the law on breach of duty (*see discussion supra* at Points I and II), it must acknowledge that the question of personal benefit must be spelled out, in order for Mr. Stewart to defend against the charges.

While the Indictment refers to Robert Stewart paying for Mr. Stewart's wedding photographer in June 2011, it does not go so far as to allege that Mr. Stewart tipped his father in exchange for that alleged benefit.  For the reasons discussed *supra* at II (B)(2), any such allegation would be absurd and, in any event, insufficient under *Newman*, but if that is the government's theory as presented to the grand jury, it must affirmatively say so and provide the particulars.

Accordingly, Mr. Stewart respectfully requests that the Court approve the proposed order (*see* Park Dec., Ex. I), paragraph 2, pertaining to the alleged breach of fiduciary and "other" duties referenced in the Indictment.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Indictment.  In the alternative, the Court should approve the proposed order directing the government to provide a bill of particulars.

Dated:  New York, New York

September 18, 2015

Respectfully submitted,

PARK JENSEN BENNETT LLP

By: _____

Tai H. Park
Kathleen Gardner
Tami Stark
40 Wall Street, 41st Floor

29

New York, New York 10005
(646) 200-6300

Attorneys for Defendant Sean Stewart