UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

          -v-

SEAN STEWART and ROBERT STEWART,

               Defendants.

S1 15 Cr. 287 (LTS)

# DEFENDANT SEAN STEWART'S
# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# MOTION TO DISMISS OR FOR BILL OF PARTICULARS

Tai H. Park
Kathleen Gardner
Tami Stark
Charles Carey
PARK JENSEN BENNETT LLP
40 Wall Street
New York, New York 10005
Tel: 646-200-6300
Fax: 646-200-6301
tpark@parkjensen.com
kgardner@parkjensen.com

*Attorneys for Defendant Sean Stewart*

**Table of Contents**

ARGUMENT ........................................................................................................................ 1

POINT I
   INSIDER TRADING LAW, AS APPLIED, VIOLATES THE
   DUE PROCESS CLAUSE ............................................................................................ 1

     A.  The Government's Current Theory Demonstrates Continued Ambiguity ................ 2

     B.  The Government's Reliance on the $15,000 Transaction Is Patently Misleading .... 5

     C.  The Government's Other Arguments Are Meritless ................................................ 6

     D.  The Government Fails To Address Inherent Ambiguity
        of Materiality Element ............................................................................................. 8

POINT II
   THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE
   EACH ELEMENT OF INSIDER TRADING ............................................................... 9

POINT III
   THE GOVERNMENT MUST PROVIDE A BILL OF PARTICULARS ........................... 11

CONCLUSION ................................................................................................................... 15

## Table of Authorities

Cases                                                                                                                           Page No.

*Buxbaum v. Deutsche Bank AG*,
   196 F. Supp. 2d 367 (S.D.N.Y. 2002) .................................................................................... 10

*United States v. Adondakis*,
   No. 11 Cr. 360 (JFK), ECF 16 (S.D.N.Y. Oct. 22, 2015) ............................................................ 7

*United States v. Conradt*,
   No. 12 Cr. 887 (ALC), 2015 WL 480419 (S.D.N.Y. Jan. 22, 2015) ........................................... 7

*United States v. Corbin,*
   729 F. Supp. 2d 603 (S.D.N.Y. 2010) ...................................................................................... 14

*United States v. Davidoff*,
   845 F.2d 1151 (2d Cir. 1988) .................................................................................................. 12

*United States v. Hoey*,
   No. S3 11 Cr. 337 (PKC), 2014 WL 2998523 (S.D.N.Y. July 2, 2014) .................................... 3

*United States v. Martoma*,
   No. 12 Cr. 973 (PGG), 2013 WL 2435082 (S.D.N.Y. June 5, 2013) ...................................... 12

*United States v. Newman*,
   773 F.3d 438 (2d Cir. 2014) .............................................................................................. *passim*

*United States v. Persky*,
   520 F.2d 283 (2d Cir. 1975) ...................................................................................................... 8

*United States v. Pirro,*
   212 F.3d 86 (2d Cir. 2000) ........................................................................................................ 3

*United States v. Rajaratnam*,
   No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) .............................. 11, 12

*United States v. Riley*,
   90 F. Supp. 3d 176 (S.D.N.Y. 2015) ....................................................................................... 13

*United States v. Safavian*,
   429 F. Supp. 2d 156 (D.D.C. 2006) .......................................................................................... 6

*United States v. Shyne*,
   No. S4 05 Cr. 1067 (KMK), 2007 WL 1075035 (S.D.N.Y. Apr. 5, 2007) ............................... 6

*United States v. Szur*,
   289 F.3d 200 (2d Cir. 2002) ...................................................................................................... 9

*United States v. Tortora*,
   No. 11 Cr. 430 (WHP), ECF 15 (S.D.N.Y. Oct. 22, 2015) ....................................................... 7

*United States v. Whitman*,
   --- F. Supp. 3d ---, No. 12 Cr. 125 (JSR), 2015 WL 4506507 (S.D.N.Y. July 22, 2015) .......... 7

Defendant Sean Stewart respectfully submits this reply memorandum of law in further support of his motion to dismiss the Indictment or, in the alternative, for an order compelling the government to provide a bill of particulars.

## ARGUMENT

### POINT I

### INSIDER TRADING LAW, AS APPLIED, VIOLATES THE DUE PROCESS CLAUSE

After repeatedly telling the Second Circuit and the Supreme Court that *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), was an intolerable change in the law of insider trading that left "market participants and analysts who seek to comply with the law [without] clear guidance about the legal limits of their conduct," that there is "uncertainty in the financial community about the boundaries of legitimate conduct," that the law under *Newman* is "deeply confounding" and "ambiguous" and "def[ies] practical application" (*see* Park Dec., Ex. B, at 33; Ex. D, at 2, 11 and 23),[1] and after moving to dismiss guilty pleas of defendants who actually agreed they committed insider trading, the government calls Mr. Stewart's constitutional challenge "frivolous." None of that confusion in the law applies to Mr. Stewart, they contend, because his conduct fell in the "heartland" of conduct prohibited by "settled" insider trading law before *Newman*, and, even under *Newman*, Mr. Stewart's conduct was unlawful. (*See* Govt. Opp. Br. at 16-7.) The safe harbor they seek in the midst of the current legal storm is the fact that Mr. Stewart and his bride received a wedding gift from his parents in the form of payment of

---

[1] Citations to "Park Dec." refer to the Declaration of Tai H. Park and Exhibits thereto, dated September 18, 2015, submitted in support of Mr. Stewart's Motion to Dismiss or for a Bill of Particulars (ECF 42). Citations to "Def. Br." refer to the Memorandum in Support of Mr. Stewart's Motion (ECF 43), and citations to "Govt. Opp. Br." refer to the government's Memorandum of Law in Opposition to Defendant's Motion, dated October 16, 2015 (ECF 46).

the costs of their wedding photographer, and the government's reliance on a $15,000 "payment" has been belatedly added to bolster this prosecution.

As shown below, the government's Opposition betrays a fundamental confusion about the true import of *Newman*, and indeed, it serves to underscore precisely why the law is unconstitutionally vague as applied. More troubling, the reference to a $15,000 payment, which demonstrably has nothing to do with any trading and which the government must know is irrelevant, is misleading, to say the least.

A.  The Government's Current Theory Demonstrates Continued Ambiguity

In the wake of the Supreme Court's denial of the government's *certiorari* petition in *Newman*, the government has finally committed itself to the theory of prosecution in the Indictment: according to the government, "as alleged in the Indictment," Mr. Stewart is charged with violating his fiduciary duty by tipping his father in expectation of a pecuniary benefit, namely, payment of a wedding photographer's fee. (Govt. Opp. Br. at 17).[2]

But there are at least two major problems with their position. First, the Indictment contains no assertion that Mr. Stewart tipped his father "expecting" any pecuniary benefit, much less a wedding gift. Instead, this critical element is casually injected at page 17 of the government's 29 page Opposition brief. The government, of course, cannot save a defective

---

[2] Until their Opposition brief, it was far from clear that that was the theory of the Indictment. The Criminal Complaint, filed on May 13, 2015, did appear to rely on that theory, but that was after the Second Circuit had denied rehearing in *Newman* and before the Solicitor General had agreed to seek a *cert.* petition. On July 15, 2015, the government filed the Indictment. By then, the government knew the Solicitor General would be filing a *cert.* petition, and it was in fact filed with the Supreme Court within days of the Indictment. Whether the government will admit it or not, the Indictment plainly sought to hedge the element of breach of fiduciary duty, to see if it might be able to pursue the theory of prosecution that it really wanted to pursue: namely, that any time a person tips a close relative, no pecuniary benefit need be proven. Thus, the Indictment made a boilerplate reference to breach of fiduciary duty and personal benefit, and only in passing referenced the pecuniary benefit of a wedding gift. Since the filing of the Indictment and Mr. Stewart's motion, however, the Supreme Court denied the government's petition. *Newman* remains the unchallengeable law of this Circuit. With the die cast, the government Opposition now claims that the pecuniary benefit had been the theory of the prosecution in the Indictment all along.

indictment with lawyers' assertions in a memorandum of law.  The question is whether the grand jury was presented with any credible evidence of Mr. Stewart's expectations about a benefit.  *See United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000) (defendant must be "assur[ed] that he is tried on the matters considered by the grand jury").  It is difficult to imagine what such evidence could have been.  Even giving the government's alleged evidence (as described in their Opposition brief) every possible inference, there is scant evidence that Mr. Stewart was even aware his father might be trading, much less that he had an "expectation" of a financial benefit in return.  There is, thus, every reason to believe the grand jury was not presented with any evidence of an expectation on Mr. Stewart's part.  This question cannot be answered without the Court's *in camera* inspection of the grand jury minutes.[3]  Given the absence of any mention of "expectation" in the Indictment, as well as the government's continued arguments about the "confusing" *Newman* decision (Govt. Opp. Br. at 12), there is substantial risk that the government did not present any evidence from which the grand jury could have concluded Mr. Stewart expected a personal benefit in exchange for the alleged tips.  Absent confirmation, the government's current claim about what the grand jury charged should be rejected.

Second, even if one were to accept that the grand jury expressly found Mr. Stewart had the "expectation" required by *Newman*, the government's theory would only prove the continued ambiguity in the law.  If the government is right that a father's wedding gift to his investment banker son can suffice to qualify as an "exchange that is objective, consequential and represents at least a potential gain of a pecuniary or similarly valuable nature," *Newman*, 773 F.3d at 452, then there really is no pecuniary benefit element in the context of a close and loving familial

---

[3] *See* Fed. R. Crim. P. 6(e)(3)(E)(ii); *United States v. Hoey*, No. S3 11 Cr. 337 (PKC), 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) (even where no prosecutorial misconduct before grand jury alleged, court would conduct *in camera* review of grand jury minutes where defendant identified sufficient risk that government provided erroneous legal instruction to grand jury as to a rule that was "not merely an evolutionary development or incremental change, but is a requirement that is non-obvious to the reader from the face of the statute").

3

relationship. In all family relationships, periodic financial support or gifts having monetary value are an incident of the relationship itself. Indeed, the gift alleged here was really one from the parents to the newlywed couple. Given *Newman*'s unequivocal language, it cannot be the case that as long as the government can find some instance of a gift from the tippee to a beloved relative, the tipper, the "exchange" of pecuniary benefit is satisfied. If accepted, the government's position would wipe out the pecuniary benefit element altogether and render meaningless the line drawn by *Newman*, for it would vitiate the *quid pro quo* character of the unlawful tipper-tippee relationship.

*Newman* sought to clarify the law of insider trading to require an exchange for the tip, in an effort to more clearly distinguish ambiguous from unlawful conduct. The government's current theory demonstrates that it continues to misapprehend the requirements of *Newman*, underscoring ongoing uncertainty about the point at which a tipper can be held liable for unlawful tipping.

The government belittles Mr. Stewart's citations to learned commentators who have consistently warned that the insider trading law is intolerably vague and requires Congressional action. They cite to cases purportedly holding that the insider trading law is clear enough, but they ignore the fundamental problem of having a judge-made criminal law that is only tenuously tied to a statute, and they studiously avoid a candid discussion of the implications of the heated disagreement they continue to have with the Second Circuit about what the law requires. Since Mr. Stewart's opening brief was filed in support of the instant motion and the Supreme Court denied a hearing on *Newman*, the legal community has continued to grapple with the deep uncertainties in the law.

Most recently, Judge Engelmayer of this Court thoughtfully recounted the evolution of the insider trading laws, the fact that they are judge-made, "effectively as a matter of federal common law," and that "when it comes to defining the bounds of criminal liability, the common law adjudication process has its limitations," with the result that insider trading law is "something of a patchwork quilt." He described the serious uncertainties in the law, and he called on Congress to bring an end to the confusion. (*See* Second Declaration of Tai H. Park in Support of Motion to Dismiss, dated October 30, 2015 ("Second Park Dec."), Ex. A at 5 ("The problem is a lack of clarity," "an undesirable level of uncertainty today about what is and is not punishable as insider trading")). Quoting from a Supreme Court case, Judge Engelmayer concluded his remarks with the reminder: "Liberty finds no refuge in a jurisprudence of doubt."[4]

The "jurisprudence of doubt" does not suddenly clarify just because a father gave his son a wedding gift. The government's claim that it does and that, indeed, the conduct is in the "heartland" of insider trading, only demonstrates the depth of confusion.

B.  The Government's Reliance on the $15,000 Transaction Is Patently Misleading

In implicit recognition of the weakness of premising their case on a wedding gift, the government adds the contention that Mr. Stewart's father also made a transfer of $15,000 to Mr. Stewart in December 2012. But this is a baseless contention. There can be no credible dispute that Mr. Stewart's father made that payment to Mr. Stewart to repay monies that Mr. Stewart had previously sent to the elder Stewart just a few weeks earlier. (Second Park Dec., ¶4 and Ex. C (bank statements *produced by the government* showing transfer from Mr. Stewart's account of

---

[4] Moreover, on October 6, 2015, United States Attorney Preet Bharara told the press that his office "would have to think long and hard, given *Newman*, whether to prosecute" "a CEO who has access to material nonpublic information about earnings or anything else of a very sensitive nature and he decides that he wants to give it to a relative . . . knowing that person is going to trade on it to the tune of millions of dollars." (*Id.*, Ex. B).

5

$35,000 to father's company's account on September 28, 2012 and subsequent transfer, mere weeks later, from the father to Mr. Stewart of $15,000)).[5] Thus, while the Criminal Complaint made a passing reference to the $15,000, even that charging instrument did not go so far as to allege that the payment was tied to any unlawful tip. (*See* Govt. Opp. Br., Ex. 1, ¶ 35). More importantly, the Indictment makes no mention of that transfer whatsoever. It may well be that the transaction was never even mentioned to the grand jury that returned the Indictment. The only pecuniary benefit referenced in the Indictment is the payment for a wedding photographer.

The government cannot now rely on a monetary transfer – that is not even referenced in the Indictment and that is unrelated to any benefit to Mr. Stewart – to support its prosecution.

C. The Government's Other Arguments Are Meritless

The government's other contentions on the constitutional challenge deserve brief mention. The government argues that Mr. Stewart should not be heard to complain about an ambiguity in the law because his conduct occurred when the law was "settled," prior to the "confusing" *Newman* decision. (Govt. Opp. Br. at 12, 16-7). But that argument incorrectly assumes *Newman* pronounced new law, when in fact it merely sought to clarify pre-existing judge-made law. The three-judge *Newman* panel in a unanimous decision, sought to provide guidance as to how to apply an existing legal standard. 773 F.3d 438, 447-8 (relying on *Dirks,* the court applied the definition of "personal benefit" in that case, noting that "the Supreme Court was quite clear in *Dirks*"). *See also* Park Dec., Ex. D at 2 (government brief to Supreme Court acknowledging the "[p]anel's express intention of supplying clarity"); *United States v. Conradt*,

---

[5] The government's reliance on materials outside the four corners of an indictment is impermissible on a motion to dismiss an indictment. *See United States v. Safavian*, 429 F. Supp. 2d 156, 158-9 (D.D.C. 2006) (court cannot properly consider documents produced in discovery on motion to dismiss indictment); *United States v. Shyne*, No. S4 05 Cr. 1067 (KMK), 2007 WL 1075035, at *33 (S.D.N.Y. Apr. 5, 2007) (court will not look past indictment on motion to dismiss). But having done so, the government should not be heard to complain when the defense corrects the record with items produced by the government itself.

6

No. 12 Cr. 887 (ALC), 2015 WL 480419, at *1 (S.D.N.Y. Jan. 22, 2015) (recognizing the "meticulous and conscientious effort by the Second Circuit to ***clarify*** the state of insider-trading law in this Circuit") (emphasis added); *United States v. Whitman*, --- F. Supp. 3d ---, No. 12 Cr. 125 (JSR), 2015 WL 4506507, at *3 (S.D.N.Y. July 22, 2015) ("*Newman* could not, and did not, overturn any prior precedent regarding the meaning of 'personal benefit'"). The Second Circuit's subsequent decision to deny a rehearing or rehearing *en banc*, as well as the Supreme Court's decision to reject the government's *certiorari* petition, notwithstanding the advocacy of the Solicitor General cast in the most urgent language, demonstrate that *Newman* created no new law.

The reason why *Newman* sought to clarify the law, of course, was because it was insufficiently clear to begin with. And that lack of clarity bedeviled the law at the time of the conduct alleged in the Indictment. Thus, the fact that Mr. Stewart's conduct predated *Newman* is entirely irrelevant. Indeed, the government recently agreed to set aside convictions of defendants who had pleaded guilty to insider trading and acknowledged under oath that they intentionally violated the insider trading laws based on pre-*Newman* conduct, when the law was purportedly "settled." The government properly did so "in the interests of justice." *See, e.g.*, *United States v. Tortora*, No. 11 Cr. 430 (WHP), ECF 15, at 1 (S.D.N.Y. Oct. 22, 2015); *United States v. Adondakis*, No. 11 Cr. 360 (JFK), ECF 16, at 1 (S.D.N.Y. Oct. 22, 2015). It cannot now seriously suggest that a defendant who committed acts before *Newman* has no basis for challenging the so-called "settled" law.

The government also contends that Mr. Stewart's motion should be rejected because the *Newman* decision "narrowed" the conduct that could be prosecuted. (Govt. Opp. Br. at 1). The government misses the point. Whether *Newman* is characterized as narrowing or broadening the

7

actionable conduct, the critical issue in this motion is what conduct constitutes a breach of fiduciary duty. It is on that precise question that the *Newman* Court sought to provide clarity. And it is on that precise question that Mr. Stewart contends there has always been ambiguity, which persists today, as the government's current theory about the wedding gift demonstrates.

The government also thrashes a straw man as it contends Mr. Stewart's motion seeks to declare unconstitutional Section 10(b). (Govt. Opp. Br. at 15-18). The motion does no such thing; Mr. Stewart argued: "[b]ecause the insider trading law incorporates as elements concepts that elude clear definition, the law, *as applied*, violates the Due Process Clause." (Def. Br. at 14 (emphasis added)). Nowhere in his motion does Mr. Stewart argue that Section 10(b) or Rule 10b-5 are themselves facially invalid. Thus, the government's citations to *United States v. Persky*, 520 F.2d 283 (2d Cir. 1975) and other cases (Govt. Opp. Br. at 15-16) are all beside the point.

D. The Government Fails To Address Inherent Ambiguity of Materiality Element

In addressing Mr. Stewart's constitutional challenge, the government focuses entirely on the fiduciary duty element and fails to address the defense argument that the notoriously ambiguous concept of "materiality" is another constitutional failing in the insider trading law. (*See* Def. Br. at 13-14). Hence, that point remains uncontested.

The Court should dismiss the insider trading counts as unconstitutionally vague as applied to Mr. Stewart.

8

## POINT II

## THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO ALLEGE EACH ELEMENT OF INSIDER TRADING

If the Court were to conclude that the law of insider trading, as applied to Mr. Stewart and under the government's theory of prosecution, is sufficiently clear, the insider trading counts in the Indictment must nevertheless be dismissed for failure to allege a breach of fiduciary duty. In his opening brief, Mr. Stewart explained why a wedding gift cannot constitute the requisite pecuniary benefit, and that the Indictment does not even allege that the gift was a benefit Mr. Stewart expected in exchange for a tip. (Def. Br. at 17-21). *See also supra* at 2. *Newman* requires a *quid pro quo* and the Indictment's bare mention of a father's gift to his son at his wedding is insufficient as a matter of law. The government provides no response to the question of how one's parent's wedding gift (in the form of a mere payment of the wedding photographer) to a newlywed couple can suffice as the *quid pro quo* for unlawful tipping, or qualify as an "exchange that is objective and consequential." It also proffers no explanation of how a wedding gift made at the very start of an alleged conspiracy can possibly suffice to satisfy the elements of substantive inside trading charges that relate to conduct *after* the gift. For these reasons alone, the motion should be granted.[6]

---

[6] Contrary to the government's contention (Govt. Opp. Br. at 10-11), Mr. Stewart's motion addresses every Count in the Indictment. His constitutional challenge applies to Counts One through Eight, and his Rule 7(c) challenge applies to all Counts. (*See* Def. Br. at n.4). The government's claim that Stewart's constitutional challenge cannot relate to the conspiracy charge involving wire fraud because wire fraud does not require a breach of fiduciary duty overlooks the allegations in the Indictment. (*See* Govt. Opp. Br. at 10-11). The Indictment specifically charges that, as an object of the conspiracy to commit wire fraud, Mr. Stewart used "valuable confidential information" from five companies "in breach of fiduciary and other duties owed to the subject companies." Indictment ¶ 21. Where an indictment charges wire fraud based on a breach of fiduciary duty theory, the government must prove the existence of a duty. *United States v. Szur*, 289 F.3d 200, 208-9 (2d Cir. 2002) (answering in the affirmative the question of "whether the government was required to prove the existence of a duty to disclose [information] as an essential element of the wire fraud [] count[] as charged in the Indictment and, to the extent that those charges are objects of the conspiracy, the conspiracy charge as well"). Because the government's wire fraud theory rests on a breach of fiduciary or other duty, it must prove that duty. Moreover, the insufficient allegations as to the materiality element are an independent basis for dismissing all the counts, including those brought under Section 14.

While it is true that the government no longer relies solely on the Indictment's reference to the wedding gift and now focuses on "payments to [Mr.] Stewart totaling at least $15,000" (Govt. Opp. Br. at 1), for the reasons discussed above at 5-6, the belated reliance on that transaction is without merit and, indeed, misleading. The government's documents produced in discovery describe both ends of the transaction in no uncertain terms: it is the partial repayment of funds that Mr. Stewart had previously made just several weeks earlier to his father on September 28, 2012. (Second Park Dec., Ex. C).

With respect to the failure of the Indictment to allege materiality, the government seeks to disregard all of the cases cited by the defense as "civil" cases "in which different pleading standards apply." (Govt. Opp. Br. at 21 n.8). But if the materiality allegations in a civil case (requiring only proof by a preponderance) were inadequate as a matter of law, they must be even less adequate in a criminal case.

Remarkably, the government also states:

> the Government expects to argue to the jury, among other things, that the fact that an investment bank has been retained to work on a potential acquisition – the bare minimum of information that, as the Indictment makes clear, Stewart must have conveyed to his father – is *itself material nonpublic information* that cannot and should not have been disclosed.

(Govt. Opp. Br. at 21-22 (emphasis added)). Such an argument would grossly misstate the law. The mere fact of engagement of an investment bank decidedly is *not* material information in and of itself. *See, e.g.*, *Buxbaum v. Deutsche Bank AG*, 196 F. Supp. 2d 367, 376-77 (S.D.N.Y. 2002) (court refused to find materiality as a matter of law even though parties had, among other things, retained investment advisors and subsequently merged). Not only does the government's disclosure about what it intends to argue to the jury reveal its confusion about the law of

10

materiality, it suggests that the grand jury may have been misled about the materiality element when the prosecutors instructed them on the law.[7]

The Indictment is insufficient and should be dismissed.

## POINT III

## THE GOVERNMENT MUST PROVIDE A BILL OF PARTICULARS

The government's Opposition, which appears to adopt wholesale the Criminal Complaint, commits the government to a number of factual details and, as such, satisfies certain of Mr. Stewart's requests for a bill of particulars. But more is needed.

Principally, the government refuses to provide any further details about the information that Mr. Stewart is alleged to have provided to his father. It completely ignores the defense citation to *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) (Def. Br. at 26-7), where the Court stated that "[t]he merits of such charge[s] depend heavily on the facts and context. A defendant might argue that the information he sought to obtain was not material, or that it was already public at the time he tried to get it. But he can only do that if he knows what the information *is* and when it was conveyed." *Id.* at *2 (emphasis in original).

Similarly, Mr. Stewart is entitled to particulars relating to the substance and timing of the information he is alleged to have conveyed to his father and the means by which he conveyed such information. The "vague allegations that unspecified information was obtained about a company's prospects" in the charging instruments give Mr. Stewart no indication whatsoever as to what the government claims with regard to his specific activity, leaving him with no way to

---

[7] Thus, an *in camera* inspection of the grand jury transcript should be conducted to determine if the grand jury was properly instructed on the legal definition of materiality. *See supra* at 3 n.3.

11

prepare a defense absent a bill of particulars. *United States v. Martoma*, No. 12 Cr. 973 (PGG), 2013 WL 2435082, at *4 (S.D.N.Y. June 5, 2013).

The government repeats the very same argument it made, and lost, in *Rajaratnam*. *Compare* Govt. Opp. Br. at 25-26 ("Stewart's contention that the Government must identify -- or even prove at trial -- precisely what Stewart said to his father about these deals is baseless"), *with Rajaratnam,* ECF 110, Government's Memorandum of Law in Response to Motion for a Bill of Particulars ("*Rajaratnam* Mem.")) at 26 (S.D.N.Y. May 7, 2010) (its disclosure, for example, that "Rajaratnam conspired to obtain material, non-public information about a potential acquisition by Nuance Communications Inc. of another company" sufficiently apprised the defendant of the information concerning that acquisition). The Court disagreed, ordering the government to identify "the substance of the information provided" and "the date(s) on which it was conveyed" as to each of three potential acquisitions. *Rajaratnam*, 2010 WL 2788168, at **5-7. The same order should issue here.

The government's attempt to avoid a bill of particulars by referencing 600,000 indexed pages of discovery also misses the mark. Burying Mr. Stewart in paper without any indication of what the alleged inside information was further frustrates his ability to prepare for trial and exposes him to the possibility of double jeopardy should charges be brought again, no matter how effectively the produced documents were organized.[8] *See Rajaratnam*, 2010 WL 2788168, at *2 ("sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars"); *United States v. Davidoff*, 845 F.2d 1151, 1154-55 (2d Cir. 1988) (finding failure

---

[8] As here, the government in *Rajaratnam* pointed to the fact that it had categorized the voluminous (448,000) pages produced. *See Rajaratnam* Mem. at n.1. The production and categorization did not eliminate the need for a bill of particulars there, and it should not here. *Rajaratnam*, 2010 WL 2788168, at *2 ("It is true that the government has provided a large amount of information to the defendants," noting that it identified securities, co-conspirators, sources of material and trades. "But the production of this material does not necessarily obviate the need for a bill of particulars").

12

to produce bill of particulars warranted new trial, notwithstanding the fact that that the Government had produced 6,000 pages of wiretap applications and transcripts of wiretap intercepts to defendant prior to trial).

The government's reliance on *United States v. Riley*, 90 F. Supp. 3d 176 (S.D.N.Y. 2015), is misplaced. (*See* Govt. Opp. Br. 21). In *Riley*, the defense sought a bill of particulars concerning, among other things, "[t]he inside information that he [was] alleged to have provided to the tippee and when he is alleged to have provided it, the specific content of this alleged inside information and the method by which [he] allegedly provided such information." *Riley*, No. 13 Cr. 339 (VEC), ECF 24, at 8 (S.D.N.Y. Oct. 28, 2013). In response, the government stated that it ***had agreed*** to provide information regarding the "nature of the material non-public information exchanged during the course of the conspiracy" within three weeks of its response. *Id.,* ECF 41, at 40-1 (S.D.N.Y. Nov. 19, 2013) (The "Inside Information that the Indictment alleged [Riley] passed to [the tippee] during the period of the conspiracy . . . are covered by the Government's proposal to provide an Initial Bill of Particulars on December 6, 2013"). The government has made no such offer here.

The government should also be ordered to provide more particulars regarding the duties allegedly breached. As explained in Mr. Stewart's opening brief, the Indictment's conclusory assertion that Mr. Stewart provided information to his father "in breach of fiduciary duties and other duties of trust and confidence owed to the sources of the information" is insufficient to properly apprise him of the charges against him. *See* Indictment ¶ 9. (Def. Br. at 27-9). The Opposition refers to the Criminal Complaint and commits the government to a theory of breach of fiduciary duty that does provide sufficient notice on that issue for purposes of a bill of particulars motion. But the Opposition says nothing about the "other duties of trust and

confidence." Mr. Stewart cannot adequately defend against such a spare and boilerplate allegation.

In generally resisting any bill of particulars, the government relies heavily on *United States v. Corbin,* 729 F. Supp. 2d 603 (S.D.N.Y. 2010), but that case is instructive and militates in favor of ordering more particulars here. The *Corbin* indictment not only detailed the duties of confidentiality owed by the wife's communications firm to its clients (paragraph 16), and the wife's concomitant duties owed (paragraph 17), but also alleged that: "Devlin and his wife had a history, pattern, and practice of sharing and maintaining confidence such that Devlin knew and reasonably should have known that his wife expected that he would maintain the confidentiality of any material nonpublic information he obtained from her. Devlin agreed and understood that he could not use or share any confidential information entrusted to the Communications Firm by its clients that Devlin obtained or learned from his wife." (Paragraph 18). *Corbin*, No. 09 Cr. 463 (VM), ECF 52 (S.D.N.Y. Apr. 6, 2010). Moreover, the court expressly noted that the government had provided "additional disclosures" on this point in its opposition brief, including: "Devlin breached an express verbal agreement with his wife not to trade and/or provide others with the Inside Information, [had] a history and pattern and practice of sharing confidences in their marriage, and an understanding between Devlin and his wife that Devlin would not trade and/or provide others with the inside information." 729 F. Supp. 2d at 605-6; Government's *Corbin* Opposition Brief at 7, ECF 63 (S.D.N.Y. May 23, 2010). It was in this context that the Court denied a bill of particulars.

The negative implication of *Corbin* is that the spare, boilerplate recitation of "other duties" cannot suffice and a bill of particulars must be provided. In light of the government's failure to address this aspect of the motion, the Court should order the disclosure as uncontested.

14

## **CONCLUSION**

For the foregoing reasons and those in Mr. Stewart's opening brief, the Court should dismiss the Indictment. In the alternative, the Court should approve the proposed order directing the government to provide a bill of particulars as to the information allegedly tipped and the "other duties" alleged in the Indictment.

Dated: New York, New York
October 30, 2015

                        Respectfully submitted,

                        PARK JENSEN BENNETT LLP

By: _____
                        Tai H. Park
                        Kathleen Gardner
                        Tami Stark
                        Charles Carey
                        40 Wall Street, 41st Floor
                        New York, New York 10005
                        (646) 200-6300

                        Attorneys for Defendant Sean Stewart