# **EXHIBIT P**

```
                                                                    1
     D1ozwhis                Sentence


1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,             New York, N.Y.

4              v.                          12 CR 125 (JSR)

5    DOUG WHITMAN,

6              Defendant.

7    ------------------------------x

8
                                           January 24, 2013
9                                          3:20 p.m.

10
     Before:
11
                      HON. JED S. RAKOFF,
12
                                           District Judge
13

14                       APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  CHRISTOPHER LAVIGNE
17        JILLIAN BERMAN
          Assistant United States Attorneys
18
     SIDLEY AUSTIN LLP
19        Attorneys for Defendant
     BY:  DAVID ANDERSON
20        DAVID RODY
          MICHAEL D. MANN
21
     Also Present:  Constantine Voulgaris, FBI
22                  Jared Hoffman, Paralegal

23

24

25


                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
                                                                    5
        D1ozwhis              Sentence
 1   involved; true?
 2            MR. RODY:  Correct.
 3            THE COURT:  And so it wasn't -- I don't think it's
 4   really the same as just saying broad denial.  This was a highly
 5   detailed denial.
 6            MR. RODY:  It was a denial of guilt by denying that he
 7   understood at any time that the information he received and
 8   traded on was inside information.
 9            THE COURT:  That is a fair statement.
10            So, I think he perjured himself.  I think, frankly, he
11   repeatedly perjured himself.  I thought the evidence was quite
12   overwhelming that this sophisticated defendant, whose own
13   company had a very detailed inside information prohibitory
14   policy, was willfully, blatantly aware that he was trading on
15   inside information every step of the way, in all the respects
16   found by the jury, and, in this Court's independent view, amply
17   supported by the evidence.  And that his denials on the stand
18   were directly contradicted not only by the testimony, but in
19   some cases by highly specific information.
20            The government points to, for example, the
21   conversation with Roomy Khan where Mr. Whitman acknowledged
22   that Kahn had a "mole" at Google, which the Court finds meant
23   an insider who was breaching fiduciary duty and not this, in
24   this Court's view, preposterous attempt to redefine mole in an
25   innocent way.  And that going back to the conversation, when
```

                                                                6
        D1ozwhis              Sentence

1    Kahn said that she had lost the mole because she did not want
2    to pay the mole, Whitman said -- and this is reflected in
3    government exhibit 32T, the transcript of one of the
4    recordings, and I think he's at that point referencing
5    Mr. Wang's source at Cisco, "Roomy's view was that's illegal --
6    he then laughs.  I said, Roomy, what you were getting from her
7    was illegal to start with, so now you're getting ethical, that
8    you shouldn't give her any cash?  Buy her some nice present?  I
9    mean, she didn't have enough sense to go out and buy herself a
10   nice present, right?  I mean, let me ask you a question.  I
11   have to assume the guy that you talked to from Cisco, who is
12   your buddy, that you give him a bucnch of nice wine every once
13   in a while, right?"  And it continues in that vein.  And that's
14   just one example of dozens.
15           So the court finds that Mr. Whitman gave testimony
16   that was materially and willfully false, and so the guideline
17   range will be increased by two points for obstruction.
18           And that leads to a guideline range of 53 to 63 -- 51
19   to 63 months.  Now, why do I say that's irrelevant to my
20   sentence?  For two reasons.  First, I have very serious
21   misgivings about the policies underlying this particular
22   enhancement of the guidelines.  The effect of this guideline is
23   to chill persons taking the stand.  And while in this case Mr.
24   Whitman, the Court finds, did commit perjury, the effect of
25   this guideline is if someone who the government believes is

```
                                                              7
        D1ozwhis                Sentence
```

1    guilty, but who is asserting their innocence, wishes to take
2    the stand and clear their name, they have to be advised by
3    their counsel that if the Judge does not believe the testimony,
4    finds it is willfully false by a preponderance of the evidence,
5    nevertheless, or clear -- excuse me -- clear and convincing
6    evidence, but not proved beyond a reasonable doubt, that they
7    will face a higher guideline range and, therefore presumptively
8    a higher sentence.  It is one of several conditions in the
9    guidelines that make the guidelines among the many many many
10   other evils, an impediment to innocent people taking the stand
11   and clearing their name.  And so as a policy matter, I find
12   this guideline very questionable.
13            But second and independent of that, the assessment of
14   Mr. Whitman's character would be the same whether that
15   guideline was in place or not.  You're going to talk in a few
16   minutes about the good and the bad about Mr. Whitman's
17   character.  There will be in the context of 3553(a) factors,
18   because here, as in so many other cases, I find that the
19   guidelines place far too much emphasis on the alleged monetary
20   gain and don't really address the more important aspects of
21   sentencing reflected in Section 3553(a), which is binding on
22   the Court.  But the assessment of any defendant's character is
23   very important to this Court.  It would go forward and it would
24   be assessed at punishment or non-punishment as the case may be,
25   meted out regardless of this particular guideline.  So I

8

D1ozwhis                Sentence

1   appreciate counsel's debate about this issue.  It was important
2   as part of my assessment of Mr. Whitman's character, but the
3   fact that the guideline range goes up as a result is irrelevant
4   to the sentence I will impose.
5            Now, let's talk about what sentence should be imposed
6   under Section 3553(a).  And of course, again, I'm willing to
7   hear everything counsel has to say.  I've been blessed with not
8   only excellent briefs from both sides, but numerous letters,
9   most of which were favorable to Mr. Whitman, one distinctly
10  unfavorable to Mr. Whitman from his estranged wife.  But I'm
11  anxious to hear whatever counsel has to say here today as well.
12           So let me hear from defense counsel first, after then
13  from the government, then from the defendant if he wishes to be
14  heard.
15           MR. RODY:  Thank you, Judge.  Before I talk about Mr.
16  Whitman's character, we do have a lot of things to say about
17  that.  Your Honor just mentioned that you thought the
18  guidelines placed too much emphasis on monetary gain.  That's
19  one of our points.
20           THE COURT:  Yes.
21           MR. RODY:  We actually make it both under the
22  guidelines, under the application note to 2B1.1, as well as
23  under 3553.
24           THE COURT:  Yes, thank you for reminding me of that.
25  Once again, complete irrelevancy to any sentence I impose, but

```
                                                               9
     D1ozwhis              Sentence
```

1    I have to -- I'm required by law to make a finding.  I do find
2    that the position taken by the probation officer as supported
3    by the government in that respect is persuasive, and so I
4    adhere to that position in the guideline calculation.
5              MR. RODY:  We do still think that that amount of gain,
6    and the guidelines range it produces, is overstated in Mr.
7    Whitman's case.
8              THE COURT:  Well, I think -- here's the point that,
9    and I'm happy to hear anything you want to say.  If you're
10   asking me to change the guideline calculation under any of the
11   ways you can do that, you will be presumptively unsuccessful.
12   But if you want to convince me of the fact that the guidelines
13   here, as elsewhere, places too much emphasis, irrational
14   emphasis on the monetary portion of the determination of
15   sentence, you also would be wasting your breath.  Because I'm
16   already convinced.  I've said this in a dozen cases, and I see
17   no difference here.  The guidelines are skewed irrationally in
18   this respect.
19             So what I really want to hear about is this -- so
20   maybe I should help both counsel out a little bit.  I start
21   with certain assumptions, which you're free to convince me
22   otherwise.  I start with the assumption that this was a very
23   serious set of crimes taken by someone who absolutely knew he
24   was doing wrong and who, therefore, deserves to be punished.
25   That's the, if you will, unjust punishment factor under the

                                                                    10
     D1ozwhis                Sentence

1    guidelines.  That may be mitigated by the rest of his
2    character, which is something that the guidelines also requires
3    me to -- excuse me -- that Section 3553(a) -- if I said the
4    guidelines, I'm talking now about 3553(a) -- 3553(a) says there
5    has to be just punishment.  3553(a) says I have to take into
6    account not just the the offense, but the personal
7    characteristics of the defendant.  Those are all very
8    important.
9         The 3553(a) also says you have to take into account
10   both specific deterrence and general deterrence.  General
11   deterrence, as I've had occasion to say many many times, and
12   other judges of this Court have said many times, tilts, in the
13   case of white collar offenses like insider trading, towards
14   prison time.  Because, first, these are crimes that it would
15   seem can be deterred by prison time in a way that some crimes
16   can't.  Crimes of passion, for example, are less amenable to
17   deterrent value of prison time.  Crimes committed by people who
18   have been to prison often may be less deterrable, except by
19   very severe prison time.  But a sophisticated, calculating
20   white collar nonviolent defendant is presumptively just the
21   perfect person to deter by prison time.  And that is true
22   whether it's Mr. Whitman or the man on the moon.  It's not the
23   question of deterring him.  It's a question of deterring
24   others.  So those are some of the factors that I think you need
25   to address.  There are other factors as well that we'll talk