# **EXHIBIT R**

```
                                                                       1
     \aodgup1               Sentence


1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4             v.                                11 Cr. 907 (JSR)

5    RAJAT K. GUPTA,
     a/k/a Sealed Defendant 1,
6
                      Defendant.
7
     ------------------------------x
8
                                                October 24, 2012
9                                               2:09 p.m.

10   Before:

11                       HON. JED S. RAKOFF,

12                                              District Judge

13

14                          APPEARANCES

15   PREET BHARARA,
          United States Attorney for the
16        Southern District of New York
     RICHARD CRAIG TARLOWE
17   DAMIAN WILLIAMS,
          Assistant United States Attorneys
18
     KRAMER LEVIN NAFTALIS & FRANKEL, LLP,
19        Attorneys for defendant Gupta
     BY:  GARY P. NAFTALIS
20        DAVID S. FRANKEL
          ROBIN MARIE WILCOX
21        ALAN ROY FRIEDMAN

22           - also present -

23   Andrea Estok, Special Agent, FBI

24

25


                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

                                                                      2
    \aodgup1                Sentence

1          (Case called)
2          THE CLERK:  Will the parties please identify
3    themselves for the record.
4          MR. TARLOWE:  Good afternoon, your Honor.  Richard
5    Tarlowe and Damian Williams for the government.
6          Also seated at counsel table is Special Agent Andrea
7    Estok of the FBI.
8          THE COURT:  Good afternoon.
9          MR. NAFTALIS:  Good afternoon, your Honor.  Gary
10   Naftalis and David Frankel for Mr. Gupta.
11         Also at counsel table are Robin Wilcox and Alan
12   Friedman.
13         THE COURT:  Good afternoon.
14         We are here for sentence.  Let me first find out from
15   defense counsel whether the defendant has read and discussed
16   with counsel the presentence report.
17         MR. FRANKEL:  Thank you, your Honor.
18         The answer is yes.  We have discussed it with
19   Mr. Gupta.
20         THE COURT:  And are there any objections other than
21   those in your written sentencing memorandum?
22         MR. FRANKEL:  No, your Honor.
23         THE COURT:  OK.  Any objections from the government?
24         MR. TARLOWE:  No, your Honor.
25         THE COURT:  All right.  So although the Probation

3

\aodgup1                Sentence

1  Officer recommends a nonguideline sentence, the first
2  requirement of the Court is to calculate what the guidelines
3  are.  So the Probation Officer, and joined in by the
4  government, has calculated a guideline range of a total offense
5  level 30, Criminal History Category I, and a guideline range of
6  97 to 121 months in prison.
7          The defendant, in his written memoranda, asks for a
8  much lower guideline range.
9          Let me hear first from defense counsel, then from
10 government counsel.
11         MR. FRANKEL:  Thank you, your Honor.
12         I guess I should first say that, as your Honor is
13 aware from the submissions, what is not in dispute is, of
14 course, that it is the insider trading guideline 2B1.4 which
15 applies, which has a base level of 8.  And we do not dispute
16 the enhancement under 3B1.3, which is the abuse of position of
17 trust, which adds two levels, for a total of 10.
18         As your Honor is also aware from the submissions, the
19 very substantial disagreement between us and the government has
20 to do with the -- for starters, the definition of gain, which
21 we believe -- and the definition of gain is in the background
22 comment to 2B1.4, where gain is defined as the gain resulting
23 from the offense is, quote, the total increase in value
24 realized through trading securities by the defendant.
25         In the Rajaratnam sentencing, Judge Holwell concluded

```
                                                              4
       \aodgup1              Sentence
```

1    that --

2            THE COURT:  Mr. Frankel, I am anxious to hear anything

3    you have to say but I've read your memorandum, so, really, I

4    know your basic position and you don't have to take me through

5    nit by nit your entire theory.

6            MR. FRANKEL:  Is there an aspect of it that your Honor

7    would like me to focus on in particular?

8            THE COURT:  Well, I think the most interesting

9    question is, assuming arguendo that the Court agrees with you

10   that the relevant trades are the September and October 2008

11   trades and assuming that the gain in the September trades is

12   relatively easily calculated, the issue -- one of the issues

13   you present is the time lapse that's presented in the

14   calculation of the loss avoided in the October trades.

15           Basically what happened was Mr. Gupta tipped

16   Mr. Rajaratnam that Goldman's third-quarter results were going

17   to be a lot less favorable than was perceived, and he went out

18   and sold the next day a lot of shares of Goldman, Sachs.  But

19   the government says that the loss avoided thereby should be

20   viewed in terms of when the Goldman results for the third

21   quarter were actually made public, which was in December.

22           So that's the issue that I think I would be happy to

23   hear whatever you have to say about that issue.

24           MR. FRANKEL:  Your Honor, as the government

25   acknowledges in its submission, the Court's role with respect

                                                                    5
     \aodgup1              Sentence

 1   to calculating in this case loss avoided is to find a
 2   reasonable estimate of the loss avoided.  And what we are
 3   saying -- and, again, I won't rehearse all of the details of
 4   the argument, but, obviously, what we're saying is that it is
 5   unrealistic and unreasonable to assume -- and it really is
 6   simply an assumption, a speculation -- that Rajaratnam would
 7   have held onto those shares up to the date -- the time of the
 8   disclosure of Goldman's earnings on December 17th, and that a
 9   much more reasonable and realistic conclusion, that the Court
10   is permitted to draw based on the evidence, is that he would
11   have sold those shares and we've chosen a date which we think
12   is based on a reason, that it is a rational choice of a date,
13   which is to say October 31, which, as your Honor knows, we've
14   highlighted --
15            THE COURT:  No.  No.  He sold the shares, did he not,
16   on October 24th?  The question is what is the figure, the share
17   price for the date when you should say this was the loss he
18   avoided by selling when he did.
19            MR. FRANKEL:  And I may have misspoken because what I
20   meant to say, if I am understanding the analysis correctly, is
21   that in the absence of the inside information --
22            THE COURT:  I see.  You think he would have sold it
23   anyway for other reasons before December, whatever the date
24   was.
25            MR. FRANKEL:  Yes.

                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

53
Caodgup3                Sentence

1   There is also in some of the information presented to the Court
2   under seal an implicit suggestion that, after so many years of
3   assuming the role of father to all, Gupta may have longed to
4   escape the straitjacket of overwhelming responsibility, and had
5   begun to loosen his self-restraint in ways that clouded his
6   judgment.  But whatever was operating in the recesses of his
7   brain, there is no doubt that Gupta, though not immediately
8   profiting from tipping Rajaratnam, viewed it as an avenue to
9   future benefits, opportunities, and even excitement.  Thus, by
10  any measure, Gupta's criminal acts represented the very
11  antithesis of the values he had previously embodied.
12          So how does a court balance these polar extremes?  In
13  arguing for a non-guideline sentence in the presentence report,
14  the experienced Senior U.S. Probation Officer Emily Frankelis
15  had this to say:  "We believe the defendant's commission of the
16  instant offenses was aberrant behavior - not aberrant as
17  defined by the U.S. Sentencing Guidelines, but rather as
18  defined by Merriam-Webster:  '. . . Atypical.'"  The Court
19  agrees, and finds that the aberrant nature of Mr. Gupta's
20  conduct by itself would warrant a non-guideline sentence, even
21  aside from the other factors favoring leniency.  But in order
22  to find just the right sentence, the Court must also consider
23  two further mandates of Section 3553(a):  First, "the need for
24  the sentence imposed" to afford specific deterrence, general
25  deterrence, "just punishment," and the like; and, second, the

                                                                    54
         Caodgup3               Sentence

1    requirement that any sentence imposed be "sufficient, but not
2    greater than necessary, to comply with [these] purposes."
3             As to specific deterrence, it seems obvious that,
4    having suffered such a blow to his reputation, Mr. Gupta is
5    unlikely to repeat his transgressions, and no further
6    punishment is needed to achieve this result.  General
7    deterrence, however, suggests a different conclusion.  As this
8    Court has repeatedly noted in other cases, insider trading is
9    an easy crime to commit but a difficult crime to catch.  Others
10   similarly situated to the defendant must therefore be made to
11   understand that when you get caught, you will go to jail.
12   Defendant's proposals to have Mr. Gupta undertake various
13   innovative forms of community service would, in this Court's
14   view, totally fail to send this message.  Moreover, if the
15   reports of Mr. Gupta's charitable endeavors are at all
16   accurate, he can be counted on to devote himself to community
17   service when he finishes any prison term, regardless of any
18   order of the Court.
19            At the same time, no one really knows how much jail
20   time is necessary to materially deter insider trading; but
21   common sense suggests that most business executives fear even a
22   modest prison term to a degree that more hardened types might
23   not.  Thus, a relatively modest prison term should be
24   "sufficient, but not more than necessary," for this purpose.
25            There are, however, still other factors set forth in

                                                                55
         Caodgup3              Sentence

1    Section 3553(a) that the Court must, and has, considered, of
2    which perhaps the most difficult, but most important one, is
3    the concept of "just punishment."  While all the other factors
4    under Section 3553 partake to a lesser or greater degree of
5    policy considerations, "just punishment" taps a deeper vein.
6    Human beings, as social animals, are programmed to respect
7    moral values.  This is why people without shame or guilt are
8    considered psychopaths, and also why violation of the moral
9    order raise such deep passions in the human breast.  As people
10   have come to understand that insider trading is not only a
11   sophisticated form of cheating but also a fundamental breach of
12   trust and confidence, they have increasingly internalized their
13   revulsion for its commission.  While no defendant should be
14   made a martyr to public passion, meaningful punishment is still
15   necessary to reaffirm society's deep-seated need to see justice
16   triumphant.  No sentence of probation, or anything close to it,
17   could serve this purpose.
18        After carefully weighing all these, and other,
19   relevant factors, the Court concludes that the sentence that
20   most fulfills all the requirements of Section 3553(a) is two
21   years in prison.  Rajat K. Gupta is therefore sentenced to 24
22   months' imprisonment, concurrent on all counts, to be followed
23   by one year of supervised release, on the terms stated from the
24   bench and here incorporated by reference.  The otherwise
25   mandatory forfeiture has been waived by the government, but the