UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- x
                                                  :
**UNITED STATES OF AMERICA**                      :
                                                  :
                                                  :
         - v -                                    :        15 Cr. 287 (LTS)
                                                  :
**SEAN STEWART**,                                 :
                                                  :
                                                  :
                  Defendant.                      :
------------------------------------------------- x


**DEFENDANT SEAN STEWART'S MOTION *IN LIMINE* TO PRECLUDE ADMISSION
OF COMPLIANCE POLICIES (MOTION *IN LIMINE* NUMBER TWO)**


                                   **DAVID PATTON, ESQ.**
                                   Federal Defenders of New York, Inc.
                                   Attorney for Defendant
                                   **SEAN STEWART**
                                   52 Duane Street - 10th Floor
                                   New York, New York 10007
                                   Tel.: (212) 417-8737

                                   **Mark Gombiner, Esq.**
                                   **Martin Cohen, Esq.**
                                   **Christopher B. Greene, Esq.**
                                   *Of Counsel*


TO:   **PREET BHARARA, ESQ**.
      United States Attorney
      Southern District of New York
      One. St. Andrew's Plaza
      New York, New York 10007
      Attn:  **Sarah McCallum, Esq.**
             **Brooke Cucinella, Esq.**
             Assistant United States Attorneys

The defense respectfully submits the following motion *in limine* in advance of trial, which is scheduled to begin July 25, 2016. The defense asks that the government be precluded from introducing compliance policies of Mr. Stewart's former employers because the policies undermine the Court's role as the jury's sole source of law, and because their probative value is substantially outweighed by the risk of confusing and misleading the jury as to the applicable legal standards, and would be unfairly prejudicial to Mr. Stewart.

I.   **The Admission of the Compliance Policies Will Undermine the Court's Role as the Source of Law and Confuse and Mislead the Jury Concerning the Applicable Legal Standards**

We anticipate that the government will seek to introduce compliance policies from Mr. Stewart's former employers, JPMorgan Chase & Co. and Perella Weinberg Partners that, among other things, define insider trading, and place strict limits on the manner in which employees may share confidential information. The compliance policies ("Policies") appear to authoritatively describe insider trading, but, in fact, misstate the law in a variety of ways. Moreover, the Policies in no way distinguish between what might expose a person to civil, rather than criminal, liability.

The introduction of the Policies encroach on the Court's role as the sole provider of the law. Their introduction would create an enormous risk that a jury will be confused or misled as to the applicable legal standards, as well as the risk that a juror could conclude that a violation of company policy equates to a violation of criminal law. Given the many alternative ways for the government to inform the jury about the companies' internal policies without risking confusion as to the law the jury must apply, the government should be precluded from introducing the Policies into evidence.

1

**A. The compliance policies set forth standards for insider trading that do not comport with the applicable legal standards for criminal liability and encroach upon the court's duty to instruct on the law.**

As a threshold matter, "[e]vidence 'embodying legal conclusions that encroach upon the court's duty to instruct on the law' is inadmissible." *United States v. North*, Case No. 06 Cr. 323, 2007 WL 1630366, at *1 (D. Conn. June 5, 2007) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1293 (2d Cir. 1991)). A company's compliance policy is precisely the type of evidence that embodies such legal conclusions and should not be placed in front of a jury. *See North*, 2007 WL 1630366, at *1 (precluding the introduction of a company's antitrust compliance policy, which "present[ed] legal conclusions as to the scope and meaning of the Sherman Act that would undermine the Court's role as the jury's sole source of law applicable to this case.").

Here, the Policies contain detailed—and incorrect—descriptions of insider trading law, and thus improperly encroach upon the Court's duty to instruct on the law, creating a risk that a jury will reach a verdict based upon a misapprehension of the elements of the charged offenses.

Compliance policies, by their very nature, seek to ensure that employees do not *approach*, let alone violate, civil or criminal law. A company's compliance policy reflects its view as to how an employee ought to behave, informed by legal, reputational, and prudential concerns. Consequently, such policies impose requirements that are far more restrictive than the standards governing criminal liability. Moreover, the policies often take into account additional regulations, including SEC regulations, which do not govern the legal definition of the elements of criminal insider trading alleged here. A casual review of the Policies bears this out: The Policies contain numerous misstatements and distortions of the elements of insider trading law, all tending to relax the standards for liability. According to the Policies, "insider trading" does not require that the alleged tipper act for her personal benefit. And they define key legal terms – such as "material" and "non-public" – far more broadly (and simplistically) than applicable law.

### 1. The Policies do not require that the alleged tipper receive a personal benefit.

The Second Circuit has made clear that "a breach of confidentiality is not fraudulent unless the tipper acts for personal benefit, that is to say, there is no breach unless the tipper 'is in effect selling the information to its recipient for cash, reciprocal information, or other things of value for himself.'" *United States v. Newman*, 773 F.3d 438, 450 (2d Cir. 2014) (quoting *Dirks v. S.E.C.*, 463 U.S. 646, 664 (1983)). A personal benefit is defined as "an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." *Id*. at 452.

But the Policies here define insider trading as the mere communication of material nonpublic information to others, without regard to personal benefit. As such, the Policies omit a crucial element of insider trading that the government must prove in this criminal case:

- Illegal insider trading refers generally to buying or selling a security, in breach of a fiduciary duty or other relationship of trust and confidence, while in possession of material, non-public information about the security. Perella Weinberg Partners Group LP Global Policies on Use of Confidential Information, dated Dec. 11, 2009, Greene Decl. Ex. A.[1]

- Buying or selling securities while in possession of material nonpublic information is prohibited, as is the communication of that information to others. JPMorgan Chase & Co. Code of Conduct, dated May 2010, Greene Decl. Ex. B.

- [Y]ou may not pass along any inside information expressly or by way of making a recommendation for the purchase or sale of [] securities based upon inside information. JPMorgan Chase & Co. Code of Conduct, Greene Decl. Ex. C

- While in possession of inside information about the issuer of any securities or the securities themselves, never buy, sell, or recommend the purchase or sale of such securities for your account or the accounts of others, regardless

---

[1] Due to confidentiality concerns, the Greene Declaration and its accompanying Exhibits will be provided to the Court in hard copy.

3

>of whether the inside information is gained through the scope of your employment or elsewhere. If in doubt, don't trade. Greene Decl. Ex. B; *see also* Greene Decl. Ex. C.

Here, the government must provide that the insider intentionally disclosed confidential information "in exchange for a personal benefit." *Newman*, 773 F.3d at 450. The Policies contain no such restriction.

### 2. The Policies define key legal terms – such as what constitutes "material" or "non–public" information – in a manner inconsistent with applicable law.

The Policies define key legal terms in ways that differ significantly from the applicable law. For understandable reasons, the Policies set forth requirements that are far more restrictive than the law requires. For example, JPMorgan's policy states that "[i]nformation is 'material' if it could have an impact on the market price of securities involved or if it is likely that a reasonable investor would consider the information important in deciding whether to purchase or sell the securities." Greene Decl. Ex. B. Perella Weinberg's policy states that "information should be considered material if public disclosure of the information would likely affect the price of an issuer's security." Greene Decl. Ex. A.

In determining criminal liability, though, the jury must engage in a far more nuanced inquiry into "materiality," determining whether there was a substantial likelihood that the disclosure of the information would have been "viewed by the reasonable shareholder as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988). Such a determination "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him." *SEC v. Wyly*, 788 F. Supp. 2d 92, 118 (S.D.N.Y. 2011) (quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450 (1976)). Given the highly technical and nuanced nature of the materiality determination, admission of the Policies' narrow and simplified

4

definition risks that the jury will – even subconsciously – substitute it for the Court's instructions.

Similarly, the definition of non-public information in the Policies is also broader than the law requires. For example, information may be considered "public" within the meaning of Section 10(b) "even though there has been no public announcement and only a small number of people know of it." *United States v. Libera*, 989 F.2d 596, 601 (2d Cir 1993). "The issue is not the number of people who possess it but whether their trading has caused the information to be fully impounded into the price of the particular stock." *Id.* The Policies do not make such distinctions:

- Information is deemed public once it has been publicly announced or otherwise disseminated in a manner that makes the information available to investors generally. For example, limited disclosure over a private wire service for institutional investors is not considered full disclosure to the public. Information disclosed in a press release distributed through a widely circulated news or wire service would generally be considered public. Greene Decl. Ex. B.

- Information should be considered non-public unless the information has been generally disseminated to the public, such as disclosure in a press release, over a wire service, in newspapers or in publicly filed documents such as a proxy statement or prospectus. Greene Decl. Ex. A.

In sum, the Policies' description of insider trading omits elements the government must prove, and defines key terms in a manner inconsistent with the applicable legal standards. Providing these Polices to the jury will improperly encroach on the Court's role as the sole provider of the law in this case.

### B. Admitting the Policies will confuse the jury and be severely prejudicial, and thus must be precluded under Rule 403.

In light of the nature of the Policies, there is considerable risk that admitting them would confuse the jury and create a misleading impression of the legal standard that should guide its

5

verdict, thus unfairly prejudicing Mr. Stewart. *See North*, 2007 WL 1630366, at * 1 (precluding admission of compliance policy pursuant to Rule 403); *United States v. Evans,* 293 Fed. App'x 63, 68 (2d Cir. 2008) (finding that district court did not abuse discretion in precluding use of exhibits that illustrated in graphic form the law of conspiracy as defense counsel understood it due to risk of confusing the jury). The Policies should thus also be precluded under Rule 403.

As detailed above, the Policies define insider trading in a manner inconsistent with the applicable legal standards. The admission of the Policies would "create a substantial risk of unfair prejudice to [defendant] and present a significant risk that the jury will be misled as to the [law's] proper scope and interpretation." *North*, 2007 WL 1630366, at * 1. Crucial elements of insider trading – such as the "personal benefit" component – are omitted from the Policies, and key terms are defined far more broadly than the law requires. The risk that a jury could be confused or misled is clear, as is the danger that a juror will improperly conclude that a violation of company policy itself constitute a violation of criminal law. The introduction of any erroneous standard risks that a jury will improperly decide this case on "bases other than the pertinent legal standard." *In re Rezulin Products Liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004) (excluding expert testimony concerning ethical standards under Rule 403).

The risk of improper reliance upon the Policies is heightened here by the fact that the jury will likely view the Policies as authoritative materials. *See*, *e.g.*, *Chisholm v. Sloane-Kettering*, 09 Civ. 8211 (VM), 2011 WL 2015526, at *8 (S.D.N.Y. May 13, 2011) (granting defendants' motion under Rule 403 to preclude admissibility of ALJ decision that would confuse the jury as to the standard of law to be applied in the case); *cf. Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) ("Even if a jury were not misled into adopting outright a legal conclusion by an expert witness, the testimony would remain objectionable by communicating a legal standard-explicit or

implicit to the jury.") (citation omitted). The Policies are those of well-respected banks, whom a jury will likely view as expert on the subject of insider trading. Mr. Stewart is, of course, not charged with violating the policies of the companies he worked for, but instead of having committed a number of federal offenses. The superficially authoritative Policies will confuse and mislead the jury, unfairly prejudicing Mr. Stewart.

There are a number of alternative ways that the government can inform the jury about the internal policies of the companies for whom Mr. Stewart worked without risking confusion concerning the applicable legal standards, which support the preclusion of the Policies here. *See United States v. Lachman*, 48 F.3d 586, 593 (1st Cir. 1995) ("In applying Rule 403, it is plainly pertinent whether a litigant has some alternative way to establish a fact that involves no (or at least a lesser) risk of prejudice or confusion."). Accordingly, the compliance policies of Mr. Stewart's former employers should not be admitted into evidence.

In the alternative, Mr. Stewart requests that the Court issue a limiting instruction ordering the jury that it may not consider any policies or testimony regarding the policies as reflective of the applicable legal standard guiding the verdict.

## CONCLUSION

For all of the reasons set forth above, the Court should grant Mr. Stewart's motion *in limine*.

Dated: New York, New York
May 18, 2016

                Respectfully submitted,
                Federal Defenders of New York

        By: /s/ Christopher B. Greene

                Mark Gombiner, Esq.
                Martin Cohen, Esq.
                Christopher B. Greene, Esq.
                Assistant Federal Defender
                52 Duane Street, 10th Floor
                New York, New York 10007
                Tel.: (212) 417-8718

                *Attorneys for Defendant Sean Stewart*