UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

   - v.-                                             :           S1 15 Cr. 287 (LTS)

SEAN STEWART,                              :

            Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# GOVERNMENT'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO COMPEL


PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
      of America.

Sarah Eddy McCallum
Brooke E. Cucinella
Assistant United States Attorneys

   -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| - v.- | :    S1 15 Cr. 287 (LTS) |
| SEAN STEWART, | : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO COMPEL

The Government respectfully submits this memorandum in support of its motion to (1) compel former J.P. Morgan Chase & Co. ("J. P. Morgan") employee Ryan Hickey ("Hickey") to give testimony and produce documents concerning communications that the defendant made to her in connection with an inquiry conducted by the Financial Industry Regulatory Authority ("FINRA") into trading in the stock of Kendle International, Inc. ("Kendle"); and (2) compel J.P. Morgan to produce documents concerning communications the defendant made in connection with FINRA's Kendle inquiry. Because the communications at issue have already been disclosed to FINRA, any attorney-client or work-product privilege that might once have attached to them has been waived. Moreover, to the extent there exist additional communications, not already disclosed to FINRA, that the defendant made to J. P. Morgan employees in connection with FINRA's Kendle inquiry, those, too, should be disclosed if the Court determines, upon *in camera* consideration, that fairness so requires.

Because, as explained below, the issue presented here concerns important evidence sought to be admitted at trial next week, the Government respectfully requests that J.P. Morgan be required to respond to this motion by close of business tomorrow. (Counsel for

1

J.P. Morgan has indicated that the company is prepared to respond very quickly.)  The Government will be prepared to file any reply by no later than close of business Thursday.

## BACKGROUND

### I.     THE KENDLE INQUIRY

On May 4, 2011, INC Research, LLC announced that it intended to acquire Kendle for $15.25 per share, a significant premium above the stock's most recent trading price. Kendle's stock price rose in response to the news, and those who had invested in Kendle before the announcement made significant profits.  Robert Stewart, the defendant's father, was among those who profited in this manner.  As the Court is aware, one of the Government's charges in this case is that the defendant, who was working at J.P. Morgan at the time, tipped his father about the Kendle deal in advance of the public announcement.

As it commonly does when mergers of public companies are announced, FINRA initiated an inquiry into Kendle trading that had preceded the May 4 announcement.  As part of that inquiry, the agency made several requests of J.P. Morgan, a firm subject to FINRA's regulatory jurisdiction that had represented Kendle in the negotiations leading up to the May 4 announcement.  Among the things that FINRA requested of J.P. Morgan was a chronology of knowledge gained by individual J.P. Morgan employees about the impending deal.  (*See* Ex. A).  On June 10, 2011, J.P. Morgan supplied FINRA with the requested chronology.  (*See* Ex. B).[1]  That response identified the defendant, then a J.P. Morgan investment banker, as one of the bankers who had gained knowledge in advance of the public announcement.  (*See id.* at 5).

By letter dated July 19, 2011, FINRA asked J.P. Morgan to circulate a list of names of people and entities (the "Kendle FINRA List") to those J.P. Morgan employees who had been involved with the merger negotiations and ask whether the employees recognized any of the

---

[1] This exhibit and Exhibit C, referred to below, are being filed under seal because they contain personal identifying information.

2

names.  (*See* Ex. C).  If someone did, FINRA asked that the employee provide "a detailed description of any past or present relationship between the [employee] and the individuals on the enclosed list."  (*Id.* at 1).  The Kendle FINRA List, which is seven pages long and comprises names of people and entities that had traded in Kendle in advance of the May 4 announcement, includes the name of "Robert Stewart," the defendant's father, residing in "North Merrick, NY," the defendant's father's home.  (*Id.* at 8).

As J.P. Morgan would later confirm to FINRA in a telephone call, it circulated FINRA's list as requested, and gathered responses from all employees to whom the list had been circulated.  In an August 23, 2011 letter sent by email from J.P. Morgan Assistant General Counsel Ryan Hickey, J.P. Morgan supplied a response to FINRA's inquiry regarding the Kendle FINRA List stating that "none of the JMPS personnel listed in the Firm's June 10, 2011 and supplemental response reported knowing any of the individuals listed in FINRA's enclosure."  (Ex. D at 2).

Within a few days of receiving Ms. Hickey's letter, the FINRA employee assigned to the Kendle inquiry (the "FINRA Employee") contacted Ms. Hickey and asked whether J.P. Morgan's response included a response from the defendant.  The FINRA Employee had noted that the address J.P. Morgan had listed for the defendant in its chronology report was in North Merrick, just as Robert Stewart's address was, and had conducted some additional research that had confirmed for him that Robert Stewart was the defendant's father.  Ms. Hickey told the FINRA Employee that J.P. Morgan's response did include the defendant's response; it was complete.

A few days later, on August 26, 2011, Ms. Hickey telephoned the FINRA Employee and explained that she had spoken to the defendant and wished to supplement J.P. Morgan's response to reflect that (1) the defendant now acknowledged his father's name was on the Kendle FINRA List, and (2) the defendant had overlooked that name upon first review.

3

By letter dated August 31, 2011, Ms. Hickey supplied this information to FINRA in writing, and provided other details as well:

> As discussed on August 26, 2011, upon further review of the enclosure to FINRA's July 19, 2011 request, Sean Stewart recognized the name of his father, Robert Stewart. Mr. Stewart overlooked his father's name when he first reviewed the enclosure. Mr. Stewart reported that he did not discuss the transaction at issue with his father, and does not know of any circumstances under which any knowledge of the company's business activities would have been gained by his father. Mr. Stewart does not live in North Merrick, New York. He lives at [address in Manhattan].

(Ex. E).

## II. J.P. MORGAN'S PRIVILEGE ASSERTIONS

In preparation for trial in this matter, J.P. Morgan agreed to make Ms. Hickey available as a witness. During a recent meeting to discuss Ms. Hickey's anticipated testimony, however, it became clear that J.P. Morgan would not permit Ms. Hickey to answer questions calling for her to recount the statements that the defendant had made to her, the substance of which she had then conveyed to FINRA. She would not, for example, be allowed to answer the question, "What statements did Sean Stewart make to you about his father's trading in Kendle?" Instead, she would be permitted to testify only that she conveyed certain of the defendant's communications to FINRA, and that the statements he had made to her were "consistent" with her August 31, 2011 letter to FINRA.

Meanwhile, the Government had made repeated requests of J.P. Morgan to produce, among other things, the communication (assuming it was in writing) in which the defendant had conveyed that he recognized no one on the Kendle FINRA List—the communication which Ms. Hickey confirmed on the August 26, 2011 call to the FINRA Employee had been made and integrated into J.P. Morgan's August 23, 2011 response to FINRA. Late last week, J.P. Morgan asserted privilege over that communication as well.

4

The Government has issued trial subpoenas to Ms. Hickey, J.P. Morgan, and J.P. Morgan Securities LLC for the testimony and documents that are the subject of this motion. (*See* Ex. F).[2]

## **ARGUMENT**

As the Court is aware, one of the arguments the defense is expected to make in this case is that the defendant disclosed material, non-public information to his father in confidence, believing that his father would keep his secrets and not trade on the information. The statements the defendant made to J.P. Morgan, which J.P. Morgan then conveyed to FINRA, belie that theory. They show the defendant offering the false exculpatory explanation that he never even discussed Kendle with his father, and had no idea how his father might have come into possession of the information regarding the deal. (*See* Ex. E). The Government should be permitted to introduce this important evidence, and should not be compelled to accept instead the testimonial formulation J.P. Morgan is insisting upon—namely, that Ms. Hickey will say no more than that the defendant's statements to her were "consistent" with what she then conveyed to FINRA. The proposed formulation not only is highly awkward, but would force the Government to litigate potential hearsay objections to the admissibility of the statements that Ms. Hickey made to FINRA about the defendant's statements to her.

J.P. Morgan has no valid claim of privilege with respect to those communications it has already disclosed to FINRA. Any privilege that might at one time have covered the defendant's statements to company counsel was unmistakably waived by the disclosures to FINRA. Moreover, to the extent the defendant made other, related communications to Ms. Hickey or other J.P. Morgan personnel concerning his father's trading in Kendle, privilege

---

[2] The document subpoenas also call for other materials not relevant to this motion.

over those communications should likewise be treated as waived to the extent that fairness so requires.

## I.   THE PRIVILEGE HAS BEEN WAIVED CONCERNING THE COMMUNICATIONS DISCLOSED TO FINRA

### A.   Applicable Law

The attorney-client privilege "protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States* v. *Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  For the privilege to attach, the "predominant purpose of the communication" must be "to render or solicit legal advice."  *In re Cty. of Erie*, 473 F.3d 413 at 420 (2d Cir. 2007).  Courts have accepted claims of privilege asserted by corporations over communications made by company employees to company counsel during internal investigations, provided that at least part of the purpose behind the communication was to assist counsel in providing legal advice to the corporation.  *See, e.g.*, *In re General Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir. 2014).

The work product doctrine, which is distinct from the attorney-client privilege, is defined in Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure.  Rule 26(b)(3)(A) provides that documents "prepared in anticipation of litigation or for trial" are discoverable only upon a showing of "substantial need" for the materials and a party's inability, without "undue hardship," to obtain their substantial equivalent by other means.

Both the attorney-client privilege and the work product privilege can be waived.  *See, e.g.*, *United States* v. *Mount Sinai Hospital*, 2016 WL 2587393, at *3 (S.D.N.Y. 2016).  Moreover, "the burden is on the party resisting discovery to establish the facts necessary to show that the privilege applies and that it has not been waived."  *Id.*; *see also General Motors*, 80 F. Supp. 3d at 533.

6

It is black-letter law that disclosure of a previously privileged communication to a third party waives privilege as to that communication. *See Schaeffler* v. *United States*, 806 F.3d 34, 40 (2d Cir. 2015) (privilege "is generally waived by voluntary disclosure of the [privileged] communication to another party"); *In re von Bulow*, 828 F.2d 94, 100-101 (2d Cir. 1987).

Moreover, where an entity has disclosed some communications to a third party, considerations of fairness may compel a conclusion that such waiver extends to all related communications concerning the same subject matter. *See, e.g.*, *Gruss* v. *Zwirn*, 2013 WL 3481350, at *12-13 (S.D.N.Y. 2013). For example, a "party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (explaining that "fairness considerations arise when the party attempts to use [attorney-client] privilege both as a shield and a sword"); *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (waiver "may be implied in circumstances where it is called for in the interests of fairness"); *cf.* Fed. R. Evid. 502 (codifying subject matter waiver doctrine as applied in cases where intentional disclosure was made to "a federal office or agency").

### B.      Discussion

The analysis here is straightforward. J.P. Morgan disclosed to FINRA (1) the defendant's communication of a negative answer in response to the question of whether he recognized any name on the Kendle FINRA List and (2) the additional statements the defendant made concerning his review of the Kendle FINRA List and communications he had had with his father, as reported in the August 31, 2011 letter to FINRA. These constituted express waivers of any claim of privilege over the communications at issue. Accordingly, J.P. Morgan should be compelled to disclose the document reflecting the

7

defendant's communication of a negative answer in response to the Kendle FINRA List (or, if the communication was oral, produce a witness who received this negative answer from the defendant). The Government should also be permitted to ask Ms. Hickey at trial what the defendant told her about his review of the Kendle FINRA List, any discussions he had with his father about Kendle, and the defendant's knowledge, if any, of how his father might have gained knowledge of Kendle's business activities. These are the very communications disclosed in the letter to FINRA.[3]

The only argument that J.P. Morgan has raised with the Government in support of its resistance to providing these communications and testimony is that FINRA, like the Department of Justice, has adopted rules the effect of which is to encourage voluntary disclosure of communications that might otherwise be treated as privileged. But that does not change the analysis. J.P. Morgan presumably made the subject disclosures to FINRA because it wanted to be—and to appear—cooperative. The disclosures were not compelled, but rather made voluntarily in service of the entity's self-interest.

## II. THE COURT SHOULD CONSIDER WHETHER FAIRNESS REQUIRES THE DISCLOSURE OF ANY ADDITIONAL COMMUNICATIONS

The Government does not know whether the defendant made other communications to J.P. Morgan in connection with the Kendle FINRA inquiry. A privilege log produced by J.P. Morgan yesterday (attached as Exhibit G hereto) suggests that some such communications may exist, because it reflects email messages sent by the defendant during the relevant timeframe, with apparently relevant subject lines, that have not been disclosed. In any event, the defendant presumably knows what communications he made, and so does J.P. Morgan. Under the circumstances, the Government proposes that the Court conduct an *in camera* examination of any additional communications, with the defendant's participation

---

[3] To the extent there exist documents, not covered by the work product privilege, memorializing or recording the defendant's statements that were then reported to FINRA, those documents should also be disclosed.

(if he so wishes), and make a determination of whether disclosure is required. On the one hand, if additional communications exist and are relevant to the issues at trial and admissible either substantively or as impeachment evidence, and if J.P. Morgan withheld the additional communications to gain some advantage during the FINRA inquiry, it would seem that a subject matter waiver occurred and broader disclosure is warranted. *See, e.g.*, *General Motors*, 80 F. Supp. 3d at 533-34 (discussing circumstances in which Rule 502, which does not by its terms apply here but essentially codifies the law on subject matter waiver, compels a finding of implied waiver). If, on the other hand, any additional communications are irrelevant, fairness might not require disclosure.

### III. THE COURT SHOULD ALSO CONSIDER WHETHER ANY CLAIM OF WORK PRODUCT PRIVILEGE SHOULD BE OVERRULED

The Government does not intend either to elicit the questions that Ms. Hickey or any other attorney posed to the defendant, or to insist that J.P. Morgan produce any work product discussing attorneys' discussions with the defendant. It may be, however, that the defendant wishes to have access to one or both of those things, on the basis that they help his defense in some way. The Government respectfully proposes that, if the defendant does so wish, his request should be considered during the same *in camera* proceeding suggested above. As noted, work product privilege may be overridden by a showing of necessity.

**CONCLUSION**

The Government respectfully submits that the Court should GRANT its motion to compel compliance with subpoenas served on Ryan Hickey, J.P. Morgan, and J.P. Morgan Securities LLC.

Dated: New York, New York  
      July 19, 2016

Respectfully submitted,

PREET BHARARA  
United States Attorney

By: _____/s/_____  
Sarah Eddy McCallum  
Brooke E. Cucinella  
Assistant United States Attorneys  
Tel.: (212) 637-1033/2477

**CERTIFICATE OF SERVICE**

      I, Sarah Eddy McCallum, hereby certify that on July 19, 2016, I caused true and correct copies of this memorandum of law, the exhibits hereto, and the motion in support of which they are offered on the following, by hand and by email:

1. Mark Gombiner and Martin Cohen, Esqs., counsel for the defendant; and

2. Lee Richards, Esq., Richards Kibbe & Orbe LLP, counsel for J.P. Morgan.

                                    __/s/_____
                                    Sarah Eddy McCallum
                                    Assistant U.S. Attorney
                                    Tel.: (212) 637-1033