UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA                    :

            - v. -                          :            15 Cr. 287 (LTS)

SEAN STEWART,                               :

                    DEFENDANT.              :

---------------------------------------------------------------x


# DEFENDANT'S POST TRIAL MOTIONS


                              Federal Defenders of New York, Inc.
                              Attorneys for Defendant Sean Stewart
                              52 Duane Street, 10th Floor
                              New York, New York  10007
                              Tel.: (212) 417-8700

                              Martin Cohen, Esq.
                              Mark Gombiner, Esq.
                              Sarah Baumgartel, Esq.
                              Of Counsel

TO:   Preet Bharara, Esq.
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York  10007
      Attn:  Sarah Eddy, Esq.
             Brooke Cucinella, Esq.

# TABLE OF CONTENTS

STATEMENT OF FACTS ..........................................................................................1

STANDARD OF REVIEW .......................................................................................3

ARGUMENT ............................................................................................................5

I.    The Government Did Not Adduce Sufficient Evidence to Meet its Burden
of Proof With Respect to the Charges against Sean Stewart ..............................5

    A.    The Government Did Not Prove that Sean Stewart Received a
"Personal Benefit" in Exchange for Disclosing Information ............................5

    B.    The Lack of a Personal Benefit Mandates Acquittal of the
Wire Fraud Charge ........................................................................................11

    C.    The Court Should Order a New Trial on the Remaining Counts ...................12

II.    The Court Should Grant a New Trial Pursuant to Rule 33 ...........................13

    A.    The Record Does Not Establish a Proper Basis for Robert Stewart's
Invocation of the Fifth Amendment ..............................................................14

    B.    The Court Should Have Compelled the Government to Immunize Robert
Stewart ..........................................................................................................21

CONCLUSION .......................................................................................................26

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Carpenter v. United States,*
  484 U.S. 19 (1987) ................................................................................... 12

*Dirks v. SEC,*
  463 U.S. 646 (1983) ........................................................... 5, 9, 10,11, 12

*Earp v. Cullen,*
  623 F.3d 1065 (9th Cir. 2010) ............................................................ 19, 21

*Hoffman v. United States,*
  341 U.S. 479 (1951) ................................................................................ 14

*Jackson v. Virginia,*
  443 U.S. 307 (1979) .................................................................................. 3

*Moreno-Ortiz v. United States,*
  983 F.2d 15 (2d Cir. 1993) ..................................................................... 22

*Salman v. United States,*
  136 S. Ct. 899 (2016) ................................................................................ 6

*Santa Fe Indus. v. Green,*
  430 U.S. 462 (1977) ................................................................................ 11

*Skilling v. United States,*
  561 U.S. 358 (2010) ............................................................................ 11, 12

*United States v. Allmon,*
  594 F.3d 981 (8th Cir. 2010) ................................................................. 19

*United States v. Apfelbaum,*
  445 U.S. 115 (1980) ....................................................................... 14, 18, 19

*United States v. Arias,*
  404 F. App'x 554 (2d Cir. 2011) .......................................................... 15

*United States v. Bahadar,*
  954 F.2d 821 (2d Cir. 1992) ............................................................... 21, 22

*United States v. Bowe,*
  698 F.2d 560 (2d Cir. 1983) .......................................................... 15, 16, 17

*United States v. Coplan,*
   703 F.3d 46 (2d Cir. 2012) ............................................................................... 4

*United States v. DeSalvo,*
   26 F.3d 1216 (2d Cir. 1994) ..................................................................... 14, 19

*United States v. Diaz,*
   176 F.3d 52 (2d Cir. 1999) ............................................................................. 22

*United States v. Ebbers,*
   458 F.3d 110 (2d Cir. 2006) ........................................................................... 25

*United States v. Ferguson,*
   49 F. Supp. 2d 321 (S.D.N.Y. 1999) ............................................................... 5

*United States v. Ferguson,*
   246 F.3d 129 (2d Cir. 2001) ............................................................................. 4

*United States v. Gallo,*
   671 F. Supp. 124 (E.D.N.Y. 1987) ................................................................ 14

*United States v. Guang,*
   511 F.3d 110 (2d Cir. 2007) ............................................................................. 4

*United States v. Hamilton,*
   334 F.3d 170 (2d Cir. 2003) ........................................................................... 12

*United States v. Jones,*
   16 F.3d 487 (2d Cir. 1994) ............................................................................. 12

*United States v. Jones,*
   393 F.3d 107 (2d Cir. 2004) ............................................................................. 3

*United States v. Lowell,*
   649 F.2d 950 (1st Cir. 1981) ........................................................................... 19

*United States v. Lumpkin,*
   192 F.3d 280 (2d Cir. 1999) ..................................................................... 15, 20

*United States v. MacCloskey,*
   682 F.2d 468 (4th Cir. 1982) ......................................................................... 25

*United States v. Mahaffy,*
   693 F.3d 113 (2d Cir. 2012) ........................................................................... 23

*United States v. Mulheren,*
   938 F.2d 364 (2d Cir. 1991) ............................................................................. 3

*United States v. Newman*,
    773 F.3d 438 (2d Cir. 2014) .......................................................................... 5, 6, 7

*United States v. O'Hagan*,
    521 U.S. 642 (1997) ............................................................................................. 11

*United States v. Partin*,
    552 F.2d 621 (5th Cir. 1977) ............................................................................ 19

*United States v. Pinto*,
    850 F.2d 927 (2d Cir. 1988) ............................................................................ 25

*United States v. Rich*,
    326 F. Supp. 2d 670 (E.D. Pa. 2004) ............................................................. 4

*United States v. Rivas*,
    377 F.3d 195 (2d Cir. 2004) ............................................................................ 23

*United States v. Robinson*,
    303 F. Supp. 2d 231 (N.D.N.Y. 2004) ......................................................... 5

*United States v. Sanchez*,
    969 F.2d 1409 (2d Cir. 1992) .......................................................................... 4

*United States v. Taylor*,
    464 F.2d 240 (2d Cir. 1972) ............................................................................ 3

*United States v. Tramunti*,
    500 F.2d 1334 (2d Cir. 1974) .......................................................................... 14

*United States v. Vavages*,
    151 F.3d 1185 (9th Cir. 1998) ................................................................. passim

*United States v. Vicaria*,
    12 F.3d 195 (11th Cir. 1994) ........................................................................... 4

*United States v. Washington*,
    263 F. Supp. 2d 413 (D. Conn. 2003) .......................................................... 4

*United States v. Williams*,
    205 F.3d 23 (2d Cir. 2000) ...................................................................... 21, 22

*United States v. Zappola*,
    646 F.2d 48 (2d Cir. 1981) ...................................................................... 14, 15, 16

**SECONDARY SOURCES**

Jonathan R. Macey, *From Fairness to Contract: The New Direction of the Rules Against Insider Trading*, 13 Hofstra L. Rev. 9 (1984) ........................................................................... 9

Defendant Sean Stewart respectfully submits this post trial motion pursuant to Federal Rules of Criminal Procedure 29 and 33. First, Sean Stewart renews his motion for judgment of acquittal under Rule 29 with respect to each of the counts charged against him, because the government failed to offer sufficient proof as to each of those counts.

In addition, defendant moves for dismissal of the insider trading and wire fraud counts in particular, because, among other things, there was no basis for a reasonable jury to conclude that he disclosed nonpublic information in exchange for some personal benefit. He further moves for a new trial on any remaining counts because of the prejudicial spillover effects of the securities and wire fraud evidence.

Defendant also moves for a new trial on all counts pursuant to Rule 33 because his Fifth and Sixth Amendment rights were violated when he was improperly denied the testimony of a critical exculpatory witness, Robert Stewart. For the reasons detailed below, this Court should grant defendant's post-trial motions.

## STATEMENT OF FACTS

Sean Stewart was charged in a nine-count Superseding Indictment with securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. §§ 240.10b-5, 240.10b5-2; fraud in connection with a tender offer, in violation of 15 U.S.C. §§ 78n(e), 78ff and 17 C.F.R. §§ 240.14e-3(a), 240.14e-3(d); conspiracy to commit these offenses, in violation of 18 U.S.C. § 371; and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 1349.

In brief, the government alleged that Sean Stewart conspired with Robert Stewart and Richard Cunniffe, both of whom had already pled guilty at the time of Sean's trial. The government claimed that, from around February 2011 through April 2015, while working as

1

an investment banker at JP Morgan and Perella Weinberg Partners, Sean Stewart shared material nonpublic information with his father Robert, which Robert and Cunniffe then used to trade securities. The government alleged improper trading in connection with five specific securities: Kendle, KCI, Gen-Probe, Lincare and CareFusion.

Sean Stewart's trial commenced on July 25, 2016. By this time, Robert Stewart had already been sentenced by this Court. Richard Cunniffe was awaiting sentencing and testified as a cooperating witness for the government. The government's evidence at trial included Cunniffe's testimony; surreptitiously recorded conversations between Cunniffe and Robert Stewart; trading and other documentary records; emails and records of calls between Sean and Robert Stewart; law enforcement testimony; and the testimony of several witnesses who had previously worked with Sean Stewart. At the close of the government's case, defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. Tr. at 1161-62.[1] The Court denied this motion. *Id.* Defendant renewed this motion at the conclusion of the presentation of evidence and it was again denied. Tr. at 1396-99.

Defendant Sean Stewart elected to present evidence and to testify on his own behalf. Sean acknowledged that he shared information by discussing his work with his father, but denied that he had done so as part of an illegal insider trading scheme. Sean denied that he knew his father would trade or that he intended for his father to trade on shared information. As part of his defense, Sean sought the testimony of Robert Stewart and served him with a

---

[1] "Tr." refers to the transcript of trial in this matter, which commenced July 25, 2016 and concluded August 17, 2016. "GX" refers to government exhibits at trial.

subpoena to testify at trial. In response, Robert invoked his Fifth Amendment privilege against self-incrimination and declined to testify. This Court upheld Robert's invocation of the privilege and he was deemed unavailable as a witness.

On August 17, 2016, following several days of deliberations, the jury convicted Sean Stewart on all nine counts in the Superseding Indictment.

## STANDARD OF REVIEW

Rule 29 requires the Court to "enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The Court's function is not just to determine whether the jury was properly instructed, "but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). Thus the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. A jury's guilty verdict must be supported by substantial evidence – a "mere modicum" of evidence is not sufficient. *See id.* at 320; *United States v. Mulheren*, 938 F.2d 364, 368 (2d Cir. 1991). A jury's verdict must also be based on justifiable inferences from proven facts; a jury may not draw "specious inferences" or "be permitted to conjecture . . . or to conclude upon pure speculation or from passion, prejudice or sympathy." *United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004); *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir. 1972).

In considering the evidence in its totality, if a court finds that "reasonable jur[ors] must necessarily have . . . a [reasonable] doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration." *Taylor*, 464 F.2d at 243.

3

Moreover, if the evidence "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Coplan*, 703 F.3d 46, 69 (2d Cir. 2012) (internal quotations omitted). After all, "[i]t would not satisfy the [Constitution] to have a jury determine that the defendant is *probably* guilty." *Id.* In other words, where the evidence is "in equipoise," a judgment of acquittal is required. *See id.*

Rule 33, in turn, empowers a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). This rule grants the Court "'broad discretion … to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'" *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409 (2d Cir. 1992)). The test is whether it would be a "manifest injustice" to let the guilty verdict stand. *United States v. Guang*, 511 F.3d 110, 119 (2d Cir. 2007). A new trial is proper if there is a real concern that an innocent person may have been convicted. *Ferguson*, 246 F.3d at 133.

In light of this broad standard, courts have granted new trials for a variety of reasons, including where the court found a constitutional violation during the trial; where a court decided that a previously-rejected jury instruction should have been given, *see United States v. Vicaria*, 12 F.3d 195, 198-99 (11th Cir. 1994); where a prosecutor made improper remarks during closing, *see, e.g.*, *United States v. Rich*, 326 F. Supp. 2d 670, 680-82 (E.D. Pa. 2004); based on other forms of prosecutorial misconduct, *see United States v. Washington*, 263 F. Supp. 2d 413, 431-40 (D. Conn. 2003); and where the court found that the verdict was against the weight

of the evidence or fundamentally unfair, *see, e.g.*, *United States v. Robinson*, 303 F. Supp. 2d 231,

233 (N.D.N.Y. 2004); *United States v. Ferguson*, 49 F. Supp. 2d 321, 323, 328-29 (S.D.N.Y. 1999).

**ARGUMENT**

I.   **The Government Did Not Adduce Sufficient Evidence to Meet its Burden of Proof With Respect to the Charges against Sean Stewart**

Sean Stewart renews his motion for judgment of acquittal under Rule 29 with respect

to each of the counts charged against him. As defendant argued at the close of the

government's case and at the conclusion of trial, the government failed to produce sufficient

evidence of criminal wrongdoing on his part and the Court should grant a judgment of

acquittal on each count. As Mr. Stewart previously argued, the government has failed to meet

its burden with respect to each of the necessary elements of each of the charges.

In addition to renewing his general motion for acquittal on each count, defendant

specifically moves for judgment of acquittal as to the securities and wire fraud counts because

the government failed to prove that Sean Stewart disclosed nonpublic information in exchange

for some personal benefit – a necessary element of these charges.

A. **The Government Did Not Prove that Sean Stewart Received a "Personal Benefit" in Exchange for Disclosing Information**

To establish that an alleged tipper is guilty of insider trading in violation of 17 U.S.C.

§ 78j(b), the government must prove, *inter alia*, that the tipper breached a fiduciary duty he

owed to the source of material, nonpublic information by disclosing that information in

exchange for a personal benefit. *See, e.g.*, *United States v. Newman*, 773 F.3d 438, 449-50 (2d Cir.

2014). The tipper's receipt of a personal benefit is a critical element which renders his conduct

fraudulent and therefore culpable. *See id.* at 449; *Dirks v. SEC*, 463 U.S. 646, 667 (1983).

5

Following the Second Circuit's decision in *United States v. Newman*, the government must specifically prove that as a quid pro quo in exchange for disclosing information, the tipper received a personal benefit that was objective, consequential, and represented at least a potential pecuniary gain to the tipper.[2] *See Newman*, 773 F.3d at 452. It is not legally sufficient, without more, to say that the tipper and tippee had a personal relationship, such that the tipper himself would necessarily "benefit" from any financial gain by the tippee. *Id.*

Considering this standard, the government failed to prove that Sean Stewart received the requisite personal benefit to be guilty of insider trading: the government failed to prove both a sufficiently concrete personal benefit and the necessary quid pro quo exchange.

There was no proof at trial that Sean Stewart received anything of pecuniary value from his father Robert in exchange for disclosing information. The only evidence presented by the government of some pecuniary gain to Sean is that his parents paid some of his wedding expenses in the spring/summer of 2011. *See* Tr. at 611-14. The government established the fact of these payments, but offered no evidence that they were in exchange for nonpublic trading information.

Instead, the only evidence as to the reason for these payments came from two defense witnesses: Claudia Stewart, Sean's mother, and Sean Stewart. Both denied that the payments

---

[2] The question of what sort of personal benefit is required to establish insider trading liability is currently pending before the Supreme Court. *See Salman v. United States*, 136 S. Ct. 899 (2016) (granting petition for a writ of certiorari as to question, "Does the personal benefit to the insider that is necessary to establish insider trading under *Dirks v. SEC*, 463 U.S. 646 (1983), require proof of 'an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature,' as the Second Circuit held in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), cert. denied, No. 15-137 (U.S. Oct. 5, 2015), or is it enough that the insider and the tippee shared a close family relationship, as the Ninth Circuit held in this case?").

were made in exchange for the disclosure of trading information. As Claudia Stewart testified, she and Robert had two sons and they planned to pay the same expenses for both of their sons' weddings: "through all of our raising the adult children, we tried to do everything as fair as possible, so we paid for the same." Tr. at 1386. Sean was married in June 2011. Ryan, their second son, was married in July 2011. Tr. at 1386. Claudia and Robert paid certain wedding expenses for both children. Tr. at 1385-88. There was no evidence that Sean's wedding expenses were paid in exchange for trading information, or that they would not have been paid by Claudia and Robert if Robert had not obtained information from Sean. Similarly, in his own testimony Sean Stewart explained that his parents intended to pay for the same things at both his and Ryan's wedding. Tr. at 1215. These payments were not made as a quid pro quo for nonpublic information.

The facts here are akin to those in *United States v. Newman*, where the Second Circuit found insufficient proof of a personal benefit. In *Newman*, the government argued that the jury could have inferred a personal benefit from the career advice that tippee Sandy Goyal provided Dell insider Rob Ray. Even assuming that this could be a sufficiently concrete benefit, the Circuit rejected the contention that any exchange occurred: "[c]rucially, Goyal [the tippee] testified that he would have given Ray [the tipper] advice without receiving information because he routinely did so for industry colleagues." *Newman*, 773 F.3d at 453. Both the tipper and tippee disavowed any quid pro quo. *Id.* In addition, the evidence showed that Goyal gave Ray career advice long before the tipping began. *Id.* In light of these facts, the Circuit concluded "it would not be possible under the circumstances for a jury in a criminal trial to

find beyond a reasonable doubt that [the tipper] received a personal benefit in exchange for the disclosure of confidential information." *Id.* at 453.

As in *Newman*, here both Sean and Claudia Stewart denied that wedding payments were made in exchange for information. This testimony was supported by the fact that Claudia and Robert paid the same wedding expenses for their other son Ryan, and by the obvious fact that Claudia and Robert had offered financial assistance and support to their son Sean well before any alleged insider trading. Thus, the facts here directly track *Newman*, where the Second Circuit found insufficient proof of exchanging information for a personal benefit.[3]

Claudia's and Sean's testimony was also supported by hearsay evidence offered and repeatedly endorsed by the government. In recorded conversations made by cooperating witness Richard Cunniffe, Robert Stewart consistently denied that Sean provided him with information in exchange for any personal benefit, pecuniary or otherwise.[4] In a recorded conversation on April 16, 2015, *see* Tr. at 912-19; GX 1209, Cunniffe asks Robert, "[i]n terms

---

[3] Moreover, even if these payments were sufficient to prove a personal benefit with respect to information disclosed in 2011, the wedding payments were completed by June 2011. Counts One, Six, Seven and Eight charged offenses after this date. The government did not explain how a wedding payment in 2011 could be a quid pro quo for information disclosed in 2012 and 2014.

[4] At trial, Cunniffe did not testify as to any benefit Sean Stewart received in exchange for sharing information with his father. In fact, in his own guilty plea allocution, Cunniffe could not articulate any specific, concrete benefit to Sean. Cunniffe said only that "I believe Sean was tipping his father, who struggled financially, in order to give his father something of pecuniary value. In general, I understood that Sean was potentially helping himself by giving his father valuable tips. For example, while I'm not a father myself, I know that parents and their children often have finances that are intertwined. So by giving his father something of value now, Sean essentially was easing the burden of supporting his father later." Transcript of May 12, 2015 Plea Allocution by Richard Cunniffe. In other words, according to Cunniffe, the only benefit to Sean was that if his father had money, this might make it less likely that Sean had to financially support his father as he aged. This vague, speculative "benefit" is not legally sufficient.

of Sean, do you ever throw him money?" Robert replies unequivocally, "[n]o." He flatly denies giving Sean money in exchange for sharing information about work. In the same conversation, Cunniffe asks, "[d]id Sean do this out of the goodness and kindness of his heart for you or …?" Robert answers, "[n]o, you know what? I think he gets angry at times. Angry at the industry." Later in the conversation, Cunniffe returns to this theme, stating he did not think Robert gave Sean money, but rather that Sean shared information "just out of the goodness and kindness of his heart." Robert answers, "[n]o, it's just, you know, it's stuff he mentions as he goes around, you know, 'Oh I am working on this, I am working on that.'" Robert also denied ever telling Sean that he invested in stocks based on information from Sean.

The government asked the jury to reject Robert's denial of Sean's knowledge, but repeatedly endorsed Robert's statement about "anger" at the "industry" as a reason that Sean would have purposefully shared information with his father. *See* Tr. at 1436-37, 1442 (endorsing statement and characterizing it as a "candid" admission by Robert).

But this type of emotional motivation for disclosing information is precisely the sort the Supreme Court has rejected as a basis for insider trading liability. In *Dirks v. SEC*, tipper Ronald Secrist was a disgruntled former officer of Equity Funding, who disclosed information regarding fraud at that company. *See* 463 U.S. 646, 648-49 (1983). Although his disclosures revealed the fraud, his motivations may well have included revenge on his former employer or other reputational benefits. *See, e.g.*, Jonathan R. Macey, *From Fairness to Contract: The New Direction of the Rules Against Insider Trading*, 13 Hofstra L. Rev. 9, 37 n.143 (1984) (positing benefits Secrist may have received from his disclosure). Nonetheless, the Supreme Court held that this disclosure, coupled with tippee Raymond Dirks's subsequent trading, did not carry

9

liability under insider trading law, because Secrist had not made the disclosure in exchange for a "monetary" or other more concrete personal benefit. *See Dirks*, 463 U.S. at 666-67.

Nor is there sufficient evidence from which a reasonable jury could conclude that Sean Stewart was making a "gift" of information to his father. First, this by itself would not be sufficient proof of a personal benefit following *Newman*. *See, e.g.*, Petition of the United States for Rehearing and Rehearing En Banc at 12, *United States v. Newman*, 2015 WL 1064423 (2015) (recognizing limitation *Newman* imposed on *Dirks*'s "gift" dicta); Petition for a Writ of Certiorari by the United States at 14-15, *United States v. Newman*, 2015 WL 4572753 (2015) (same). Second, even if this were the law, there was not sufficient evidence for a reasonable jury to infer that information was shared as a gift.

Apparently recognizing the dearth of evidence on this element, the government improperly argued in closing that the close nature of Sean Stewart's relationship with his father could substitute for the actual exchange of a tangible benefit for information, or that Sean could be liable as long as his father benefited from the information. *See* Tr. at 1444-45 (arguing in closing that Sean "wanted to generate cash for his father. In doing that, Sean Stewart helped himself. . . .These men [Robert and Sean] were close emotionally, personally, financially. When Bob Stewart was flush that benefited the defendant."); Tr. at 1546 (stating "Sean Stewart's role in this conspiracy was to pass inside information to his father so that his father could make money . . . ."); Tr. at 1548 ("Sean Stewart and his father had an agreement that Stewart would provide information to his dad so his dad could make money, and because of that, he's guilty."). These arguments were improper and are not consistent with the law of this Circuit.

10

In sum, all of the actual evidence put before the jury – including the testimony of Claudia and Sean, and the hearsay statements made by Robert Stewart – ran contrary to any argument that Sean received an objective benefit in exchange for sharing information with his father. No witness testified that Sean received such a benefit. As in *Newman*, the evidence here makes it impossible for any rational jury to conclude that Sean received a personal benefit in exchange for information. He thus cannot be liable for insider trading and the Court must enter a judgment of acquittal on Counts Three, Four, Five, Six, Seven and Eight.

**B. The Lack of a Personal Benefit Mandates Acquittal of the Wire Fraud Charge**

The lack of a personal benefit to Sean Stewart also renders the government's proof of wire fraud insufficient, meaning the Court must enter a judgment of acquittal on Count Two.

The Supreme Court has repeatedly recognized that not every violation of a fiduciary duty is fraudulent. *See, e.g.*, *United States v. O'Hagan*, 521 U.S. 642, 655 (1997); *Dirks*, 463 U.S. at 654; *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 (1977). Instead, following *Dirks*, the Court has found that a violation of such duty is fraudulent only when a defendant receives a personal benefit in exchange (and does not disclose his actions to the source of the information). *See Dirks*, 463 U.S. at 654, 663 (explaining that the element of deception is met where a defendant trades on or discloses information for "secret profits," meaning where he obtains a "direct or indirect personal benefit from the disclosure"); *see also Skilling v. United States*, 561 U.S. 358, 407-09 (2010) (limiting honest services wire fraud liability to bribery and kickback schemes to avoid constitutional vagueness challenge, and recognizing that not every violation of a fiduciary duty constitutes criminal wire fraud).

Like Section 10(b), the federal wire fraud statute requires proof of some fraud by the defendant. *See* 18 U.S.C. § 1343 (criminalizing "devis[ing] or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses . . . ."). When this fraud is alleged to involve the violation of some fiduciary duty – such as the misappropriation of confidential information – the government must prove that the defendant received a pecuniary benefit as a quid pro quo in exchange for this fiduciary violation.[5] *Cf. Dirks*, 463 U.S. at 663; *Skilling*, 561 U.S. at 407-09. Because the government failed to prove that Sean Stewart received any such personal benefit, his wire fraud conviction must be vacated.

## C.  The Court Should Order a New Trial on the Remaining Counts

Finally, the Court should order a new trial on the remaining counts, Counts One and Nine, because the spillover prejudice from the securities and wire fraud counts rendered the trial fundamentally unfair. The concept of spillover prejudice requires a court to consider whether a jury weighing a particular count was affected by evidence relevant only to other counts. *See, e.g.*, *United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003); *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994). A court should determine whether the evidence introduced in support of the vacated counts was inflammatory; the similarity between the dismissed and

---

[5] For example, in *Carpenter v. United States*, the Supreme Court found that a conspiracy to trade on the Wall Street Journal's confidential business information could constitute wire fraud where the insider tipper who worked for the Journal disclosed information to others in exchange for a share of the trading profits. *See* 484 U.S. 19, 22-23, 27 (1987) (finding insider violated duty he owed to the Journal when he "passed along to his co-conspirators confidential information belonging to the Journal, pursuant to an ongoing scheme to share profits from trading").

remaining counts; and whether the government's evidence on the remaining counts was strong or weak. *See, e.g., Hamilton*, 334 F.3d at 182.

Here the majority of the evidence concerned the substantive securities fraud counts, making it likely that the jury's deliberations on the other counts were heavily impacted by this evidence. In addition, it is impossible to determine if the jury's verdict on Count One was based on a valid theory of liability or whether it was based on the jury's finding related to the substantive insider trading counts, which was not supported by sufficient evidence. Accordingly, if the Court enters a judgment of acquittal for lack of a personal benefit on Counts Two through Eight, it should also order a new trial on Counts One and Nine.

## II.   The Court Should Grant a New Trial Pursuant to Rule 33

In addition to granting Mr. Stewart's motion for acquittal under Rule 29, the Court should grant a new trial pursuant to Rule 33. The Court should order a new trial because the government failed to offer sufficient proof on each of the elements of the charges against Sean Stewart and it would be manifestly unjust to allow the jury's verdict to stand.

The Court should also order a new trial because Sean Stewart's Fifth and Sixth Amendment rights were improperly infringed when he was denied the testimony of a critical exculpatory witness, Robert Stewart. Defendant was improperly prevented from offering this testimony because the Court erroneously sustained Robert's invocation of his own Fifth Amendment privilege against self-incrimination and declined to compel the government to immunize Robert's testimony. For these reasons, the Court should order a new trial.

### A. The Record Does Not Establish a Proper Basis for Robert Stewart's Invocation of the Fifth Amendment

Defendant served a subpoena to testify at trial on Robert Stewart. In response, Robert asserted his Fifth Amendment privilege against self-incrimination and refused to testify. The Court upheld this invocation and declined to compel his testimony, based on a concern that he might face a perjury prosecution for statements made during trial. First, the Court did not conduct a sufficiently rigorous inquiry into whether Robert had a valid basis for declining to testify. Second, ████████ fear that he could face a perjury prosecution for his anticipated trial testimony is not a valid legal ground for claiming the Fifth Amendment privilege.

The Fifth Amendment provides that "no person shall be compelled in any criminal case to be a witness against himself." This privilege against self-incrimination extends to testimony that would itself support a federal criminal conviction, or which would "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *United States v. Zappola*, 646 F.2d 48, 52-53 (2d Cir. 1981) (quoting *Hoffman v. United States*, 341 U.S. 479 (1951)). To assert the privilege, an individual must face a hazard of incrimination that is substantial and real, and not merely trifling or imaginary. *Id.* The privilege can only be invoked to avoid incriminating oneself for past – not future anticipated – offenses. *See, e.g.*, *United States v. Apfelbaum*, 445 U.S. 115, 131 (1980); *United States v. DeSalvo*, 26 F.3d 1216, 1221 (2d Cir. 1994); *United States v. Gallo*, 671 F. Supp. 124, 133-34 (E.D.N.Y. 1987). In particular, the privilege does not shield an individual from liability for future acts of perjury, because the privilege only protects truthful testimony; false testimony "is not compelled at all." *United States v. Tramunti*, 500 F.2d 1334, 1342 (2d Cir. 1974).

14

To start, the Court did not develop a sufficient record to conclude that Robert Stewart had a basis for declining to testify. A witness claiming the privilege bears the burden of proving that he faces a true hazard of incrimination. *See, e.g.*, *United States v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998). A court, in turn, has an independent obligation to balance a defendant's right to Sixth Amendment compulsory process against the witness's Fifth Amendment interests. *Id.*; *see also Zappola*, 646 F.2d at 53 ("Ultimately, it is for the trial judge to determine whether 'a responsive answer to the question (posed) or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'"). As part of this balancing, the Court must "closely scrutinize[]" the witness's claimed basis for invoking the privilege and cannot depend on the witness's "say so" to find that the witness faces a true hazard of incrimination from her testimony. *See United States v. Lumpkin*, 192 F.3d 280, 285 (2d Cir. 1999); *see also, e.g.*, *Zappola*, 646 F.2d at 53; *United States v. Arias*, 404 F. App'x 554, 556 (2d Cir. 2011); *Vavages*, 151 F.3d at 1192. A court should inquire into the substance of the witness's anticipated testimony – there is no way to gauge whether anticipated testimony will expose a witness to charges without knowing something about what the testimony will be. A court may not allow a witness to refuse to testify where a narrower privilege will adequately protect her. *See, e.g.*, *Zappola*, 646 F.2d at 53-54; *United States v. Bowe*, 698 F.2d 560, 566 (2d Cir. 1983) (stating "only questions which might elicit incriminatory answers are barred by a proper fifth amendment claim" and finding witness likely could have answered some critical questions without incriminating herself).

In *United States v. Zappola*, for example, the Second Circuit ruled that the district court had erred by "simply accept[ing]" a witness's "blanket assertion of the fifth amendment

privilege in response to all questions asked of him" and by not undertaking "a particularized inquiry to determine whether the assertion was founded on a reasonable fear of prosecution as to each of the posed questions." 646 F.2d at 53. According to the Circuit, the lower court should have applied "more rigorous scrutiny" and engaged in a "more focused inquiry into the basis for invocation of the privilege as to each question posed" to the witness. *Id.* at 54.

In this case, the Court failed to conduct the particularized, rigorous scrutiny of Robert's invocation that is required by the law. █████████████████████████████████

███████████████████████████████████████

████████████████████████

████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████

Following the in camera proceeding, the Court ruled, based on "its knowledge of the record and proffers in this case, and the positions taken by the parties in their submissions and in their remarks" that Robert Stewart had

> properly invoked his [Fifth Amendment] privilege based on a reasonable belief that testimony on any of the topics identified in sealed exhibits Government Exhibit 5000 and Defense Exhibit 5000 could subject him to further adverse



consequences, notwithstanding his plea and sentencing in respect of the criminal charge.

Transcript of July 27, 2016 Hearing at 23.[7]

The Court subsequently elaborated that the reasonableness of Robert's Stewart's fear

of prosecution was supported by

the government's numerous contentions on the open record that Robert Stewart made truthful statements indicating Sean Stewart's culpability, the negative pregnant of which is clearly the prospect of perjury charges if Robert now testifies to the contrary.

Tr. at 830-31. In other words, the Court found that Robert reasonably feared a perjury charge

if he testified favorably for Sean at trial, based on the allegation that such testimony was false.

This fear was the basis for upholding his invocation of the Fifth Amendment privilege. *See* Tr.

at 832 ("given the record and the positions that have been taken by the government, [] the

government may decide in its prosecutorial powers that it can make a case that statements …

on the stand in this trial are perjurious"); Tr. at 831 (asking whether defense counsel was



"seeking a grant of immunity from perjury prosecution" and stating that, if not, "the Fifth Amendment concern can't be completely addressed or obviated by a grant of immunity").

The law is clear, however, that a witness cannot invoke the Fifth Amendment based on a fear that *future* testimony will be deemed perjurious. "[T]he Fifth Amendment privilege against compulsory self-incrimination provides no protection for the commission of perjury . . . ." *United States v. Apfelbaum*, 445 U.S. 115, 127 (1980). As the Supreme Court explained, this means that the privilege does not protect against prosecution for false testimony that a witness may later decide to give. *Id.* at 130. The privilege cannot be invoked out of a fear that future testimony, including testimony in the present proceeding, will be deemed perjurious: "a future intention to commit perjury or to make false statements . . . is not by itself sufficient to create a 'substantial and real' hazard that permits invocation of the Fifth Amendment." *Id.* at 131; *see also, e.g.*, *United States v. DeSalvo*, 26 F.3d 1216, 1220-21 (2d Cir. 1994) (recognizing that danger that witness might commit perjury at a future proceeding is not sufficient to permit invocation of Fifth Amendment privilege); *Earp v. Cullen*, 623 F.3d 1065, 1070-71 (9th Cir. 2010) (same); *United States v. Allmon*, 594 F.3d 981, 986-87 (8th Cir. 2010) (rejecting validity of invocation where witness feared a perjury prosecution based on truthful testimony at present proceeding); *United States v. Lowell*, 649 F.2d 950, 963 (1st Cir. 1981) ("neither faulty memory nor expectation of future perjury can render a refusal to testify privileged"); *United States v. Partin*, 552 F.2d 621, 632 (5th Cir. 1977) ("a witness may not claim the privilege out of fear that he will be prosecuted for perjury for what he is about to say").

A witness may invoke the Fifth Amendment if his testimony would create a danger of a perjury prosecution based on some *prior* false statement. *See, e.g.*, *DeSalvo*, 26 F.3d at 1220.

But he may not invoke the privilege based on a fear of a perjury prosecution for anticipated testimony. In *Earp v. Cullen*, for example, the Ninth Circuit concluded that the trial court had erred by allowing a witness to claim a Fifth Amendment privilege and avoid testifying due to a fear that she would be charged with perjury for her anticipated trial testimony. *See* 623 F.3d 1065, 1070-71 (9th Cir. 2010).

Here the Court explicitly declined to compel Robert Stewart to testify based on the concern that he would be charged with perjury for his anticipated trial testimony. *See* Tr. at 830-32; ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████ This is not a valid legal basis for claiming the Fifth Amendment privilege. Accordingly, Robert Stewart should have been compelled to testify.[8]

---

[8] After the Court ruled, the government further suggested that, if he testified, Robert Stewart might face criminal liability for prior false statements to the FBI; prior false statements to the SEC; or additional insider trading. Tr. at 833. No party explained how Robert's anticipated testimony at this trial could itself support a conviction for any prior offense, or how it would "furnish a link in the chain of evidence" needed to prosecute a prior offense. *See Lumpkin*, 192 F.3d at 285 (explaining standard for upholding invocation). The government has previously asserted that Robert Stewart lied to the SEC and FBI. If the government had a basis for this assertion, it suggests that the government's proof as to these offenses was complete and liability would not be a hazard created by Robert's anticipated trial testimony. Moreover, since the government previously agreed that Robert Stewart did not obstruct justice, *see* Government Sentencing Submission in *United States v. Robert Stewart* at 5 (agreeing no enhancement for obstruction of justice applies), it is difficult to see any good-faith basis for those charges now. Finally, if Robert offered testimony that exculpated Sean, this would have been consistent with his prior statements, meaning the testimony itself would not have created any liability for *prior* false statements. Such testimony also would not have contradicted Robert's sworn plea allocution or any other prior sworn statements to this Court. Robert's allocution does not implicate Sean in any way; it is consistent with the theory that Robert conspired with Richard Cunniffe to misappropriate information from Sean, in violation of 17 C.F.R. §§ 240.10b5-2(b)(2) or (3). *See* Transcript of August 12, 2015 Plea Allocution by Robert Stewart at 12-13.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

In sum, Robert Stewart had no valid basis for invoking the Fifth Amendment privilege and he should have been compelled to testify at trial.

## B. The Court Should Have Compelled the Government to Immunize Robert Stewart

Even if Robert Stewart had a valid basis for invoking his Fifth Amendment rights, the Court should have compelled the government to grant him immunity. Defendant Sean Stewart has plainly met the standard for such an order.

The Second Circuit has set forth a three-part test to determine whether a district court should compel immunity for a subpoenaed defense witness who claims a Fifth Amendment privilege. *See United States v. Bahadar*, 954 F.2d 821, 826 (2d Cir. 1992). First, the court must find that the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment. *Id.*; *see also United States v. Williams*, 205 F.3d 23, 29 (2d Cir. 2000) (recognizing that prosecutorial intimidation that dissuades a defense witness from testifying violates the defendant's due process rights); *Vavages*, 151 F.3d at 1188 ("substantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process"). Second, the witness's testimony must be "material, exculpatory, and not cumulative." *Bahadar*, 954 F.2d at 826. Third, the testimony must be unobtainable

from any other source. *Id.*; *see also Moreno-Ortiz v. United States*, 983 F.2d 15, 17 (2d Cir. 1993); *United States v. Diaz*, 176 F.3d 52, 115 (2d Cir. 1999).

Through his prior submissions and proffers to the Court, defendant has already articulated how Robert Stewart's testimony would have been material, exculpatory, non-cumulative and unobtainable from any other source. Selectively curated hearsay statements made by Robert Stewart constituted the bulk of the government's evidence against Sean Stewart. The government opened and closed its presentation to the jury by referencing Robert's "silver platter" comment, *see* Tr. at 77-79, 1561: the centerpiece of its proof was thus a hearsay statement by Robert that the person to whom it was made acknowledged he did not fully understand, *see* Tr. at 1002-03. The government made repeated arguments about what Robert meant by some particular hearsay statement or what he was thinking, and used these arguments as the primary proof against Sean. Robert was the only member of the alleged criminal conspiracy who had any direct interactions with Sean and who would therefore be in a position to testify as to what Sean knew.

Given the facts of this case, there could be absolutely no substitute for the testimony of Robert Stewart. Robert is the only person who could possibly say what he meant in the numerous hearsay comments offered by the government, including the "silver platter" statement. He is the only person who could corroborate what Sean Stewart said during their numerous one-on-one conversations. He is the only person who could corroborate the circumstances under which he obtained information from Sean. And unlike any government witness, Robert could speak directly to whether he gave Sean any personal benefit in exchange for information. The testimony he could have offered would have been in no way cumulative

of what was presented at trial and it would have been highly material. He could have offered testimony on multiple relevant topics that was not obtainable from any other witness.

There is also ample reason to conclude that Robert's testimony would have been exculpatory. Robert made numerous statements, in recorded conversations both before and after his arrest, which were exculpatory of Sean. For example, in his May 14, 2015 post-arrest statement to the FBI, Robert repeatedly denied that Sean intentionally shared information with him for the purpose of trading. Robert also denied giving Sean anything of value in exchange for information. These are distinct elements of the charged insider trading offenses on which Robert could have offered testimony favorable to Sean's defense. Nothing more is needed to demonstrate that his testimony is exculpatory. *See, e.g.*, *United States v. Mahaffy*, 693 F.3d 113, 127-30 (2d Cir. 2013) (finding transcript evidence exculpatory because portions were favorable to defendant, even where portions of the transcript were also consistent with prosecution theory of liability); *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (ruling evidence exculpatory where it arguably had inculpatory elements but nonetheless supported defense theory and may have helped raise a reasonable doubt as to defendant's guilt).

Finally, the third prong of the Second Circuit's test is met because there is evidence of both the government's tactical use of immunity and overreaching which caused Robert's invocation of the Fifth Amendment privilege. It is clear that the government acted tactically to try and prevent Robert Stewart from testifying. ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ The
government also intimated in open court that it would seek additional criminal charges against
Robert (such as charges based on alleged lies to the FBI or for additional trades) that it had
previously declined to bring if he testified at trial. *See* Tr. at 833. At the same time, the
government granted immunity to Mark Boccia, an individual who conspired with Robert
Stewart to commit insider trading. *See* Tr. at 349-54, 363.

By the time of Sean's trial, the government had already completed its prosecution of
Robert Stewart; entered a written plea agreement with him; and seen him sentenced. Given
this sequence, the only reason for the government to suggest that Robert now faced liability
for these past offenses (which it already knew about and had declined to pursue), would be as
part of a strategic effort to prevent Robert from testifying at trial.

Nor did the government proffer any legitimate law enforcement reason for denying
Robert immunity. Instead, the government stated that it would consider granting immunity to
Robert if the Court gave a legally-correct jury instruction. *See* August 2, 2016 Government
Letter at 3 ("if for some reason the Court were inclined to give a missing witness charge …
the Government would need to consider immunizing Robert Stewart").

The actions by the prosecutors here are precisely the sort that other courts have
deemed improper. The Second Circuit has explained that the discriminatory use of immunity
may be shown "by no more than" a decision to confer immunity on some witnesses and not

others, unless there are obvious legitimate law enforcement reasons for the decision. *See United States v. Ebbers*, 458 F.3d 110, 119 (2d Cir. 2006). As an example, the Second Circuit posited that the government would have less of a legitimate reason to decline to immunize a witness who had already pled guilty and been sentenced – exactly the situation of Robert here. *See id.*

Similarly, courts have recognized that improper governmental interference may take the form of prosecutorial intimidation that interferes with a witness's free and unhampered choice to testify. *See, e.g., United States v. Pinto*, 850 F.2d 927, 932 (2d Cir. 1988) (collecting cases). In *United States v. Vavages*, for instance, a prosecutor called a potential defense witness's lawyer and informed the lawyer that the prosecutor did not believe the witness's likely testimony and that, if she testified, the government could charge her with perjury and withdraw from her plea agreement. *See* 151 F.3d 1185, 1188 (9th Cir. 1998). This prompted the attorney to advise the witness to invoke her Fifth Amendment rights and refrain from testifying. *Id.* The circuit concluded that the prosecutor's action constituted improper governmental overreach and substantial interference with a defense witness. *Id.* at 1190-91. The circuit reversed the defendant's conviction and remanded the case for a new trial. *Id.* at 1193; *see also United States v. MacCloskey*, 682 F.2d 468, 479 (4th Cir. 1982) (finding improper government interference where prosecutor contacted attorney to note that witness could be re-indicted for crime if she testified, because the "government's 'suggestion' destroyed the choice of [the witness] to testify freely").

Here the government acted tactically both to deny Robert Stewart immunity and to keep him from testifying. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ The government did this so that it could continue to make selective, unfettered use of Robert's hearsay statements – the crux of its proof against Sean. These prosecutorial tactics both interfered with defendant's due process rights and hampered the fundamental truth-seeking function of this trial. They are the sort of improper, sharp tactics by the government that necessitate an order of compelled immunity from the Court.

## CONCLUSION

For the reasons detailed above, the Court should grant Sean Stewart's motions for judgment of acquittal and for a new trial.

Dated: New York, New York
      September 30, 2016

                                      Respectfully submitted,
                                      Federal Defenders of New York

                          By: ____/s/ _____
                                    Martin Cohen, Esq.
                                    Mark Gombiner, Esq.
                                    Sarah Baumgartel, Esq.
                                    Assistant Federal Defenders