UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

UNITED STATES OF AMERICA            :

      - v. -                                                    :        15 Cr. 287 (LTS)

SEAN STEWART,                                      :

           DEFENDANT.                   :

------------------------------------------------------------------x


# REPLY IN FURTHER SUPPORT OF DEFENDANT'S POST TRIAL MOTIONS

                                  Federal Defenders of New York, Inc.
                                  Attorneys for Defendant Sean Stewart
                                  52 Duane Street, 10th Floor
                                  New York, New York  10007
                                  Tel.: (212) 417-8700

                                  Martin Cohen, Esq.
                                  Mark Gombiner, Esq.
                                  Sarah Baumgartel, Esq.
                                  Of Counsel

TO:   Preet Bharara, Esq.
        United States Attorney
        Southern District of New York
        One St. Andrew's Plaza
        New York, New York  10007
        Attn:   Sarah Eddy, Esq.
                  Brooke Cucinella, Esq.

**TABLE OF CONTENTS**

I.    The Government Did Not Offer Sufficient Proof that Sean Stewart Received a "Personal Benefit" in Exchange for Disclosing Information..........................................1

II.   The Record Does Not Establish a Proper Basis for Robert Stewart's Invocation of the Fifth Amendment..................................................................................................4

III.  The Court Should Have Compelled the Government to Immunize Robert Stewart..............................................................................................10

Defendant Sean Stewart respectfully submits this reply in support of his post-trial motions. First, the Court should find that the government presented insufficient proof of a personal benefit to Sean. Second, the Court should order a new trial because Sean was improperly denied the testimony of a key exculpatory witness, Robert Stewart. In further support of this point, defendant attaches an affidavit from Robert Stewart confirming that his trial testimony would have been exculpatory of Sean.

For the reasons set forth below and in defendant's initial brief, this Court should grant defendant's post-trial motions in full.[1]

## I. The Government Did Not Offer Sufficient Proof that Sean Stewart Received a "Personal Benefit" in Exchange for Disclosing Information

For the reasons detailed in Sean Stewart's initial brief, the government failed to prove that he received a personal benefit in exchange for disclosing confidential information, and his convictions for insider trading and wire fraud should be vacated. Motion at 5-12.

In its response, the government claims that it proved at trial the following personal benefits to Sean Stewart: (i) his father's payment of some of his wedding expenses; and (ii) "the valuable benefit of not having to give or lend cash to his father." Gov't Opp. at 21. The first argument is squarely contradicted by the evidence. The second argument also is not supported by the evidence, and is insufficient under the law.

---

[1] "Motion" refers to Sean Stewart's Post Trial Motions, dated September 30, 2016. "Gov't Opp." refers to the government's Memorandum of Law in Opposition to Defendant's Post-Trial Motions, dated November 4, 2016. "Gov't Supp. Mem." refers to the government's Supplemental Memorandum of Law in Opposition to Defendant Sean Stewart's Post-Trial Motions, dated November 4, 2016.

1

When considering a Rule 29 motion, a court should draw reasonable inferences in favor of the government. However, if evidence on an element "'is nonexistent or so meager,' … that it 'gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.'" *United States v. Newman*, 773 F.3d 438, 451 (2d Cir. 2014) (internal citations omitted).

With respect to the wedding payments, the government's speculation as to the reason for these payments was directly contradicted by the testimony of two parties involved in the payments, Claudia and Sean Stewart.[2] Motion at 7-9. Further, there was objective evidence that supported this testimony, including evidence of prior financial support provided by Sean's parents to their children and evidence of the payments for his brother's wedding expenses. *Id.* In other words, the government's speculative argument was contradicted by multiple witnesses and evidence. Under these circumstances – which are strikingly similar to those in *Newman* where the Second Circuit found insufficient proof of a personal benefit, *see* Motion at 7-8 – "it would not be possible … for a jury in a criminal trial to find beyond a reasonable doubt that [the tipper] received a personal benefit in exchange for the disclosure of confidential information." *Newman*, 773 F.3d at 453. Based on the evidence presented at trial, no rational juror could have concluded that the Stewarts' payment of certain of Sean's wedding expenses was in exchange for trading information.

---

[2] It was also contradicted by recorded hearsay statements of Robert Stewart that were endorsed by the government. *See* Motion at 8-9.

2

Next, the government argues that Sean benefited by not having to give or lend his father cash. Gov't Opp. at 21. This argument fails for several reasons. First, the evidence at trial did not show that Robert Stewart was financially dependent on Sean: there was no evidence of Sean gifting Robert money or even regularly loaning funds. With respect to financial loans, the government presented evidence of a single business transaction, where Sean apparently expected that his money would be repaid promptly and became upset when it was not. *See* Gov't Opp. at 12, GX 2179. There was no evidence that Sean financially supported his father or loaned him money on a regular basis, such that Sean would have somehow been required to give his father money in the future if he did not share confidential information. This argument is simply not supported by the evidence the government presented at trial.

Second, the government cites zero legal authority to support its claim that such a "benefit" would even be sufficient under the law. To the contrary, this is the sort of vague, hypothetical benefit that was rejected by the Second Circuit in *Newman*. Similarly, the government cites no authority for its contention that it need not show a quid pro quo in the context of tips allegedly given to family members, Gov't Opp. at 22. As detailed in defendant's prior brief, such a quid pro quo is required and the government did not prove it here.

Finally, the lack of a personal benefit requires entry of a judgment of acquittal on both the insider trading and the wire fraud counts. Motion at 11-12. The government tries to cast this as an issue of jury instructions, Gov't Opp. at 24, but that purposefully misconstrues defendant's argument. The wire fraud statute only criminalizes frauds. And in order for the violation of a fiduciary duty (such as the unauthorized disclosure of confidential information)

3

to be "fraudulent," it must be done for some personal benefit. *See Dirks v. SEC*, 463 U.S. 646, 654, 663 (1983); *Carpenter v. United States*, 484 U.S. 19, 26-27 (1987) (stating that the concept of fraud includes the fraudulent appropriation "*to one's own use* of the money or goods entrusted to one's care" and sustaining wire fraud conviction where insider shared information for share of trading profits) (emphasis added); *see also Skilling v. United States*, 561 U.S. 358, 407-09 (2010) (limiting honest services wire fraud liability to bribery and kickback schemes and recognizing that not every violation of a fiduciary duty constitutes criminal wire fraud).[3] Thus, if the government cannot prove that Sean exchanged inside information for a personal benefit, it cannot prove that his actions were "fraudulent," and his wire fraud conviction cannot stand.

In sum, as in *Newman*, the evidence (and lack of evidence) here makes it impossible for any rational juror to conclude that Sean Stewart received a personal benefit in exchange for disclosing information. He thus cannot be liable for insider trading or wire fraud.

## II. The Record Does Not Establish a Proper Basis for Robert Stewart's Invocation of the Fifth Amendment

The Court should also order a new trial because Sean Stewart was improperly denied the testimony of his father, a critical exculpatory witness. *See* Motion at 13-26. A short affidavit from Robert Stewart is attached as *Exhibit A* in further support of this point. This affidavit

---

[3] The government claims that *Carpenter*'s analysis "did not track *Dirks v. SEC*" and implies that a personal benefit is not required under an "embezzlement" theory of insider trading. Gov't Opp. at 25. But the *Carpenter* Court had no need to specifically discuss the personal benefit requirement because the insider there did receive such a benefit, a share in the trading profits. Moreover, the Second Circuit has held – and the government has conceded before the Supreme Court – that the elements under the misappropriation theory of insider trading (i.e., fraud akin to embezzlement, *United States v. O'Hagan*, 521 U.S. 642, 654 (1997)) are the same as under the classical theory, and that an insider's personal benefit is required in both. *See Newman*, 773 F.3d at 446; *SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012); Gov't Brief at 15 n.1, *Salman v. United States*, No. 15-628 (U.S. Aug. 2016).

4

addresses just some of the topics that would have been the subject of Robert's direct examination, had he been ordered to answer the defense subpoena. This affidavit shows how Robert could have been compelled to give limited testimony without obviously endangering his own Fifth Amendment rights, and how that testimony would have been both critical and exculpatory for Sean.

The government agrees that Robert Stewart could not properly invoke the Fifth Amendment and avoid testifying based on a fear that he would be charged with perjury for his anticipated trial testimony. *See* Gov't Opp. at 27; Gov't Supp. Mem. at 2. The record is preternaturally clear that this was the basis for Robert invoking his Fifth Amendment rights and being excused from testifying in this case. *See* Motion at 17-19. Sean Stewart has thus established that his Fifth and Sixth Amendment rights were violated, because he was improperly denied the right to compel key exculpatory testimony. On this basis, the Court should order a new trial.

The government seeks to avoid this straightforward outcome by arguing that a concern about future perjury charges was not the basis for Robert's invocation of the Fifth Amendment. The record does not support the government's argument. In addition, the government ignores the Court's obligation to protect a defendant's constitutional rights by determining if something less than a blanket invocation would permit the witness to testify, while still protecting his interest against self-incrimination.

[redacted]

5



When later explaining this invocation on the record, the Court repeatedly stressed that Robert feared possible perjury charges from his anticipated trial testimony, and that this was the basis for both his invocation of the Fifth Amendment and the Court's decision to excuse him from testifying. *See* Tr. at 830-31 ("the government's numerous contentions on the open record that Robert Stewart made truthful statements indicating Sean Stewart's culpability, the negative pregnant of which is clearly the prospect of perjury charges if Robert now testifies to the contrary."); Tr. at 832 ("given the record and the positions that have been taken by the government, [] the government may decide in its prosecutorial powers that it can make a case that statements … on the stand in this trial are perjurious"); Tr. at 831 (asking whether defense counsel was "seeking a grant of immunity from perjury prosecution" and stating that, if not, "the Fifth Amendment concern can't be completely addressed or obviated ….").

6

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████

After the Court had already ruled, the government opined that Robert Stewart could face additional charges for "lies to the F.B.I., lies … to the SEC, [and] additional trading." Tr. at 833. However, this statement by the government was not the basis for the Court's decision: as the record reflects, days earlier the Court had already sustained Robert Stewart's invocation on a different basis ████████████████████████████████ ████████████████████ Of course, lawyers for the government are not in a position to state why a third-party witness is invoking his Fifth Amendment rights. And there is no evidence from the record that Robert Stewart invoked his rights based on this post hoc justification offered by the government.

Further, even assuming *arguendo* that there were additional charges the government could seek against Robert Stewart, there is no indication as to how Robert's anticipated trial testimony would provide previously unavailable evidence with respect to these charges, as would be required for his proper invocation of the privilege. *See, e.g.*, *United States v. Lumpkin*, 192 F.3d 280, 285 (2d Cir. 1999) (explaining privilege may be invoked to avoid answering questions where answer would support criminal liability or furnish a link in the chain of evidence needed to prosecute for a crime). Even now, the government fails to provide such information. For example, neither the government nor Robert's counsel explained how Robert's anticipated trial testimony would provide a previously missing link or additional evidence to bring charges against Robert for prior false statements to the FBI or SEC. ███

7

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████ For this reason, there is no basis to conclude that his testimony would have provided new evidence or a previously missing link to bring additional charges.

The Court's failure to require Robert to testify at all would still be wrong, even if there were an argument that Robert's answers to certain proposed questions might have exposed him to possible criminal prosecution for additional charges. When a proposed defense witness refuses to testify on Fifth Amendment grounds, the Court must determine if something less than a blanket invocation of the Fifth Amendment would be sufficient to protect a witness, while still allowing him to testify. *See, e.g.*, *United States v. Zappola*, 646 F.2d 48, 53-54 (2d Cir. 1981); *United States v. Bowe*, 698 F.2d 560, 566 (2d Cir. 1983).

This determination requires the Court to balance a defendant's fundamental constitutional rights against the government's non-constitutional need for effective cross-examination. The right to offer the testimony of a witness and to compel his or her attendance, if necessary, "is in plain terms the right to present a defense . . . . This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995). By contrast, the government's right to cross-examine defense witnesses is not rooted in the Constitution, but only in the need for effective cross-examination. *See, e.g.*, *United States v. Pardo*, 636 F.2d 535, 542, n.21 (D.C. Cir. 1980).

The ultimate issue is whether the questions as to which the witness intends to invoke the Fifth Amendment involve matters about which he testified on direct examination, or are

8

only collateral topics bearing on his credibility. A defendant's Sixth Amendment right to compel the testimony of a witness may be denied only if the witness's Fifth Amendment concerns would deprive the government of the opportunity to cross-examine about the witness's direct testimony:

> In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination.

*United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963).

The government's analysis ignores the critical distinction between cross-examination about Robert's proposed direct testimony and cross-examination on collateral matters, such as Dionex and Immucor. The government urges that Robert was properly excused from testifying altogether because the government announced that it would "quite properly cross-examine about his additional uncharged trading activity." Gov't Supp. Mem. at 2. But, as *Cardillo* and its progeny make clear, the fact that the government might want to cross-examine a witness about collateral uncharged criminal activity does not mean that the witness may be excused from testifying altogether.

Robert's trading in Dionex and Immucor would not have been the subject of his direct testimony.[5] As his attached affidavit demonstrates, Robert's direct testimony would have

---

[5] [redacted]

9

focused on other subjects. Nonetheless, the jury still would have learned that Robert pled guilty to using information obtained from Sean to engage in insider trading in Kendle, Carefusion, Lincare and Kinetics. Accordingly, any proposed cross-examination by the government about his alleged involvement in similar insider trading in Dionex and Immucor would have been a purely collateral inquiry and one that would have had only the most minute, if any, impact on the jury's ability to assess Robert's credibility.

The Court could have addressed any Fifth Amendment concerns Robert had about Immucor or Dionex by precluding cross-examination on those topics or allowing him to invoke his Fifth Amendment privilege if asked about such trades. *See, e.g.*, *United States v. Brooks*, 82 F.3d 50, 54-55 (2d Cir. 1996) (finding no error where trial court permitted witness to testify on direct but then invoke his Fifth Amendment rights on cross-examination with respect to collateral matters); *Cardillo*, 316 F.2d at 611 (same); *Bowe*, 698 F.2d at 566 (noting district court has the power to circumscribe government cross-examination to protect witness's Fifth Amendment interests). This approach would have secured both Robert's Fifth Amendment and Sean's Sixth Amendment constitutional rights, and would not have impaired the government's ability to effectively cross-examine Robert.

### III. The Court Should Have Compelled the Government to Immunize Robert Stewart

Even if Robert Stewart had a valid basis for invoking his Fifth Amendment rights, defendant clearly meets this Circuit's three-part test for the compelled immunity of Robert.

First, for all of the reasons stated in defendant's initial motion, Robert's testimony would have been material, exculpatory, non-cumulative and unobtainable from any other source. *See* Motion at 21-26. As Robert affirms in the attached affidavit, if he testified at trial,

he would have confirmed that he did not discuss trading in Kendle International, Inc. with Sean before making those trades. *Exhibit A* ¶ 1. Robert further affirms that, if he had testified, he would have stated that he did not discuss with Sean his involvement in trading Kinetic Concepts, Inc., Gen-Probe, Inc., Lincare Holdings, Inc. or Carefusion Corp. prior to his arrest. *Exhibit A* ¶ 2. He also would have testified that he did not tell Sean about his trading agreement with cooperator Richard Cunniffe. *Id.* This testimony obviously would have been exculpatory and highly relevant to Sean's defense. In addition, it is unobtainable from any source other than Robert Stewart.

The crux of the government's case against Sean were hearsay statements by Robert. Incredibly, the government continues to make detailed arguments about these hearsay statements, Gov't Opp. at 14-17, 33-34, while contending that Sean should be denied the right to call the person who actually made the statements. Moreover, even now, the government has not articulated any legitimate law enforcement reason not to immunize Robert.

Finally, the government's discriminatory use of immunity and other improper tactics would have justified this Court in ordering a grant of immunity. *See* Motion at 23-26. The government denies that it acted tactically to try and dissuade Robert Stewart from testifying. However, the Court can hardly credit the submissions of the trial AUSAs on this point. In their brief, the trial AUSAs state "Stewart's suggestion that the Government threatened to prosecute Robert for perjury arising from his trial testimony is baseless." Gov't Opp. at 30; *see also* Gov't Opp. at 1-2 (claiming suggestion that government threatened to prosecute Robert Stewart for "prospective perjurious testimony" is "pure fiction"); Gov't Opp. at 32 (stating that the government never threatened to prosecute Robert for perjury if he testified at trial).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████

The government's argument also completely misses the point. Neither the government nor Robert Stewart's counsel described any *new* evidence that would come from Robert's testimony here with respect to the government's apparent belief that Robert had engaged in additional illegal trading or previously lied to the FBI and SEC. The government had already completed its prosecution of Robert and entered a written plea agreement, where it exercised its discretion not to charge him with those offenses. The government also declined to claim those offenses as relevant conduct, or grounds for any other enhancement, at Robert's sentencing. The inescapable conclusion is that the threat of those charges only reemerged to deter Robert from testifying on behalf of his son. In other words, Robert's testimony would not provide new evidence with respect to any of these charges – it would simply motivate the government to pursue additional charges against Robert, which it had previously declined to bring. This obvious fact undermines both the legitimacy of Robert's invocation of the Fifth Amendment (since his testimony would not provide any missing link or further evidence) and evinces sufficient improper governmental overreach to warrant immunity for Robert's testimony.

*   *   *

For the reasons detailed above and in defendant's prior post-trial briefing, the Court should grant Sean Stewart's motions for judgment of acquittal and for a new trial.

Dated: New York, New York
November 23, 2016

                        Respectfully submitted,
                        Federal Defenders of New York

                      By: __/s/_____
                        Martin Cohen, Esq.
                        Mark Gombiner, Esq.
                        Sarah Baumgartel, Esq.
                        Assistant Federal Defenders

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEAN STEWART<br><br>*Defendant.* | Criminal Docket No. 15-cr-287 (LTS)<br><br>ECF Case |

### AFFIDAVIT OF ROBERT STEWART

STATE OF NEW YORK   )
                                           )   ss:
COUNTY OF NEW YORK  )

I, Robert Stewart, hereby state under penalty of perjury that the foregoing is true and correct based on my knowledge and belief.

If I had testified at Sean Stewart's trial, I would have testified, among other things, as follows:

1) I did not discuss with Sean Stewart my trading in Kendle International Inc., before the trade was made. I later told Sean Stewart that I had traded in Kendle after I learned about a regulatory inquiry related to the previous trading.

1

2) I did not discuss with Sean Stewart my involvement in trades made in Kinetic Concepts, Inc., Gen-Probe Inc., Lincare Holdings, Inc., and Carefusion Corp., prior to my arrest in May 2015. I did not tell Sean Stewart about my trading agreement with Richard Cunniffe prior to my arrest in May 2015.

Executed on November 22, 2016

_____
Robert Stewart

Sworn to before me on this
22nd day of November 2016

MIRIAM LEAH ALINIKOFF
Notary Public, State of New York
Registration #02AL6338340
Qualified In New York County
Commission Expires March 7, 2020

2