*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 30, 2017

BY EMAIL

Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street, Suite 1320
New York, New York 10007

      Re:    *United States v. Richard Cunniffe,*
                    **16 Cr. 338 (LTS)**

Dear Judge Swain,

    Richard Cunniffe ("Cunniffe") is scheduled to be sentenced on November 6, 2017 at 2:00 p.m. The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that Cunniffe rendered in the investigation and prosecution of Sean and Robert Stewart. In light of these facts, the Government intends to move at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), to request that the Court sentence Cunniffe in light of the factors set forth in Section 5K1.1(a)(1)(B)(5) of the Guidelines.

    **A.**    **Overview**

    As Your Honor is aware, this case involved an insider trading conspiracy through which Robert Stewart, a/k/a "Bob," received inside information from his investment banker son Sean Stewart. Early on in the conspiracy, Sean Stewart was questioned about his father's trading in connection with a deal he was working on as an investment banker as part of a regulatory inquiry at the bank. Sean Stewart coordinated his response with his father, and denied that he had discussed the deal or passed information to Robert Stewart. From that point forward, Robert Stewart ceased all trading in his own name, and recruited Cunniffe, a colleague of Robert's, to do the trading on his behalf. As the Court heard at trial, Sean Stewart would provide information to his father about the deals he was trading on, and Robert Stewart would pass that information on to Cunniffe. Cunniffe fronted the money for the trading, and divided the profits with Robert Stewart by providing him with cash payments. Over the course of the criminal conspiracy, Robert Stewart and Cunniffe used tips provided by Sean to generate $1.16 million in trading profits over a span of three years. Cunniffe was approached by the FBI in the spring of 2015, and although he minimized his involvement in the conspiracy during the initial approach, he very quickly thereafter came in to meet with the Government and took full responsibility for his role in the scheme. Significantly, and as is described in more detail below, Cunniffe agreed to cooperate proactively, which involved

setting up and recording two meetings and additional phone conversations with Robert Stewart. This proactive cooperation led to some of the Government's most critical evidence at trial.

### B. Background

Cunniffe is a 62-year-old U.S. citizen who lives in Long Island, New York. He has a wife but no children. He graduated from SUNY Buffalo State in 1977 with a degree in secondary education, taught science at a private school in New Rochelle for several years in the 1980s, and then went to PACE University for a Master's degree in investment management and finance, which he received in 1989. From 1989 through 2010, Cunniffe worked for several different firms in the financial industry: Value Line; Everen Securities; William Blair; Bank One; J. Giordano Securities; and Sterne Agee. His position at most of these firms was director of options and/or convertibles research. From around 2006 to around 2010, his principal responsibility was to offer advice related to the structuring of convertibles deals.

Cunniffe first met Robert Stewart in around 2008 or 2009. From around 2010 through early 2012, the two worked together at an investment consulting firm in Long Island owned by a mutual acquaintance. Cunniffe and Robert Stewart became friendly and have been involved in a number of small business ventures over the years, including a venture through they loaned money to the owner of a Cinnabon franchisee in Queens.

### C. Cunniffe's Criminal Conduct

The criminal conduct in this case is outlined in the PSR and, having presided over the trial, the Court is intimately familiar with the crimes to which Cunniffe pled guilty. To be certain, his crimes were serious. He knew that Robert Stewart was passing him inside information that he had received from his son. Cunniffe traded on that information, and used his experience in the financial industry to maximize the profits from their criminal scheme, kicking back payments to Robert Stewart in the form of cash, delivered in unlabeled envelopes in discreet places. Cunniffe took steps to cover his crimes, by speaking in code with Robert Stewart over email and, at times, making cover buys to make it seem as if his trading strategy was not based on inside information. But for his cooperation, Cunniffe's conduct would warrant a Guidelines term of incarceration.

*Criminal History and Other Bad Acts*

From in or about 2010 through in or about 2012, Cunniffe underreported approximately $30,000 in income that he received "off the books" for consulting work. As described below, he agreed to file corrected amended tax returns as part of his cooperation agreement with the Government. He traded profitably on a tip he heard in a bar once in the 1990s, but has not engaged in any other insider trading beyond that described herein. He has never engaged in any acts of violence.

### D. Cunniffe's Cooperation

When first approached by the FBI in March 2015, Cunniffe almost immediately admitted to having traded on "inside information" and further admitted that he knew what he did was wrong

when he did it.  While he originally minimized the crime to the extent he denied (during that first meeting) having any financial arrangement with Robert Stewart and denied using the "golf" code in two email communications (he denied, with respect to one email but not the other, that the message was code),[1]  he came in to meet with the Government a week later and gave a detailed, complete, and credible proffer of the full extent of his criminal conduct.  Cunniffe was extraordinarily forthcoming during that session, and acknowledged fully his own guilt, including explaining in detail the ways in which he had attempted to avoid detection.  For example, he explained that he had engaged in sophisticated options trading to make it appear—to law enforcement or anyone else who was watching—that he was a value investor.  Cunniffe met with prosecutors and the FBI on multiple occasions and, during each meeting, he was fully forthcoming and credible.  He also agreed to (and did) arrange and attend two recorded meets with Robert Stewart, on March 24, 2015 and April 16, 2015. As described below and was evident at trial, both yielded incriminating statements from Robert Stewart that were key in charging and prosecuting both Robert Stewart and Sean Stewart.

### E.  Procedural History

On May 12, 2015, Cunniffe pled guilty to securities fraud, conspiracy to commit securities fraud and tender offer fraud, tender offer fraud, and conspiracy to commit wire fraud, pursuant to a cooperation agreement with the Government.

Cunniffe, at the time of his plea, admitted the forfeiture allegation with respect to Counts One through Six of the Information and agreed to forfeit to the United States, pursuant to Title 18, United States Code, Section 981, and Title 28, United States Code, Section 2461, a sum of money equal to $900,000 in United States currency, representing all property, real and personal, that constitutes or is derived from Cunniffe's proceeds traceable to the commission of the offenses (the "Money Judgment").

Cunniffe also agreed to make restitution in an amount to be specified by the Court in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664, to be paid according to a plan established by the Court.

### F.  Applicable Law

*The Sentencing Guidelines*

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005). Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when

---

[1] Cunniffe later explained that he was less than forthcoming about these matters because he wanted to minimize the "damage" he was causing to himself and Robert Stewart by talking to the FBI.

considering a particular sentence to impose. *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005). In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

### *The Section 3553(a) Factors*

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

Section 3553(a) further directs the Court—in determining the particular sentence to impose—to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

The Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. *See Crosby*, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Crosby*, 397 F.3d at 112. Second, the Court must consider whether a departure from that Guidelines range is appropriate. *Id*. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose, whether it be a Guidelines or non-Guidelines sentence. *Id.* at 113. In so doing, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances." *United States* v. *Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

## *Section 5K1.1 Analysis*

Section 5K1.1 of the Guidelines sets forth five non-exclusive factors that sentencing courts are encouraged to consider in determining the appropriate sentencing reduction for a defendant who has rendered substantial assistance. *See* U.S.S.G. § 5K1.1(a). The application of each of those factors to Cunniffe's cooperation is set forth below.

1. "[S]ignificance and usefulness" of assistance (§ 5K1.1(a)(1)): Cunniffe's cooperation was both significant and useful in the prosecutions of Robert Stewart and Sean Stewart. As the Court is undoubtedly aware, Cunniffe was a key witness at trial of Sean Stewart. Cunniffe served as a narrator for the jury, describing in detail the timing and substance of his conversations with Robert Stewart, and the steps they took to hide their criminal conduct. For example, Cunniffe was able to testify, in detail, about the cash payments he provided to Robert Stewart and their use of codes in emails to discuss (and disguise) their trading activity. Cunniffe engaged in proactive cooperation, which led to taped statements from Robert Stewart about his son's involvement in the conspiracy—including that Sean Stewart had served Robert Stewart with tips "on a silver platter." Those recorded statements were critical evidence at Sean Stewart's trial, and helped lead to his conviction—evidence the Government would not have had but for Cunniffe's cooperation.

2.     "[T]ruthfulness, completeness, and reliability" of information and testimony (§ 5K1.1(a)(2)): Throughout his cooperation, Cunniffe was truthful and, for the most part, he was complete and reliable.[2] With respect to the criminal conduct that was the subject of the prosecution, Cunniffe was fully truthful and reliable in the information he provided. He was as detailed as he could be about his recollection of conversations with Robert Stewart and the steps he took in furtherance of the conspiracy. He fully accepted responsibility for his conduct early on in the cooperation process, and as a result, the information he provided was incredibly detailed and thorough, and it was clear to the prosecutors and agents he met with that he was fully committed to assisting the Government by providing credible, reliable information. To that end, Cunniffe was truthful not only about what he knew, but what he did not—including that he and Sean Stewart had met only once, briefly, and had never had a substantive conversation. He was careful not to overstate anything, providing a credible, truthful narrative about what had happened that prosecutors—and ultimately the jury—felt they could rely on in convicting Sean Stewart.

3.     "[N]ature and extent" of assistance (§ 5K1.1(a)(3)): The nature and extent of Cunniffe's cooperation was impressive. Once he came in to meet with the Government, he was fully invested in the process and made himself available whenever the Government requested. He met with the Government time and again, both before he pled guilty and in preparation for

---

[2] As described fully in the defendant's submission, Cunniffe was not fully forthcoming with the Government about the extent to which he received unemployment benefits. While it is unclear as to whether his conduct constitutes a fraud, when he was confronted on this issue on the stand, Cunniffe took responsibility for his actions and acknowledged potential wrongdoing. It was clear from his response on the witness stand and from the Government's subsequent conversations with Cunniffe and his counsel that this was not an intentional omission.

Page 6

trial. The meetings were long and taxed his memory, but Cunniffe was reliable and thorough during each. He also testified, in a public courtroom, over the course of two days, and was subjected to vigorous cross-examination that challenged his credibility and highlighted his personal shortcomings. And, of course, he agreed to conduct proactive cooperation, in which he wore a recording device and met in person with Robert Stewart twice (in addition to recording phone calls with Robert Stewart). His cooperation was extensive and significant, and it should be credited as such.

    4.    "[A]ny injury suffered, or any danger or risk of injury to the defendant or [her] family" resulting from assistance (§ 5K1.1(a)(4)): Cunniffe's physical safety was never in jeopardy in this case.

    5.    "[T]imeliness" of assistance (§ 5K1.1(a)(5)): The timing of Cunniffe's cooperation in this case was significant. Cunniffe chose to cooperate before any arrests had been made, and at a point when proactive cooperation was still possible. If he had not have done this, the Government may not have had such clear insight into Sean Stewart's role in the conspiracy, and may not have had the evidence necessary to meet its burden in the trial against Sean Stewart. The fact that Cunniffe came in so soon after his approach—without any charges hanging over his head, was significant in allowing the Government to successfully prosecute Sean and Robert Stewart.

## CONCLUSION

As a result of the foregoing, the Government has determined that Cunniffe provided substantial assistance in the investigation and prosecution of Robert Stewart and Sean Stewart. The Government therefore expects to request at sentencing that the Court sentence Cunniffe in light of the relevant facts stated above and the factors set forth in Section 5K1.1(a)(1)-(5) of the Sentencing Guidelines and Title 18, United States Code, Section 3553(e).

    Respectfully,

    /s/
    Sarah K. Eddy
    Brooke E. Cucinella
    Assistant United States Attorneys

cc:    Defense Counsel (*via email*)